Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
Joanna M. Myers, Esq.
Nevada Bar No. 12048
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: jwf@h2law.com
Email: jmm@h2law.com

Andrew M. Smith, Esq.
Oregon Bar No. 172774
Has complied with LR IA 11-2
RESONATE IP, LLC
115 N.W. Oregon Ave., Suite 12
Bend, Oregon 97703
Telephone: (541) 240-8020
Email: dsmith@resonateip.com

*Attorneys for Defendant Avelo, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| PROTON ASSOCIATES LLC, and SETH MILLER, <br><br> Plaintiffs, <br> v. <br><br> AVELO, INC., <br><br> Defendant. | Case No. 2:25-cv-00856-JCM-BNW <br><br> **DEFENDANT AVELO, INC.'S SPECIAL MOTION TO DISMISS COUNT IV OF THE COMPLAINT PURSUANT TO NEVADA'S ANTI-SLAPP STATUTE** <br><br> (Oral Argument Requested) |

Pursuant to Nevada's anti-SLAPP statute, NRS § 41.660, Defendant Avelo, Inc. ("Defendant" or "Avelo") hereby moves the Court: (1) for entry of an order dismissing Count IV of the Complaint, which purports, but fails, to allege a legally viable cause of action for tortious interference with business expectancy; and (2) entry of an order requiring Plaintiffs Proton Associates LLC and Seth Miller ("Plaintiffs" or "Miller") to pay Avelo's attorneys' fees and costs associated with its special motion to dismiss, in addition to awarding Avelo $10,000 in statutory damages, pursuant to NRS § 41.670.

4929-3423-0349, v. 1

This motion is supported by the papers and pleadings on file, by the accompanying Declaration of Andrew M. Smith and the exhibits thereto (the "Smith Decl."), by the points and authorities set forth below, and by any oral argument the Court may require or allow.

**PRELIMINARY STATEMENT**

This is a trademark infringement dispute in which the accused trademark infringers—Plaintiffs in this case—have rushed to court seeking a declaratory judgment of non-infringement—a judgment Plaintiffs are not entitled to.

Avelo, through its wholly owned subsidiary, Avelo Airlines, Inc., operates a budget-friendly airline that provides service to travelers located throughout the United States. Recently, after Avelo announced its entry into a contract to provide airline services to a contractor of the United States government in connection with the government's ongoing immigration enforcement efforts, Plaintiffs embarked upon an admittedly intentional campaign using Avelo's own trademarks and trade dress to confuse its customers and damage its reputation and business. Plaintiffs did so by contracting with Lamar Advertising Corporation ("Lamar") to erect three billboards in the New Haven, Connecticut, area. Using AVELNO!, a confusingly similar version of Avelo's federally registered AVELO service mark, along with other Avelo marks and Avelo's signature violet, teal, white, and yellow trade dress and distinctive "Avelo" logo, the billboards state: "Does your vacation support their deportation? Just say AvelNO!" and direct viewers to <avelno.com>, a website where visitors are encouraged to donate money to support "the AvelNO! Campaign."

Avelo strongly objected to Plaintiffs' unauthorized use of its trademarks and trade dress. It sent cease-and-desist letters to Plaintiffs and to Lamar requesting that they each cease and desist from infringing Avelo's trademarks, trade dress, and copyrights, and that they each provide a written response to the letter by May 16, 2025. However instead of responding to Avelo's cease-and-desist letters or seeking an extension of time to do so, Plaintiffs preemptively filed the instant lawsuit.

The Complaint purports to allege four counts against Avelo. Count I seeks a declaratory judgment of non-infringement concerning Avelo's copyrights; Count II seeks a declaratory

4929-3423-0349, v. 1

judgment of non-infringement concerning Avelo's trademarks; Count III seeks a declaratory judgment of non-infringement concerning Avelo's trade dress; and Count IV seeks damages for Avelo's alleged interference with Plaintiffs' business relationship with Lamar.  This motion takes issue with Count IV.

Count IV must be dismissed because it is based entirely on Avelo's legally privileged prelitigation cease-and-desist letter to Lamar.  A prelitigation cease-and-desist letter is, "a good faith communication in furtherance of the right to petition or the right to free speech," NRS § 41.637(3), triggering the protections of Nevada's anti-SLAPP statute.  *LHF Prods., Inc. v. Kabala*, 2018 WL 4053324, at *5 (D. Nev. Aug. 24, 2018), *aff'd sub nom. LHF Prods., Inc. v. Does*, 848 F. App'x 802 (9th Cir. 2021) (granting anti-SLAPP motion and dismissing complaint because prelitigation demand letters are protected communications under the anti-SLAPP statute).  Because Avelo's cease-and-desist letter is a good faith communication made in furtherance of its right to petition the courts, the burden shifts to Plaintiffs to show that they have "prima facie evidence [of] a probability of prevailing on the claim" to avoid dismissal.  NRS § 41.660(3)(b).

Plaintiffs cannot possibly meet that burden here: the prelitigation cease-and-desist letter at issue falls squarely within Nevada's "absolute" litigation privilege.  *Williams v. Lazer*, 137 Nev. 437, 443, 495 P.3d 93, 99 (2021) ("[t]he absolute litigation privilege applies at the second prong of the anti-SLAPP analysis because a plaintiff cannot show a probability of prevailing on his claim if a privilege applies to preclude the defendant's liability.").

In addition to dismissal of the claim, Nevada's anti-SLAPP statute also entitles Avelo to an award of its attorneys' fees incurred in connection with this motion.  In fact, "an award for attorney's fees under [the anti-SLAPP statute] . . . is mandatory." *LHF Prods., Inc. v. Kabala*, 2019 WL 7403960, at *5 (D. Nev. Dec. 31, 2019), *aff'd sub nom. LHF Prods., Inc. v. Does*, 848 F. App'x 802 (9th Cir. 2021).  The Court may also "award, in addition to reasonable costs and attorney's fees awarded . . . an amount of up to $10,000 to the person against whom the action was brought." NRS § 41.670(1)(b).

## **STATEMENT OF MATERIAL FACTS**

Plaintiff Seth Miller ("Mr. Miller") is an individual and resident of Dover, New

- 3 -

Hampshire, who formed and partly owns Plaintiff Proton Associates LLC ("Proton") who does business as "AvGeek Action Alliance." (ECF No. 1, Complaint (the "Compl.") ¶ 7.) Plaintiffs leased two billboards on the road to Avelo's hub in New Haven reading as follows:

[Billboard image: "Does your vacation support their deportation? Just say avelNO! Paid for by AvGeek Action Alliance – avelNO.com"]

(*Id*. ¶ 3; *see also* ECF Nos. 1-1, 1-2, Exs. A, B to Compl.)

Avelo objected to the billboards and its counsel sent Mr. Miller and Proton a cease-and-desist letter dated May 9, 2025, in which Avelo's counsel demanded, among other things, that Mr. Miller and Proton "cease all use of the AVELO Marks, logos, designs, and trade dress on (1) websites accessible at domains <avelno.com>, <avgeekaction.com>, and <millerfornh.com>, (2) billboards (both electronically and in printed form), (3) social media, and (4) . . . remove all copyrighted pictures of Avelo aircraft displaying Avelo's trademarks and trade dress." (Compl. ¶¶ 29-32; *see also* ECF No. 1-3, Ex. C to Compl. at p. 4 of 17.) The letter requested a written response by May 16, 2025. (*Id*., ECF No. 1-3 at p. 5 of 17.)

Avelo's counsel also sent a cease-and-desist letter to Lamar Advertising Corporation ("Lamar") dated May 9, 2025, in which Avelo's counsel demanded, among other things, that Lamar, "cease its participation in the infringement of Avelo's trademarks and trade dress" and it informed Lamar that it could be held secondarily liable for contributing to the infringement of Avelo's trademarks. (Compl. ¶¶ 40-43; *see also* ECF No. 1-4, Ex. D to Compl. at pp. 3-4 of 15.) The letter requested a written response by May 16, 2025. (*Id*., ECF No. 1-4 at p. 4 of 15.)

On or about May 15, 2025, Lamar, through counsel, responded to Avelo's cease-and-desist letter stating, among other things, that it respects the intellectual property rights of others, and was "in the process of taking down" the billboards. (*See* Smith Decl. ¶ 10 & Ex. D.)

On May 16, 2025, instead of responding to Avelo's cease-and-desist letter or seeking an

extension of time to do so, Plaintiffs preemptively filed the instant lawsuit. Plaintiffs allege that, as of May 16, 2025, the billboards are not being displayed. (Compl. ¶ 46.) In Count IV of the Complaint, Plaintiffs allege that Avelo's cease-and-desist letter to Lamar deprived Plaintiffs of the benefit of their relationship with Lamar. (*Id*. ¶ 74.) However, in its response to Plaintiff's cease-and-desist letter, Lamar stated that it would not be terminating its business relationship with Plaintiffs. (*See* Smith Decl. ¶ 10 & Ex. D.)

On May 28, 2025 the New Hampshire Independent published an article entitled, "Anti-Avelo Billboards Are Coming Back." (*See* Smith Decl. ¶ 12 & Ex. E.) The article quotes Mr. Miller as stating he has approved "new art," and that Lamar is erecting new versions of Plaintiffs' billboards. A true and accurate image from the article comparing the new black, white, and blue billboards to the original billboards appears, in part, as follows:





- 5 -

4929-3423-0349, v. 1

(*Id.*; *see also* https://www.newhavenindependent.org/article/avelo_protest_lawsuit (last visited June 11, 2025).)

## ARGUMENT

**I.   COUNT IV OF THE COMPLAINT IS BARRED AS A MATTER OF LAW BY NEVADA'S ANTI-SLAPP STATUTE AND MUST BE DISMISSED.**

Count IV of the Complaint purports to allege a claim for interference with business expectancy. The claim is based on a single pre-litigation cease-and-desist letter that Avelo's counsel sent to Lamar Advertising Corporation, the company that erected the Infringing Billboards on Plaintiffs' behalf. (Compl. ¶¶ 24-27; 40-48; and 66-75.) That claim, however, is barred as a matter of law by Nevada's anti-SLAPP statute because: (1) the letters are protected communications under the statute; and (2) Plaintiffs have no probability of prevailing on the claim because the letters are protected by Nevada's litigation privilege.

"SLAPP (Strategic Lawsuits Against Public Participation) lawsuits abuse the judicial process by chilling, intimidating, and punishing individuals for their involvement in public affairs." *LHF Prods*, 2018 WL 4053324, at *2. "To curb these oppressive lawsuits, Nevada's legislature adopted anti-SLAPP laws that immunize protected speakers from suit." *Id*. Under the Nevada statute: "If an action is brought against a person based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern[,] [t]he person against whom the action is brought may file a special motion to dismiss." NRS § 41.660(1)(a). When determining whether to grant an anti-SLAPP motion, the court engages in a two-step analysis.

***First***, the moving party must establish by a preponderance of the evidence that "the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a). A "good faith communication in furtherance of the right to petition or the right to free speech" is defined under the statute to include, among other things, a "[w]ritten or oral statement made in direct connection with an issue under consideration by a … judicial body," so long as the statement is "truthful or is made without knowledge of its falsehood." NRS § 41.637(3). As discussed in detail below,

Nevada courts are clear that this provision applies to **prelitigation** demand letters, like the ones at issue here. *See infra* Section I.A.

**Second**, if the Court finds a defendant has made this threshold showing that the anti-SLAPP statute applies, it must then "determine whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim" to be dismissed. NRS § 41.660(3)(b).

Nevada's anti-SLAPP statute applies in federal court, and Nevada's district courts have not hesitated to grant special motions to dismiss under the statute. *See, e.g., LHF Prods.*, 2018 WL 4053324, at *5 (granting a special motion to dismiss under NRS 41.660); *see also Shahrokhi v. Harter*, 2023 U.S. Dist. LEXIS 121313 (D. Nev. July 14, 2023) (same).[1]

A.      The Interference Claim Arises Out of Protected Conduct

Plaintiffs' tortious interference claim is based on Avelo's sending a single cease-and-desist letter to Lamar Advertising Corporation. (Compl. ¶¶ 40-48, 66-74.) The letter, however, is clearly protected by Nevada's anti-SLAPP statute. Protected activity under the statute specifically includes any "[w]ritten or oral statement made in direct connection with an issue under consideration by a . . . judicial body[.]" NRS § 41.637(3). Nevada courts have confirmed that prelitigation communications fall squarely within this provision. In *LHF Productions*, for example, the district court held that this section of the anti-SLAPP statute "has no temporal requirement that only communications that come after the filing of a complaint are protected"—thus, "demand letters . . . are clearly 'made in direct connection' with a complaint, which is 'under consideration by a . . . judicial body.'" 2018 WL 4053324, at *3 (quoting NRS § 41.637 (finding that pre-litigation demand letter was protected activity under first prong of anti-SLAPP analysis)).

---

[1] "In order to prevent the collision of [ ] state procedural rules with federal procedural rules," the Ninth Circuit holds that district courts should "review anti-SLAPP motions to strike under different standards depending on the motion's basis." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018). If the motion "challenges only the legal sufficiency of a claim, a district court should apply the Rule 12(b)(6) standard and consider whether a claim is properly stated." *Id*. at 834. On the other hand, if an "anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Rule 56 standard will apply." *Id*. In such a case, the plaintiff may "supplement evidence based on the factual challenges, before any decision is made by the court." *Id*.

Here, as in *LHF Productions*, Avelo's pre-litigation cease-and-desist letter constitutes protected activity under Section 41.637(3). The letter was sent to Lamar, the advertising company who contracted with Plaintiffs and erected the Infringing Billboards; it detailed Avelo's claims that the Infringing Billboards violate Avelo's trademark rights in its federally registered trademarks and in its trade dress; it demanded that Lamar "cease its participation in the infringement of Avelo's trademarks and trade dress;" and it informed Lamar that it could be held secondarily liable for contributing to the infringement of Avelo's trademarks. The letter was clearly sent in contemplation of Avelo initiating judicial proceedings, and, as such, is protected under NRS § 41.637(3). Indeed, it was a nearly identical letter that Avelo's counsel sent to Miller that resulted in Miller filing this action and seeking a declaration of non-infringement. (*Compare* ECF No. 1-4 (cease-and-desist letter to Lamar) *with* ECF No. 1-3 (cease-and-desist letter to Miller).)

To be sure, Section 41.637(3) only applies if the statement is "truthful or is made without knowledge of its falsehood." NRS § 41.637(3). That requirement is easily satisfied here, however. Nothing in the Complaint alleges that the factual basis for the cease-and-desist letter—Lamar's erection of the Infringing Billboards on Plaintiffs' behalf—did not occur as set forth in the letter or was otherwise untruthful. And as stated in the Smith Declaration, all statements contained in the letters are true or were made without knowledge of falsehood, and Avelo genuinely believes in the validity of the claims threatened in the letter. (Smith Decl. ¶ 7.) Indeed, Avelo intends to assert trademark-based counterclaims, as alluded to in the letter. (*Id.* at ¶ 8.)

The Smith Declaration is sufficient to meet Avelo's burden of establishing that its statements in the letter were truthful because there is no contradictory evidence in the record, nor could there be. "[A]n affidavit stating that the defendant believed the communications to be truthful or made them without knowledge of their falsehood is sufficient to meet the defendant's burden absent contradictory evidence in the record." *Stark v. Lackey*, 136 Nev. 38, 43, 458 P.3d 342, 347 (2020); *see also LHF Prods.*, 2018 WL 4053324, at *3 ("And because [movant] offers two signed declarations—one from its counsel and another from a witness—that declare that the communications were truthful or made without knowledge of their falsehood, I find that [the

4929-3423-0349, v. 1

HOWARD & HOWARD ATTORNEYS PLLC

movant] has made the requisite showing that its communications are protected.").[2]

### B.    Plaintiffs Cannot Show a Likelihood of Success on the Merits

Because Count IV is based solely on protected activity, the burden shifts to Plaintiffs to establish a probability of success on the claim. NRS § 41.660(3). Plaintiffs cannot possibly satisfy this burden because the litigation privilege bars the claim as a matter of law.

Nevada courts recognize "the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged." *Fink v. Oshins*, 118 Nev. 428, 432–33, 49 P.3d 640, 643 (2002) (internal quotations omitted). "The policy behind the absolute privilege, as it applies to attorneys participating in judicial proceedings, is to grant them as officers of the court the utmost freedom in their efforts to obtain justice for their clients." *Id*. at 433 (internal quotations omitted). "Nevada's litigation privilege is, indeed, absolute—and it bars all claims based on communications protected by the privilege." *Shahrokhi*, 2023 U.S. Dist. LEXIS 121313, at *22 (D. Nev. July 14, 2023). "The scope of the absolute privilege is quite broad," and "courts should apply the absolute privilege liberally, resolving any doubt in favor of its relevancy or pertinency." *Fink*, 118 Nev. at 433-34 (internal quotations omitted). "[T]he privilege applies not only to communications made during actual judicial proceedings, but also to communications preliminary to a proposed judicial proceeding" if the communication "is made in contemplation of initiation of the proceeding," and that proceeding was contemplated in good faith and under serious consideration." *Id*. (internal quotations omitted).

Courts have recognized that a plaintiff's claims are properly stricken at the second prong of the anti-SLAPP analysis if they are barred by the litigation privilege. Simply put, "the absolute litigation privilege applies at the second prong of the anti-SLAPP analysis because a plaintiff cannot show a probability of prevailing on his claim if a privilege applies to preclude the defendant's liability." *Lazer*, 137 Nev. at 443, 495 P.3d at 99. Here too, Plaintiffs cannot meet

---

[2] The Court is entitled to consider the Smith Declaration as evidence in ruling on Avelo's special motion to dismiss pursuant to Nevada's anti-SLAPP statute. *Gunn v. Drage*, 65 F.4th 1109, 1120 (9th Cir. 2023) (district court was "entitled to consider evidence at both prongs" of the anti-SLAPP analysis) (internal citations and quotations omitted).

4929-3423-0349, v. 1

their burden of proving a likelihood of success, because Avelo's cease-and-desist letter is absolutely privileged under Nevada's litigation privilege. As discussed above, the letter asserted valid legal claims for violations of Aveo's trademark rights, and they were sent in genuine, good-faith contemplation of Avelo initiating legal action absent compliance with its demands. (Smith Decl. ¶¶ 7-8.)  Indeed, Avelo intends to and has, as of the date of this filing, asserted counterclaims against Plaintiffs for violating Avelo's trademark rights under the Lanham Act, as alluded to in the cease-and-desist letter.

### C. Avelo Is Entitled to Its Attorneys' Fees and Costs Associated with the Special Motion to Dismiss Plaintiffs' Interference Claim.

"If the court grants a special motion to dismiss filed pursuant to NRS 41.660[,] [t]he court **shall** award reasonable costs and attorney's fees to the person against whom the action was brought[.]" NRS 41.670(1)(a) (emphasis added). In other words, as another court in this district has explained, "an award for attorney's fees under [section] 41.670(1)(a) . . . is **mandatory**." *LHF Prods., Inc. v. Kabala*, 2019 WL 7403960, at *5 (D. Nev. Dec. 31, 2019) (emphasis added), *aff'd sub nom*, *LHF Prods., Inc. v. Does*, 848 F. App'x 802 (9th Cir. 2021). Further, the Court "may award, in addition to reasonable costs and attorney's fees awarded pursuant to paragraph (a), an amount of up to $10,000 to the person against whom the action was brought." NRS § 41.670(1)(b).

If the Court grants Avelo's special motion to dismiss Count IV pursuant to Nevada's anti-SLAPP statute, an award to Avelo of its attorneys' fees and costs is mandatory, and an additional award of up to $10,000 is discretionary. Accordingly, Avelo respectfully requests that the Court order Plaintiffs to pay all reasonable attorneys' fees and costs incurred by Avelo in connection with the motion, plus an additional award of $10,000 in statutory damages. In such a case, and if the parties cannot reach agreement on the amount of fees and costs to be awarded, Avelo will file a separate motion to establish the amount of those fees and costs and to explain why an additional award of $10,000 is appropriate here in this case. Fed. R. Civ. P. 54(d)(2) ("Unless a statute or court order provides otherwise, [a] motion [for attorneys' fees] must[,] be filed no later than 14 days after the entry of judgment"); *see also Kabala*, 2019 WL 7403960, at *7 (granting a motion

4929-3423-0349, v. 1

for attorneys' fees brought by a party that had earlier prevailed on a special motion to dismiss pursuant to the anti-SLAPP statute); NRS § 41.670(1)(c) ("If the court grants a special motion to dismiss filed pursuant to NRS 41.660[,] . . . [t]he person against whom the action is brought may bring a separate action to recover (1) [c]ompensatory damages; (2) [p]unitive damages; and (3) [a]ttorney's fees and costs of bringing the separate action.").

## CONCLUSION

For all of the foregoing reasons, Avelo respectfully requests that the Court enter an order: (1) dismissing Count IV of the Complaint with prejudice; and (2) requiring Plaintiffs to pay Avelo's attorneys' fees and costs associated with its special motion to dismiss, in addition to awarding Avelo $10,000 in statutory damages, pursuant to NRS § 41.670.

Dated: this 18th day of June 2025

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By: ___/s/ Jonathan W. Fountain___
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
Joanna M. Myers, Esq.
Nevada Bar No. 12048
3800 Howard Hughes, Suite 1000
Las Vegas, NV 89169
Telephone: (702) 257-1483
Email: jwf@h2law.com
Email: jmm@h2law.com

Drew M. Smith, Esq.
Oregon Bar No. 172774
Has complied with LR IA 11-2
RESONATE IP, LLC
115 N.W. Oregon Ave., Suite 12
Bend, Oregon 97703
Telephone: (541) 240-8020
Email: dsmith@resonateip.com

*Attorneys for Defendant Avelo, Inc.*

4929-3423-0349, v. 1