Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
Joanna M. Myers, Esq.
Nevada Bar No. 12048
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: jwf@h2law.com
Email: jmm@h2law.com

Andrew M. Smith, Esq.
Oregon Bar No. 172774
Has complied with LR IA 11-2
RESONATE IP, LLC
115 N.W. Oregon Ave., Suite 12
Bend, Oregon 97703
Telephone: (541) 240-8020
Email: dsmith@resonateip.com

*Attorneys for Defendant Avelo, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| PROTON ASSOCIATES LLC, and SETH MILLER, | Case No. 2:25-cv-00856-JCM-BNW |
| Plaintiffs, | **DEFENDANT AVELO, INC.'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| v. | |
| AVELO, INC., | |
| Defendant. | (Oral Argument Requested) |

Defendant Avelo, Inc. ("Defendant" or "Avelo") hereby moves the Court for entry of a temporary restraining order and/or preliminary injunction:

1.      Enjoining and restraining Plaintiffs Proton Associates, LLC ("Proton") and Seth Miller ("Mr. Miller") (together, "Plaintiffs") and all other persons acting in concert or participation with them from: (a) using the Avelo Marks (as defined below) or any confusingly similar variations thereof, alone or in combination with any other letters, words, letter string, phrases or designs in commerce, including, without limitation, on any website, in any domain name confusingly similar to the Avelo Marks (including, without limitation, in the <avelno.com> domain name), in any social network user name confusingly similar to the Avelo Marks, in any hidden website text, or in any website metatag; (b) engaging in false or misleading advertising or

4906-1722-1712, v. 1

HOWARD & HOWARD ATTORNEYS PLLC

commercial activities likely to deceive consumers into believing that any Plaintiff is Avelo or that any of Plaintiffs' services are associated or affiliated with, connected to, approved by, or sponsored by Avelo; and (c) displaying or re-displaying the Infringing Billboards;

2. Requiring Dynadot Inc. ("Dynadot") (the domain name registrar of <avelno.com>) to place the <avelno.com> domain name on hold and lock;[1] and

3. Setting a schedule for the completion of briefing and oral argument on Avelo's Motion for Preliminary Injunction.

This motion is supported by the papers and pleadings on file, by the accompanying declarations of Chase Player, Joanna M. Myers, and Jonathan W. Fountain, by the exhibits attached thereto, by the points and authorities set forth below, and by any oral argument the Court may require or allow.

## **PRELIMINARY STATEMENT**

This is a trademark infringement dispute in which the accused trademark infringers—Plaintiffs in this case—have rushed to court seeking a declaratory judgment of non-infringement—a judgment Plaintiffs are not entitled to.

Avelo is a budget-friendly airline that provides service to travelers located throughout the United States. Recently, after Avelo announced its entry into a contract to provide airline services in support of the United States government's ongoing immigration enforcement efforts, Plaintiffs embarked upon an admittedly intentional campaign to damage Avelo's business, reputation, and goodwill using Avelo's own trademarks and trade dress to do so. Plaintiffs began by registering the <avelno.com> domain name to raise money for billboards, then contracted with Lamar Advertising ("Lamar") to erect two billboards in the New Haven, Connecticut area that appeared, as follows:



The website and billboards feature AVELNO!, a confusingly similar version of Avelo's

---

[1] This is necessary to prevent the domain name from being transferred to a foreign domain name registrar, person, or entity, located outside of the Court's jurisdiction. (Player Decl. ¶ 16.)

federally registered AVELO® trademark, along with Avelo's signature yellow and violet trade dress and distinctive logo. The billboards direct confused consumers to the <avelno.com> website where they are asked to give money to "the AvelNO! Campaign" (which is NOT a registered non-profit enterprise).

While Avelo does not object to Plaintiffs' voicing their opinion, Avelo objected to Plaintiffs' unauthorized use of its intellectual property and sent cease-and-desist letters to Plaintiffs and Lamar demanding that they cease and desist from infringing its intellectual property and that they provide a written response by May 16, 2025. But instead of responding, Plaintiffs preemptively filed the instant lawsuit seeking declarations of non-infringement and money damages for Avelo's alleged interference with Plaintiffs' business relationship with Lamar.[2]

Plaintiffs' actions have crossed the line from any fair exercise of First Amendment rights into an unfair and commercial misappropriation of Avelo's trademarks and brand identity, causing actual consumer confusion and irreparable harm to the goodwill embodied in Avelo's trademarks. Unless Plaintiffs are enjoined, Avelo will continue to suffer irreparable harm.

## STATEMENT OF MATERIAL FACTS

### I.    Avelo, its Business, and its Intellectual Property

Avelo is a budget-friendly airline company incorporated in Nevada and headquartered in Houston, Texas. (Player Decl. ¶ 2.) The company was acquired by its current CEO, Andrew Levy, in 2018. (*Id*.) Avelo adopted and began using its AVELO® mark in commerce in April 2021, to provide its airline transportation and other services to travelers located throughout the United States. Since April 2021, Avelo has continuously used its AVELO® and other marks. Avelo's federal service mark registrations include,[3] but are not limited to: (1) its AVELO word mark, U.S. Trademark Reg. No. 6,910,702, for use in connection with, among others, "airline transportation services" and "providing a website featuring information in the field of airline passenger transportation;" (2) its "wishbone" design mark, U.S. Trademark Reg. No. U.S. 6,657,107, for use in connection with, among others, "airline transportation services" and

---

[2] Avelo moved to dismiss that claim pursuant to Nevada's Anti-SLAPP statute, NRS § 40.660, filed an answer, and filed Counterclaims for cybersquatting (15 U.S.C. § 1125(d)) and trademark infringement (15 U.S.C. § 1114). (*See* ECF Nos. 12, 13.)

[3] Only Avelo's most relevant registered goods and services are listed here.

HOWARD & HOWARD ATTORNEYS PLLC

"providing information in the field of airline transportation by means of a global computer network;" and (3) its "airliner" trade dress, U.S. Trademark Reg. No. 7,072,450, for use in connection with "transportation services, namely transportation of persons by air; airline transportation services" (all together, the "Avelo Marks").  (*See* Declaration of Chase Player (the "Player Decl.") ¶ 2 & Ex. A.)

The AVELO® word mark is a fanciful, coined, term that was created by Avelo for the sole purpose of functioning as a trademark, namely as a designation of source for its goods and services.  (*Id*. ¶ 3.)  Since April 2021, Avelo has displayed its Avelo Marks featuring the colors violet, teal, white, and yellow color scheme, a combination that is unique to the airline industry.  (*Id*. ¶ 4.)  By way of example, the AVELO house mark is consistently displayed on the exterior of its airliners, at its ticket counters, throughout airports, on social media platforms, and in advertisements in the color purple and in the distinct stylization shown below:



(*Id*.)

Since April 2021, Avelo has used its Avelo Marks and trade dress extensively to advertise, market, and promote its airline transportation and other goods and services on the exterior of its airliners, at its ticket counters, throughout airports, on social media platforms, and in advertisements featured on billboards, in print and online advertising, including, magazines, e-mails, press releases, and in other promotional materials, as well as on its <avelo.com> website,[4] where it receives an average of over 4 million visitors per month.  (*Id*. ¶ 5.)  In addition, Avelo and the Avelo Marks have gained significant unsolicited press having been the subject of numerous print and online newspaper articles, videos, and television shows.  (*Id*.)

Avelo has spent millions of dollars advertising, marketing, and promoting its goods and services under the Avelo Marks.  (*Id*. ¶ 6.)  More specifically, from 2022 through 2024, its average annual marketing expenditure was more than $2.6 million.  (*Id*.)  As a result, consumers uniquely associate the Avelo Marks with Avelo as a provider of high-quality, low-cost, airline services.

---

[4] The domain name <avelo.com> redirects to the <aveloair.com> website.

HOWARD & HOWARD ATTORNEYS PLLC

(*Id*.)  Through these efforts, Avelo has achieved commercial success.  (*Id*.)  It presently services approximately two (2) million passengers per year traveling to fifty-three (53) destinations. (*Id*.) Its investments in advertising, marketing, and promoting its goods and services under the Avelo Marks have resulted in average annual gross revenues between 2022 and 2024 of approximately $242 million.  (*Id*.)

In April 2025, Avelo was presented with the opportunity to enter into a contract to provide air transportation services in support of the U.S. government's immigration enforcement efforts. (*Id*. ¶ 7.)  Under the contract, Avelo makes three Boeing 737 aircraft available to facilitate the movement by air of non-citizens.  (*Id*.)  To date, this has primarily consisted of domestic flights between U.S. cities.  (*Id*.)  Avelo entered into the contract solely because it made business sense and not for any political purpose.  (*Id*.)  Avelo previously provided similar transportation services to the prior administration.  (*Id*.)  The contract will provide Avelo with a reliable source of revenue that will help stabilize and subsidize its core passenger service, keep its more than 1,100 employees employed, and reduce its exposure to both economic volatility and seasonal downturns in demand for its passenger service.  (*Id*.)

## II.    The AVELNO! Campaign

Plaintiffs disagree with Avelo's decision to provide airline transportation services in connection with the U.S. government's ongoing immigration enforcement efforts.  (Compl. ¶ 19.) Mr. Miller says he wants to make sure passengers know that Avelo is using its planes to deport people and that he wants to pressure Avelo to reconsider its decision.  (*Id*. ¶ 20.)  He has taken several steps to do this.  On April 16, 2025, Mr. Miller registered the <avelno.com> domain name through domain name registrar Dynadot.  (*See* Myers Decl. ¶ 7 & Ex. B.)  On April 17, 2025, Mr. Miller registered "AvGeek Action Alliance" as a trade name.  (*Id*. ¶ 6 & Ex. E.)  Mr. Miller says he did so to raise money to purchase billboards criticizing Avelo.  (Compl. ¶ 21.)  That same day Mr. Miller registered the <avgeekaction.com> domain name also through domain name registrar Dynadot.  (*See* Myers Decl. ¶ 8 & Ex. C.)  Next, on April 25, 2025, Mr. Miller contracted with Lamar Advertising (defined above as "Lamar") to lease three billboards to be displayed between May 5 and June 15.  (Compl. ¶ 25.)  The first two billboards went up on May 5, 2025.  (*Id*. ¶ 26.)

4906-1722-1712, v. 1

They appeared as follows:



(Player Decl. ¶ 8.)

The billboards featured: "AVELNO!", a confusingly similar version of Avelo's registered AVELO® trademark, its trademarked "wishbone" design mark, the "avelo" house mark, and Avelo's signature violet, teal, white, and yellow color scheme that Avelo uses on its website, in its Avelo Marks, in its advertising and promotional materials, and on signage located throughout airports (the "Infringing Billboards"). Importantly, the green text on the bottom directs viewers to <avelno.com>. The website closely resembles the Infringing Billboards. (*See* ECF No. 14-2, Ex. A to Smith Decl.)

Plaintiffs are using the <avelno.com> website to identify their AVELNO! campaign and to solicit funds from visitors to the page through links that allow visitors to donate money to the AVELNO! campaign using credit cards Amazon Pay, Klarna, or ACH bank transfer, with online payments processed by Stripe. (*See* ECF No. 14-1, Smith Decl. ¶¶ 2, 4; ECF No. 14-4, Ex. C to Smith Decl.) One link is found after the text: "Your support will enable us to extend and expand that messaging." (*Id*.) It is contained in the following underlined text: "The most important thing you can do is not fly Avelo. And if you're able, <u>we'd appreciate your support for the avelNO! campaign</u>." (*Id*.) The other link is found at the bottom of the page. It is contained in the following underlined and italicized text: "If you'd like to donate more than $999 <u>*this link can help*</u> with that." (*Id*.) The source code for the webpage also uses "avelno.com" as an embedded metatag to ensure that the website appears in Internet search engine results. (*Id*. ¶ 2.)

Also, at the bottom of the page, the website contains a link to Plaintiffs' other website <avgeekaction.com>. (*Id*. ¶ 2.) The link is embedded in the following underlined text: "avelNO! is a project of the <u>AvGeekAction Alliance</u>." (*Id*.) The <avgeekaction.com> webpage also

4906-1722-1712, v. 1

HOWARD & HOWARD ATTORNEYS PLLC

contains a large image of the Infringing Billboards featuring the Avelo Marks and Avelo's trade dress. (*Id*. ¶ 3 & Ex. B.) Like <avelno.com> it also refers to "The avelNO! campaign" and contains links that allow visitors to the page to donate money to the "avelNO! campaign" using credit cards and other forms of online payment. (*Id*.) All of the donation links on the <avelno.com> and <avgeekaction.com> webpages redirected to the same Stripe payment processing page. (*Id*., ¶ 4 & Ex. C.)

### III.    Avelo Demands that Plaintiffs Stop Infringing

On May 9, 2025, Avelo's counsel sent Mr. Miller and Proton a cease and desist letter demanding, among other things, that Plaintiffs, "cease all use of the AVELO Marks, logos, designs, and trade dress on (1) websites accessible at the domain names <avelno.com>, <avgeekaction.com>, and <millerfornh.com>, (2) billboards (both electronically and in printed form), (3) social media, and (4) . . . remove all copyrighted pictures of Avelo aircraft displaying Avelo's trademarks and trade dress." (Compl. ¶¶ 29-32; *see also* ECF No. 1-3, Ex. C to Compl. at p. 4 of 17.) The letter requested a written response by May 16, 2025. (*Id*., ECF No. 1-3 at p. 5 of 17.) On May 9, 2025, Avelo's counsel also sent a cease-and-desist letter to Lamar demanding, among other things, that Lamar, "cease its participation in the infringement of Avelo's trademarks and trade dress" and it informed Lamar that it could be held secondarily liable for contributing to the infringement of Avelo's trademarks. (Compl. ¶¶ 40-43; *see also* ECF No. 1-4, Ex. D to Compl. at pp. 3-4 of 15.) The letter requested a written response by May 16, 2025. (*Id*., ECF No. 1-4 at p. 4 of 15.)

### IV.    Lamar Takes the Infringing Billboards Down

On May 15, 2025, Lamar, through counsel, responded to Avelo's cease-and-desist letter stating, among other things, that it respects the intellectual property rights of others, was "in the process of taking down" the billboards. (*See* ECF No. 14-1, Smith Decl. ¶ 10; ECF No. 14-5, Ex. D to Smith Decl.) Implicit in Lamar's correspondence was its recognition that the Infringing Billboards were, in fact, infringing upon Avelo's rights. (*Id*.)

### V.    Plaintiffs Alter The <avelno.com> Website

After receiving Avelo's cease-and-desist letters, Plaintiffs altered the <avelno.com>

4906-1722-1712, v. 1

HOWARD & HOWARD ATTORNEYS PLLC

website by adding a disclaimer to the top and bottom of the webpage indicating at the top that "avelNO.com is not associated with Avelo the airline" and at the bottom that, "we are not at all associated with Avelo the airline." (ECF No. 14-1, Smith Decl. ¶ 9.) Plaintiffs also added links to Avelo's website, <avelo.com>. (*Id.*) Plaintiffs did not, however, alter the appearance of the <avelno.com> website.[5] (*Id.*) The image of the Infringing Billboard, and the accompanying language, "[o]ur billboard will look something like this; final design is still TBD," is still displayed on the <avelno.com> and <avgeekalliance.com> websites as of the date of this motion. (*Id.*)

## VI. Plaintiffs File Suit

On May 16, 2025, Plaintiffs preemptively filed the instant lawsuit. (*Id.* ¶ 8.) Plaintiffs allege that, as of May 16, 2025, the billboards were not being displayed. (Compl. ¶ 46.)

## VII. Plaintiffs' New Billboards

On May 28, 2025, the New Hampshire Independent published an article entitled, "Anti-Avelo Billboards Are Coming Back." (*See* ECF No. 14-1, Smith Decl. ¶ 12; ECF No. 14-6, Ex. E to Smith Decl.) The article quotes Mr. Miller as stating approved "new art," and that Lamar is erecting new versions of Plaintiffs' billboards. It contains pictures of the New Billboards:



(*Id.*; *see also* https://www.newhavenindependent.org/article/avelo_protest_lawsuit (last visited June 11, 2025).) However, notwithstanding Plaintiffs' display of their New Billboards, Plaintiffs have not taken down or restyled the <avelno.com> and <avgeekaction.com> websites. (Smith Decl. ¶ 9.)

///

---

[5] Neither the disclaimers nor the links to Avelo's website were present on <avelno.com> when Avelo's counsel first viewed the webpage on May 8, 2025. (*See* ECF No. 14-1, Smith Decl. ¶ 9.)

**VIII.   Avelo is Suffering Irreparable Harm**

Plaintiffs' use of Avelo's trademarks has already resulted in significant and irreparable harm to Avelo's business, reputation, and goodwill.  (Player Decl. ¶¶ 9-10, 14; *see also* Myers Decl. ¶¶ 2- & Ex. A.)  Consumers have already noted their actual confusion between Plaintiffs' AVELNO! campaign and the services Avelo offers under its AVELO® mark on Reddit attributing Plaintiffs' statements to Avelo itself.  (*See* Myers Decl. ¶¶ 2-6 & Ex. A.)  Moreover, Plaintiffs have expressed their intent to put the Infringing Billboards back up.  (Fountain Decl. ¶¶ 2-4.) Avelo has suffered and, absent a temporary restraining order and/or preliminary injunction, will continue to suffer irreparable harm to its business, reputation, and goodwill.

## LEGAL STANDARD

A party seeking a temporary restraining order or preliminary injunction must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm if preliminary relief is not granted; (3) the balance of equities is in their favor; and (4) an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008); *Stuhlbarg Int'l Sales Co, Inc. v. John D. Brush & Co., Inc*., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (holding analysis for temporary restraining order "substantially identical" to that governing motion for preliminary injunction).   The moving party must make a threshold showing of likelihood of success on the merits and irreparable harm, but a stronger showing on one element may offset a weaker showing on another.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–33 (9th Cir. 2011).

## ARGUMENT

**I.    A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ARE NECESSARY TO PREVENT AVELO FROM CONTINUING TO SUFFER IRREPARABLE HARM.**

**A. Avelo is Likely to Succeed on the Merits of its Trademark Infringement and Cybersquatting Claims.**

**a.   Avelo Is Likely to Succeed on its Trademark Infringement Claim.**

To prevail on a trademark infringement claim, plaintiff must show: (1) it has a valid, protectable mark; and (2) defendant's use of the mark is likely to cause consumer confusion.  *See*

4906-1722-1712, v. 1

HOWARD & HOWARD ATTORNEYS PLLC

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047, 1053 (9th Cir. 1999).

### i. *Avelo Owns Valid and Protectable Marks*

The Avelo Marks are registered on the Principal Register of the United Staters Patent & Trademark Office.  (Player Decl. ¶ 2 & Ex. A.)  The registration certificates are prima facie evidence of the validity and ownership of the Avelo Marks.  15 U.S.C. § 1057(b)("A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate.").  Thus, Avelo owns the *exclusive* right to use the Avelo Marks in U.S. and foreign commerce in connection with its registered and related goods and services.  *Id.*; *see also* 15 U.S.C. § 1115(a).

### ii. *Plaintiffs' Use Has Caused and Will Continue to Cause Confusion*

The likelihood of confusion is the central element in a trademark infringement claim.  *See Goto.com v. The Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000).  "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks."  *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).  In determining whether a likelihood of confusion exists, courts consider: (1) the strength of the allegedly infringed mark; (2) the similarity of the marks; (3) the relatedness of the goods or services; (4) any evidence of actual confusion; (5) marketing channel overlap; (6) the degree of consumer care; (7) the non-movant's intent in selecting the allegedly infringing mark; and (8) expansion of the parties' product lines.  *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  Courts need not analyze each factor to reach a conclusion.  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011) ("The *Sleekcraft* factors are intended as an adaptable proxy for consumer confusion, not a rote checklist."); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010) ("This eight-factor analysis is 'pliant,' illustrative rather than exhaustive, and best understood as simply providing helpful guideposts.").  Some factors are

much more important than others, and . . . it is often possible to reach a conclusion after considering only a subset of the factors." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1054 (citing *Dreamwerks*, 142 F.3d at 1130–32)).  Here, actual confusion has already occurred and the *Sleekcraft* factors show there is a high likelihood of further confusion between Avelo's federally registered AVELO® Marks and Plaintiffs' nearly identical AVELNO! mark.

### 1. Strength of the Marks

A strong mark is inherently distinctive and is afforded the widest scope of protection from infringing uses.  *Sleekcraft*, 599 F.2d at 349.  This is because "[t]he stronger the mark, the more likely it is that encroachment on it will produce confusion." 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:73 (5th ed. 2024) ("McCarthy") (quotations omitted). The strength of a trademark is determined based on its conceptual and commercial strength. *Goto.com v. The Walt Disney Co*., 202 F.3d 1199, 1207 (9th Cir. 2000).

Conceptual strength is determined by the mark's placement on a continuum from weak to strong: generic (no protection), descriptive (no protection absent a showing of secondary meaning), suggestive (moderate protection), and at the strongest end of the continuum, arbitrary (entitled to more protection) and fanciful (entitled to the most protection).  *See id.; see also Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 768 (1992).  "After identifying whether a mark is generic, descriptive, suggestive, arbitrary, or fanciful, the court determines the mark's commercial strength."  *Harman Int'l Indus., Inc. v. Jem Access., Inc.*, 668 F. Supp. 3d 1025, 1039 (C.D. Cal. 2023).  Here, the AVELO mark is conceptually strong because it is a coined, term created solely to function as a mark.  (Player Decl. ¶ 3.)  As a coined term, it is a "fanciful" mark afforded the broadest degree of protection against infringement.  *See Dreamwerks*, 142 F.3d at 1130 n.7 ("Arbitrary or fanciful marks deserve wide protection because the trademark holder can properly expect to run into very little confusion from honest competitors.  A fanciful mark is a coined word or phrase, such as Kodak, invented solely to function as a trademark.").

Commercial strength "may be demonstrated by commercial success, extensive advertising, length of exclusive use, and public recognition."  *Harman Int'l Indus., Inc. v. Jem Access., Inc.*, 668 F. Supp. 3d 1025, 1039 (C.D. Cal. 2023).  Avelo has spent millions of dollars advertising,

marketing, and promoting its goods and services under the Avelo Marks, including AVELO.  (*Id.* ¶ 6.)  More specifically, from 2022 through 2024, its average annual marketing expenditure was more than $2.6 million.  (*Id.*)  As a result of its extensive advertising and marketing utilizing the Avelo Marks, consumers uniquely associate the Avelo Marks with Avelo as a provider of high-quality, low-cost, airline services.  (*Id.*)  Through these efforts, Avelo has achieved commercial success.  (*Id.*)  It presently services approximately two (2) million passengers per year generating approximately $242 million in annual revenue.  (*Id.*)  Because AVELO is conceptually and commercially strong mark this factor favors Avelo.

### 2.  Similarity of the Marks

"[T]he greater the similarity between the two marks at issue, the greater the likelihood of confusion."  *Goto.com*, 202 F.3d at 1206.  Similarity is determined based on sight, sound, meaning, and the overall commercial impression of the marks as they appear in the marketplace.  *Id.*  "One thing is very clear: 'exact similitude is not required' between the allegedly confusing marks."  4 McCarthy § 23:20.  What "is critical is the ***overall*** appearance of the mark as used in the marketplace, not a deconstructionist view of the different components of the marks." *adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1053 (D. Or. 2008) (quoting *Playmakers, LLC v. ESPN*, Inc., 297 F. Supp. 2d 1277, 1283 (W.D. Wash. 2003), *aff'd*, 376 F.3d 894 (9th Cir. 2004) (emphasis in original)).

Here, Plaintiffs' AVELNO! mark differs from Avelo's AVELO® mark by a single letter and an exclamation point, which does not count in the analysis.[6]  *See, e.g., Cuisinarts, Inc. v. John Boos & Co.*, 622 F. Supp. 1168, 1171 (S.D.N.Y. 1985) (finding CUISINART and CUISI CART confusingly similar).  Plaintiffs' insertion of the single letter "n" is a minimal change, insufficient to render AVELO® and AVELNO! dissimilar enough to avoid confusion—as evidenced by the instances of actual confusion.. Accordingly, this factor favors Avelo.

### 3.  Plaintiffs' Intent in Selecting a Similar Mark

The intentional adoption of a similar mark supports a finding that confusion is likely because reviewing courts will presume that the alleged infringer will accomplish his or her purpose

---

[6] Punctuation, such as exclamation marks, generally does not significantly alter the commercial impression of a mark. *See e.g., In re Litehouse, Inc.*, 82 U.S.P.Q.2D 1471, 1474 (T.T.A.B.2007).

4906-1722-1712, v. 1

HOWARD & HOWARD ATTORNEYS PLLC

(*i.e.*, that the public will be deceived). *See Sleekcraft*, 599 F.2d at 354 (comparing SLICKCRAFT and SLEEKCRAFT marks and stating, "[w]hen the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived"). Thus, as Professor McCarthy has observed, "[a] wrongful intent appears easy to infer where defendant knew of plaintiff's mark, had freedom to choose any mark and 'just happened' to choose a mark confusingly similar to plaintiff's mark." 3 McCarthy § 23:115. Plaintiffs' intent in adopting AVELNO! is indisputable. (*See* Compl. ¶ 3 ("The word 'AvelNO' . . . is . . . *Avelo's* blue-text trademark[ ] with the 'N' inserted between the 'L' and the 'O' . . . .") (emphasis added).) Plaintiffs also admit that they "specifically wanted to make sure passengers " heard their message and to that end, intentionally registered the domain name <avelno.com> and adopted the corresponding mark AVELNO!, which differs from the Avelo Marks by just one letter." (Compl. ¶¶ 20, 22.) Further evidence of Plaintiffs' intent to divert consumers is found in the HTML code underlying <avelno.com>. The image file containing the large image of "avelNo!" displayed on the page is named "avelNO.png." (Myers Decl. ¶ 11 & Ex. F.) A comment in the code next to the file name describes the file as: "Logo altering the Avelo brand name to read avelNO!" (*Id*.) Plaintiffs' intentional selection of a confusingly similar mark strongly favors Avelo.

### *4. Actual Confusion*

"Evidence that use of two marks has already led to confusion is persuasive proof that future confusion is likely." *Sleekcraft*, 599 F.2d at 352. When "evidence of actual confusion is available, the evidence is so highly probative of the likelihood of confusion that it is rarely ignored." 5 Louis Altman and Malla Pollack, *Callmann on Unfair Competition, Trademarks & Monopolies* § 21:82 (4th ed.) (hereinafter, "Callmann"). "There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion." 3 McCarthy § 23:13 (quoting *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, (5th Cir. 1971)). In this case, there is already evidence of actual confusion. Users on Reddit[7] have discussed the Infringing

---

[7] Reddit is a social media platform and forum website where users share content like text posts, links, images, and videos, which are then voted up or down by other users. These submissions are organized into user-created communities called "subreddits," each focusing on a specific topic or interest.

4906-1722-1712, v. 1

HOWARD & HOWARD ATTORNEYS PLLC

Billboards, noting their confusion.   User **Barbiebrattt** commented that she saw the Infringing Billboard but was confused as to whether Avelo was its source, stating: "I was driving on I-95 in New Haven and I seen [sic] a billboard by Avelo saying "Does your vacation support their deportation? Fly Avelo" wtf does that mean???"   (Myers Decl. ¶¶ 2-3 & Ex. A.)   Another user, **Cherry-Wine,** stated: "Wait, the billboard was by Avelo in support of them?? Are they doubling down? I could understand that if it said "Don't Fly Avelo"".   (*Id*. ¶ 4 & Ex. A.)   **Barbiebrattt** responded, stating: "That's what's confusing me…"   (*Id*.)   Another user, **SageOfKonisberg** commented: "Is it by Avelo, someone far-right supporting Avelo, or someone critical of Avelo? I'd be surprised if they put that themselves."   (*Id*. ¶ 5 & Ex. A.)   **Barbiebrattt** responded, stating: "Avelo themselves! Next time I will take a picture."   (*Id*.)   User **Magehunter_Skassi** was also confused, stating: "Is that an advertisement or an attack ad."   (*Id*. ¶ 6 & Ex. A.)   **Barbiebrattt** apparently encountered the Infringing Billboard at night while driving and stated, "I'm an idiot I didn't see the red [N] during the day time . . . I knew something was off.  Definitely a protest." (*See* Myers Decl. ¶ 12 & Ex. A.)    In light of this evidence of actual confusion, this factor also favors Avelo.

### 5.   *Similarity of the Parties' Goods/Services*

Confusion is more likely when the parties' goods and services are similar.  *Lindy Pen Co. v. Bic Pen Corp*., 796 F.2d 254, 255 (9th Cir. 1986) (noting the "obvious conclusion that a likelihood of confusion is more readily found when the goods compete"); McCarthy § 24:22 ("Where the goods or services are directly competitive, the degree of similarity of marks needed to cause likely confusion is less than in the case of dissimilar goods or services. The rule is that the more similar the goods and services of the parties, the more likely is confusion caused by the similar marks.").   Here, Avelo owns exclusive nationwide rights in its AVELO® mark for use in connection with, "providing a website featuring information in the field of airline passenger transportation."   (Player Decl. ¶ 2 & Ex. A.)   Similarly, Plaintiffs' Infringing Billboards and <avelno.com> provide information "in the field of airline passenger transportation."   The Infringing Billboards and the <avelno.com> website each refer to Avelo's role in the government's immigration enforcement efforts including by commenting on whether consumers should fly

Avelo Airlines.  (*See* ECF Nos. 1-1, 1-2 (pictures of the Infringing Billboards; ECF No. 14-2 (image of <avelno.com> website); ECF No. 14-3 (image of <avgeeaction.com> website).)  The fact that both Avelo and Plaintiffs provide information related to airline transportation makes confusion more likely than not and weighs heavily in Avelo's favor.

### 6.  *Similarity of Marketing Channels*

When marketing channels are similar, consumers are more likely to be confused by a defendant's use of identical or similar marks.  *See Sleekcraft*, 599 F.2d 353 ("convergent marketing channels increase the likelihood of confusion"); *Interstellar Starship Services v. Epix, Inc.*, 125 F. Supp. 2d 1269, 1277 (D. Or. 2001) ("The likelihood of confusion increases with the overlap in marketing channels utilized by plaintiff and defendant").  Here, Avelo uses its Avelo Marks on billboards and websites.  (Player Decl. ¶ 5.)  So do Plaintiffs.  (*See generally*, Complaint.)  Because the parties' marketing channels are identical, there is an increased likelihood of confusion and this factor favors Avelo.

### 7.  *The Degree of Consumer Care*

The lower the degree of consumer care, the greater the likelihood of confusion.  *Network Automation, Inc.*, 638 F.3d at 1152 (citing *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004)).  On the one hand, purchasers of airline tickets likely exercise some degree of care. On the other hand, however, consumers encountering Plaintiffs' infringing use of the AVELNO! mark exercise an exceedingly low degree of care driving past billboards unable to read the content in great detail given the speed of traffic, resulting in consumers mistakenly believing the billboards originate from Avelo, which they do not. (Myers Decl. ¶¶ 2-6, Exhibit A.) .Accordingly, this factor favors Avelo.

### 8.  *Expansion Into New Markets*

Because Avelo and Plaintiffs both provide information concerning airline transportation on the Internet, this factor is "relatively unimportant" and neutral in the analysis.  *Brookfield*, 174 F.3d at 1060 ("The likelihood of expansion in product lines factor is relatively unimportant where two companies already compete to a significant extent"); *GOTO.com, Inc.*, 202 F.3d at 1205 ("Because Disney and GoTo compete with one another by providing similar Internet search

4906-1722-1712, v. 1

HOWARD & HOWARD ATTORNEYS PLLC

engines, we decline to evaluate the issue of whether there is a likelihood of expansion of their product lines").

### 9.  Summary of the Sleekcraft Analysis

In sum, of the eight (8) *Sleekcraft* factors, seven (7) of them tend to show that confusion is likely and one (1) is neutral.

### b.  <u>Avelo is Likely to Succeed on its Cybersquatting Claim.</u>

Plaintiffs have committed cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (the "ACPA"), by registering <avelno.com> with a bad faith intent to profit.  To prevail on a cybersquatting claim, a plaintiff must prove: "(1) registration of a domain name, (2) that was 'identical or confusingly similar to' a mark that was distinctive at the time of registration," and (3) "a bad faith intent to profit from that mark." *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1030 (9th Cir. 2011) (quoting 15 U.S.C. § 1125(d)(1)).  Each element is satisfied.

### i.  Plaintiffs Registered <avelno.com> on April 16, 2025

Plaintiffs admit to "creating avelNO.com."  (Compl. ¶ 22.)  Plaintiffs registered the domain name on April 16, 2025.  (*See* Myers Decl. ¶ 7 & Ex. B.)  Accordingly, the first element is satisfied.

### ii.  It is Confusingly Similar to the Distinctive AVELO Mark

"In determining whether there is confusing similarity under the ACPA, courts compare the plaintiff's mark with the name of the website." *Super-Krete Int'l v. Sadleir*, 712 F. Supp. 2d 1023, 1031 (C.D. Cal. 2010).  "The ACPA has been interpreted to prohibit 'typosquatting' — that is, registering intentional misspellings of famous trademarks or names." *Verizon California Inc. v. Navigation Catalyst Sys., Inc.*, 568 F. Supp. 2d 1088, 1094 (C.D. Cal. 2008) ("A reasonable interpretation of conduct covered by the phrase 'confusingly similar' is the intentional registration of domain names that are misspellings of distinctive or famous names, causing an Internet user who makes a slight spelling or typing error to reach an unintended site.") (citing *Shields v. Zuccarini*, 254 F.3d 476, 484 (3d Cir. 2001)); *Shutterstock, Inc. v. Pikulski*, No. 14cv0869 WQH (NLS), 2014 U.S. Dist. LEXIS 162994, at *9 (S.D. Cal. Nov. 19, 2014) (holding shutterst0ck.com, shutterst9ck.com, shutterstpck.com, ehutterstock.com, zhutterstock.com, whutterstock.com and,

4906-1722-1712, v. 1

sh7tterstock.com confusingly similar to plaintiff's SHUTTERSTOCK mark); *Lendingclub Bank v. LeNddingclub.Com*, No. 1:22cv0484 (AJT/JFA), 2023 U.S. Dist. LEXIS 48514, at *21 (E.D. Va. Feb. 27, 2023) ("A domain name is considered confusingly similar to a mark when the domain name is a typographical variation of the mark or is a variation of the mark where the mark remains the dominant portion of the domain name."); *Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) ("In assessing whether a mark is confusingly similar, the allegedly infringing domain name does not need to be identical to the registered mark. Rather, the 'dominant or salient portions' of the domain name must be sufficiently similar.").

Here, the <avelno.com> domain name incorporates the AVELO mark in its entirety, retaining the dominant portion of the AVELO mark and inserting only the single letter "N" between the letters "L" and "O." Because it is only one letter off, it is confusingly similar to the AVELO mark. In addition, the AVELO mark is distinctive and was at the time when Plaintiffs registered <avelno.com>. The mark is inherently distinctive because it is a fanciful, coined, term. *See* Part I(A)(a)(ii)(1), *supra*. Moreover, as a federally registered trademark, its distinctiveness is presumed. *See* 15 U.S.C. §§ 1115(a) and 1057(b); *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 876 (9th Cir. 1999) ("Furthermore, registration on the principal register creates a presumption of distinctiveness . . . ."). Accordingly, when Plaintiffs registered <avenlo.com> on April 16, 2025, the AVELO mark was distinctive.

### iii.  Plaintiffs' Bad Faith Intent to Profit is Manifest

Courts consider nine nonexclusive factors when determining whether a bad faith intent to profit exists: (1) the trademark or other intellectual property rights of the non-movant, if any, in the domain name; (2) whether the domain name consists of the legal name of the non-movant; (3) the non-movant's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (4) the non-movant's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (5) the non-movant's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation,

HOWARD & HOWARD ATTORNEYS PLLC

or endorsement of the site; (6) the non-movant's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used the domain name in the bona fide offering of any goods or services; (7) the non-movant's provision of misleading false contact information when applying for the domain-name registration; (8) the non-movant's registration of multiple domain names that are identical or confusingly similar to the marks of others; and (9) the extent to which the mark incorporated in the non-movant's domain name registration is or is not distinctive and famous. 15 U.S.C. § 1125(d)(1)(B)(i).

However, "[t]he most important grounds for finding bad faith are the unique circumstances of the case, which do not fit neatly into the specific factors" enumerated by Congress. *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 946-47 (9th Cir. 2002). Moreover, evidence of bad faith may arise after the registration of the domain name. *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1220 (9th Cir. 2010). "Determining bad faith intent to profit using the nine statutory factors and the 'unique circumstances of the case' is fact dependent." *Anlin Indus., Inc. v. Burgess*, 301 F. App'x 745, 746 (9th Cir. 2008). Because "intent is rarely discernable directly, it must typically be inferred from pertinent facts and circumstances." *Int'l Bancorp, L.L.C. v. Societe des Bains de Mer et du Cercle des Etrangers a Monaco*, 192 F. Supp. 2d 467, 486 (E.D. Va. 2002). Here, six of the nine bad faith factors (Nos. 1-5 and 9) evidence Plaintiffs' bad faith intent to profit from their registration of <avelno.com>.[8]

### 1. *Plaintiffs Have No Trademark Rights in the AVELO Mark*

Trademark rights are acquired by the use of a trademark in commerce. *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) ("To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."). Here, there is absolutely no evidence that Plaintiffs ever used the AVELO mark in commerce. Absent any rights in the AVELO mark, this factor weighs in Avelo's favor.

///

---

[8] Factors, 6, 7, and 8 are inapplicable or neutral because there is no evidence that Plaintiffs offered to sell the domain name after registering it, provided false contact information when registering it, or is engaged in a pattern of registering multiple domain names containing others' trademarks.

HOWARD & HOWARD ATTORNEYS PLLC

### 2. *The Domain Name Contains the AVELO Mark*

The <avelno.com> domain name wholly incorporates the AVELO mark and differs only by the insertion of a single letter—"N" between the "L" and the "O" in AVELO. Because the domain name wholly incorporates the AVELO mark, this factor weighs in Avelo's favor.

### 3. *Plaintiffs' Had No Prior Use of The Domain Name*

Plaintiffs began their "avelNO! campaign" by registering <avelno.com> on April 16, 2025. (*See* Compl. ¶ 22; Myers Decl. ¶ 7 & Ex. B.) There is no evidence that Plaintiffs ever engaged in any prior use of <avelno.com> in connection with the bona fide offering of any goods or services. Because Plaintiffs never engaged in any prior use of <avelno.com> in connection with the bona fide offering of any goods or services, this factor weighs in Avelo's favor.

### 4. *Plaintiffs Have No Bona Fide Noncommercial Use*

Plaintiffs have not engaged in any ***bona fide*** noncommercial use on <avelno.com>. Plaintiffs are doing precisely what the law forbids. They are using the confusingly similar <avelno.com> domain name to trade off of the goodwill Avelo has developed in its Avelo mark in order to confuse Web users into thinking that they are entering a Web site of [Avelo's] in order to expose them to [Plaintiffs'] message of criticism of [Avelo]. To the extent Plaintiffs also criticize Avelo in connection with their attempts to raise money for their "avelNO! campaign" through the <avelno.com> website, their right to criticize Avelo does not trump the public's right not to be deceived by a confusingly similar domain name. *See* 4 McCarthy § 31:148 & n.2 ("[A] Web site containing criticism of a company or an organization cannot be identified by a domain name confusingly similar to the name or trademark of the target group. The right to disseminate criticism on the Internet cannot trump the public's right not to be deceived by a confusingly similar domain name. And the critic has no free speech 'right' to confuse Web users into thinking that they are entering a Web site of the target in order to expose them to the defendant's message of criticism of the target.") Accordingly, any noncommercial use Plaintiffs have engaged in on <avelno.com> has not been *bona fide*, and this factor favors Avelo.

### 5. *Plaintiffs' Clear Intent to Divert Consumers*

Plaintiffs clearly intend to divert consumers looking for Avelo to <avelno.com> website by

**HOWARD & HOWARD** ATTORNEYS PLLC

registering a domain name that they knew was confusingly similar to the AVELO mark. *See* Part I(A)(a)(ii)(3), *supra*.    There is no doubt that Plaintiffs registered <avelno.com> to divert consumers seeking Avelo. *See, e.g., MGM Resorts Int'l v. Unknown Registrant of www.imgmcasino.com*, 2015 U.S. Dist. LEXIS 128397, at *27 (D. Nev. July 8, 2015), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 128394 (D. Nev. Sept. 23, 2015) (defendant's "intent to divert consumers [] apparent" where the domain name [imgmcasino.com] "strongly suggests the website is sponsored or endorsed by [the plaintiff] because it contains [the plaintiff's] mark and name"). Accordingly, this factor favors Avelo.

### 6.  *The Avelo Mark is Distinctive*

The federally registered AVELO mark is inherently distinctive and presumed distinctive. *See* Parts I(A)(a)(1), I(A)(b)(ii), *supra*. Accordingly, this factor favors Avelo.

### 7.  *Summary of the Bad Faith Factors*

Of the six (6) relevant bad faith factors (Nos. 1-5 and 9), every one of them favors Avelo and a finding that Plaintiffs possessed a bad faith intent to profit from their registration of <avelno.com>.

### iv.  *Summary of the Cybersquatting Elements*

Avelo has shown that Plaintiffs registered a domain name that is confusingly similar to Avelo's distinctive AVELO mark and that they did so with a bad faith intent to profit. Because each of the cybersquatting elements are satisfied, Avelo is likely to succeed on the merits of its cybersquatting claim.

### B.  Avelo is Suffering Irreparable Harm to its Reputation, Business, and Goodwill.

When an infringer uses a mark it doesn't own, it "borrows the owner's reputation, whose quality no longer lies within his own control." 4 McCarthy § 24:14 (citing *Yale Elec. Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir. 1928) (Hand, J.)). This loss of control is "an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask." *Id.* Like many circuits, the Ninth Circuit previously held that intangible injuries such as loss of goodwill and reputation must be supported by evidence and more than mere speculation to support the entry of

4906-1722-1712, v. 1

injunctive relief. *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239 (9th Cir. 2013) (reversing a preliminary injunction in the absence of evidence to support irreparable harm). ***But Herb Reed is no longer good law***. In 2020, recognizing the unique nature of trademarks and the intangible nature of the harm trademark owners suffer from infringement, Congress amended the Lanham Act to revive[9] the rebuttable presumption of irreparable harm once the movant seeking a TRO or preliminary injunction demonstrates a likelihood of success on the merits. *See* 15 U.S.C. § 1116(a) ("A plaintiff seeking any such injunction ***shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits . . .*** in the case of a motion for a preliminary injunction or temporary restraining order.") (emphasis added).

Therefore, if this Court finds that Avelo has shown a likelihood of success on the merits (and it should), Avelo is entitled to the statutory presumption of irreparable harm, and the burden shifts to Plaintiffs to rebut the presumption. *See Patagonia, Inc. v. Agnew*, No. 2:25-cv-03283-CV-SK, 2025 U.S. Dist. LEXIS 107374, at *19-21 (C.D. Cal. June 5, 2025) ("because [the movant] Patagonia has shown that it is likely to succeed on the merits of its trademark infringement and counterfeiting claims . . . it is [the non-movant] Defendants' burden to provide evidence that rebuts the presumption of irreparable harm; ***it is not Patagonia's burden to prove that it has been irreparably harmed***.") (emphasis added); *Vital Pharms. v. PhD Mktg., Inc.*, No. CV 20-6745- RSWL-JCX, 2021 WL 6881866, at *6 (C.D. Cal. Mar. 12, 2021) ("Congress has plainly altered the language of Section 1116 to create a presumption of irreparable harm ***and has thereby overridden this circuit's precedents mandating affirmative evidence of such harm***.") (emphasis added); *see also Shakeys Pizza Asia Ventures, Inc*, No. 24-7084, 2025 U.S. App. LEXIS 12052, at *4 (9th Cir. May 15, 2025) ("Under the Lanham Act, a showing of a likelihood of success on the merits creates a rebuttable presumption of irreparable harm, 15 U.S.C. § 1116(a), which the district court reasonably found [defendant] failed to rebut."); *accord, AK Futures LLC v. Boyd Street Distro, LLC*, 35 F.4th 682, 694 (9th Cir. 2022) ("By statute, AK Futures is entitled to a rebuttable presumption of irreparable harm on its trademark claim because the company has shown it will likely succeed on the merits"); *Vision Wheel, Inc v. Vision Forged*, 732 F. Supp. 3d 1161,

---

[9] The Ninth Circuit's decision in *Herb Reed* eliminated the presumption of irreparable harm that previously existed.

HOWARD & HOWARD ATTORNEYS PLLC

1166 (C.D. Cal. 2024) ("Under the Lanham Act, as amended in 2020, a plaintiff seeking injunctive relief to stop infringement of it trademark 'shall be entitled to a rebuttable presumption of irreparable harm…") (citing 15 U.S.C. § 1116(a)).

In *Patagonia,* and cases since the 2020 amendment to the Lanham Act, the Ninth Circuit has repeatedly held that the statutory presumption of irreparable harm is the correct legal standard. *Id*.; *see also AK Futures LLC*, 35 F.4th at 694 (affirming district court's finding of irreparable harm because the defendant failed to rebut the statutory presumption of irreparable harm where plaintiff had shown it would likely succeed on the merits).

However, even absent the presumption there is ample evidence that Avelo has suffered and will continue to suffer irreparable harm.  Plaintiffs have directed their AVELNO! campaign squarely at Avelo's customers and prospective customers.  Plaintiffs' AVELNO! mark is confusingly similar to Avelo's AVELO mark, which Avelo has spent the last several years establishing as a source-identifier in the airline transportation market at great expense.  Thus, Avelo is already suffering irreparable harm to its goodwill and reputation as a result, and it will continue to suffer such irreparable harm in the absence of a TRO/preliminary injunction. *See Well Care Pharm. II, LLC v. W' Care, LLC*, No. 2:13-cv-540-GMN-VCF, 2013 WL 3200111, at *8 (D. Nev. June 24, 2013) ("[T]he similarities between the marks and the identical market in which the parties operate will likely result in consumer confusion," which "poses an ongoing risk of irreparable injury to Plaintiff's goodwill and reputation."); *Boldface Licensing + Branding v. By Lee Tillett, Inc*., No. 12-cv-10269-ABC-PJWX, 2013 WL 1685464, at *15 (C.D. Cal. May 11, 2013) (defendant's use of confusingly similar mark would likely result in lost business opportunities, customers, and goodwill); *Century 21 Real Estate LLC v. All Prof'l Realty, Inc*., 2011 WL 221651, at *12 (E.D. Cal. 2011) ("Regardless of whether the presumption still applies, in this case it is clear that Century 21 will suffer irreparable harm if All Professional is not enjoined from using its trademarks . . . . [T]he Ninth Circuit has recognized that damage to goodwill is an irreparable harm.").

**C.  The Balance of Hardships Weighs in Avelo's Favor.**

The balance of hardships (*i.e*., equities) weighs strongly in Avelo's favor because the

HOWARD & HOWARD ATTORNEYS PLLC

requested injunction will not harm Plaintiffs at all but, if it is denied, Avelo will continue to suffer irreparable harm to the goodwill embodied in the Avelo Marks.  If enjoined, Plaintiffs may suffer some inconvenience, limited to setting up a new domain name and website, but they will not suffer any irreparable harm because they remain free to promote their Anti-Avelo message.  They would only be limited from using Avelo's intellectual property to do so.  For example, Avelo has no objection Plaintiffs displaying the New Billboards because they do not use Avelo's trademarks as a designator of source, only descriptively to refer to Avelo.  On the other hand, absent an injunction, Avelo will still have to contend with confused customers and customer complaints that have had and will continue to have an unquantifiable effect on Avelo's business, reputation, and goodwill.  Accordingly, this factor strongly favors the entry of a temporary restraining order and preliminary injunction.

### D.  The Public Interest Favors Injunctive Relief.

The public has an interest in not being deceived or confused.  *Wetzel's Pretzels, LLC v. Johnson*, 797 F. Supp. 2d 1020, 1028 (C.D. Cal. 2011).  In this case, the public's interest in not being deceived by Plaintiffs and/or confused as to the source of the AVELNO! campaign or as to whether a connection exists between Avelo and Plaintiffs weighs strongly in favor of injunctive relief.

### E.  Alternatively, an Injunction is Warranted Under the Sliding Scale.

"[S]erious questions going to the merits and a balance of hardships that tips sharply toward the [moving party] can support issuance of a preliminary injunction, so long as the [moving party] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Alliance for the Wild Rockies*, 632 F.3d at 1131-32 (internal quotations omitted).  A "serious question" is one on which the moving party has a "fair chance" of success.  *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994).  Here, Avelo has shown that Plaintiffs' "avelNO! campaign" has, from day one, set out not just to express criticism of Avelo, but also to damage Avelo's goodwill in its Avelo Marks by using Avelo's own intellectual property to lure consumers to its message and solicit them for money, confusing them in the process.  Avelo has also shown that it is suffering irreparable harm to its goodwill, that Plaintiffs will suffer little, if

any hardship if enjoined, and the public interest favors an injunction to prevent consumer confusion.

### F. Only a Minimal Bond Should be Required.

The Court has wide discretion in setting the bond amount and may dispense with the requirement altogether when there is no realistic likelihood of harm to the defendant or where the moving party establishes a strong likelihood of success on the merits. *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009); *Van de Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985). No bond should be required here because Avelo has shown a strong likelihood of success on the merits and there is little to no chance that Plaintiffs will suffer damages from being wrongfully enjoined.

### <u>CONCLUSION</u>

For all of the foregoing reasons, Avelo respectfully requests that the Court enter an order granting the relief requested above.

Dated: this 24th day of June 2025

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By: _____/s/ Jonathan W. Fountain_____
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
Joanna M. Myers, Esq.
Nevada Bar No. 12048
3800 Howard Hughes, Suite 1000
Las Vegas, NV 89169
Telephone: (702) 257-1483
Email: jwf@h2law.com
Email: jmm@h2law.com

Andrew M. Smith, Esq.
Oregon Bar No. 172774
Has complied with LR IA 11-2
RESONATE IP, LLC
115 N.W. Oregon Ave., Suite 12
Bend, Oregon 97703
Telephone: (541) 240-8020
Email: dsmith@resonateip.com

*Attorneys for Defendant Avelo, Inc.*

4906-1722-1712, v. 1