Charles Gerstein, Esq.
(*pro hac vice application filed*)
Jeremy Shur, Esq.
(*pro hac vice application forthcoming*)
GERSTEIN HARROW LLP
400 7th Street NW, Suite 304
Washington, DC 20025
charlie@gerstein-harrow.com
(202) 670-4809

Jason Harrow, Esq.
(*pro hac vice application filed*)
GERSTEIN HARROW LLP
12100 Wilshire Blvd. Suite 800
Los Angeles, CA 90025
jason@gerstein-harrow.com
(323) 744-5293

Bradley S. Schrager, Esq. (SBN 10217)
Daniel Bravo, Esq. (SBN 13078)
BRAVO SCHRAGER LLP
6675 South Tenaya Way, Suite 200
Las Vegas, Nevada 89113
Tele.: (702) 996-1724
bradley@bravoschrager.com
daniel@bravoschrager.com

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

PROTON ASSOCIATES LLC, and
SETH MILLER,

        Plaintiffs,

    vs.

AVELO, INC.,

        Defendant.

Case No.: 2:25-cv-00856-JCM-BNW

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

**Preliminary Statement**

1.          Defendant Avelo Airlines Incorporated is an airline that primarily operates low-cost passenger service between small regional airports. In April of 2025, Avelo signed a contract with the United States Immigration and Customs Enforcement Agency (ICE) to "support the Department's deportation efforts." Avelo provides this support by flying migrants out of the country from a base in Mesa, Arizona.

2.          Avelo's decision to support the government's deportation efforts caused many people across the country to protest the airline. The New Haven Immigrants Coalition circulated an online petition calling for a boycott. Protesters picketed in front of airports in Connecticut, Delaware, California, and Florida. The union representing Avelo's flight attendants issued a statement. And the governors of Connecticut and Delaware denounced Avelo.

3.          Plaintiff Seth Miller joined this effort by starting a campaign called the AvGeek Action Alliance, which urges travelers to choose airlines consistent with their political values. As part of this campaign, Miller leased two billboards on the road to Avelo's hub in New Haven reading "Does your vacation support their deportation? Just say AvelNO! Paid for by AvGeek Action Alliance – avelNO.com." The word "AvelNO" in the ad is a parody of Avelo's blue-text trademark, with the "N" inserted between the "L" and the "O" in red. Miller's purpose in buying the billboard was, unsurprisingly, not to identify airline tickets for sale, but rather to criticize Avelo.

4.          In response, Avelo did not start its own advertising campaign, explain why Miller is wrong to the public, change its business, or do any of the innumerable other things it could do to contest speech it does not like. Instead, Avelo sent Miller a letter threatening to sue him for copyright, trademark, and trade-dress infringement if he did not provide "signed, written assurances" that he would stop

voicing his own speech by 5pm on Friday, May 16. The letter warned Miller that he may personally face "statutory damages of up to $150,000 per infringement" alongside "attorney's fees and costs." Avelo then sent a letter to the company from which Miller is leasing the billboards threatening *them* with liability and causing them to take the billboards down.

5.      Miller brings this Action seeking a declaratory judgment that his campaign does not infringe Avelo's trademarks, trade dress, or copyright, which it does not for at least three reasons. First, Miller's speech cannot possibly infringe Avelo's marks because it is entitled to protection under the *Rogers* First Amendment test—Miller's speech does not function as a trademark, it clearly mocks Avelo's trademark, and it is therefore paradigmatic protected speech. Second, Miller's speech was not "in connection with" the sale of goods or services as required by the trademark laws under clear Ninth Circuit precedent. And, finally, Miller's speech was a textbook example of nominative fair use (for both trademark and copyright purposes) and could not possibly have confused any reasonable person about the source of airline passenger service.

6.      Avelo is free to disagree with Miller, to criticize him, and to advocate its position to the public. It is free to call Miller a naif, a fool, or worse. But it is not free to use baseless threats of litigation to suppress Miller's criticism. This Court should declare that Miller does not violate Avelo's copyright, trademark, and trade dress, and allow the public to continue seeing Miller's free speech.

## Parties

7.      Plaintiff Proton Associates LLC is a limited-liability company formed under the laws of New Hampshire and headquartered in Dover, New Hampshire. It does business as AvGeek Action Alliance. Plaintiff Seth Miller formed and partly owns Proton. He is a resident of Dover, New Hampshire. (This Complaint collectively refers to Plaintiffs as "Miller.")

8.      Defendant Avelo Incorporated is a corporation formed under the laws of Nevada and headquartered in Houston, Texas.

## Jurisdiction and Venue

9.      This Court has subject-matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331 and § 1338 because they arise under the Lanham Act and the Copyright Act.

10.     This Court may exercise general personal jurisdiction over Avelo because Nevada is its state of incorporation.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because this is a judicial district in which Avelo "resides" as defined by 28 U.S.C. § 1391(c)(2).

12.     This Court may enter a declaratory judgment under 28 U.S.C. § 2201 because Avelo's letter created an actual controversy by putting Miller in a reasonable apprehension of being sued for trademark and copyright infringement.

## Avelo's Business and The Protests it Occasioned

13.     Avelo is the successor to Casino Express Airlines and Xtra Airways, carriers that had operated charter flights since the 1980's. Avelo rebranded and began operating scheduled commercial service in 2021. Later that year, Avelo announced that it would begin commercial service from Tweed New Haven Airport, which then did not have any commercial service. Since 2021, Tweed has become Avelo's largest base.

14.     In April of this year, Avelo signed a contract with ICE to operate what Avelo calls "deportation flights." According to the New York *Times*, "ICE outsources many flights" to "little-known charter airlines," but "[c]ommercial carriers typically avoid this kind of work so as not to wade into politics and upset customers or employees." Niraj Choksi, *Avelo Airles Faces Backlash for Aiding Trump's Deportation Campaign*, N.Y. TIMES, May 12, 2025, at B5. But Avelo is struggling financially and so, according to Avelo's founder and chief executive, the money Avelo

1   could stand to make operating deportation flights is too good to pass up. *Id*.

2      15.    The decision to operate deportation flights prompted swift and
3   widespread protests from passengers, immigration groups, unions, and elected
4   officials. *Id*. Avelo responded to these protests with a statement to the *Times*: "We
5   realize this is a sensitive and complicated topic. After significant deliberations, we
6   determined the charter flying will provide us with the stability to continue expanding
7   our core scheduled passenger service and keep our more than 1,100 crew members
8   employed for years to come."

9      16.    To Miller's knowledge, Avelo has not attempted to voice any other
10  response to the criticism it faces.

11                            **Miller's Campaign**

12     17.    Miller is a journalist who covers the aviation industry. (He also
13  represents Strafford County District 21 in the New Hampshire State House.)

14     18.    Miller disagrees with Avelo's decision to assist in the government's
15  deportation efforts.

16     19.    When protests of Avelo began popping up at airports Avelo serves,
17  Miller wanted to join in. He specifically wanted to make sure passengers knew that
18  Avelo was using its planes to deport people and to pressure Avelo to reconsider that
19  decision.

20     20.    To do that, Miller created the AvGeek Action Alliance (with
21  "AvGeek" as shorthand for "Aviation Geek") and set out to raise money to support the
22  purchase of a billboard criticizing Avelo.

23     21.    Miller began by creating avelNO.com. A permanent link to the site
24  as it appeared on May 14, 2025, is available at https://perma.cc/R2XY-Q9LP.

25     22.    AvelNO.com could not possibly, by any stretch of the imagination, be
26  confused for a website created by Avelo. For starters, it currently begins—right at the
27  top of the page—with the phrase "avelNO.com is not associated with Avelo the

28

1   airline." It then helpfully directs would-be Avelo customers to avelo.com in case they

2   stumbled upon avelno.com by accident and are looking for plane tickets. The site goes

3   on to clearly criticize Avelo, explaining its April 2025 contract with ICE and saying

4   that "Picking a business that puts profits ahead of humanity is a bad choice." "That's

5   why," the site continues, "we're asking you to just say 'avelNO!' and not fly with Avelo

6   until it stops operating charters for ICE."

7       23.     Miller quickly raised enough money to rent out two billboards on the

8   way to Tweed Airport.

9       24.     Miller has not, and does not intend to, profit from the website or any

10  other part of his AvelNO campaign. Every dollar he raised went to or will go to renting

11  billboards and other advertising to criticize Avelo.

12      25.     On April 25, 2025, Miller entered a contract with Lamar Advertising

13  Corporation to lease three billboards, one from May 5 to May 25, one from May 5 to

14  June 1, and one from June 2 to June 15.

15      26.     The first two billboards went up on May 5, 2025.

16      27.     Exhibits A and B are true and correct images of the billboards.

17      28.     As with Miller's website, no reasonable person could confuse this

18  billboard for an Avelo advertisement. It prominently declares that it is paid for by

19  AvGeek Aviation Alliance, and it prominently criticizes Avelo. The billboard is

20  obviously a parody.

21                      **Avelo's Litigation Threat**

22      29.     On May 12, 2025, Miller received a FedEx package at his home in

23  Dover. The package was from Drew Smith, *esq.*, a lawyer at a firm called Resonate

24  IP in Bend, Oregon.

25      30.     In the package was a letter, which Miller also received by email. The

26  letter is attached as Exhibit C.

27      31.     In the letter, Smith contends that "the blatant use of our client's

28

FIRST AMENDED COMPLAINT

trademarks and trade dress with '*The avelNo! campaign*,' and associated websites, billboards, and marketing material, constitutes deliberate and willful trademark infringement and unfair competition." Specifically, Smith contends that because "AvGeek's websites actively solicit contributions" and because "the billboard display . . . is a deliberate attempt to interfere with Avelo's air transportation services" that means that "the unauthorized use of our client's trademarks constitutes commercial speech in commerce and falls within the jurisdictional purview of the Lanham Act." Smith further contends that "[t]he mutilation of our client's well-known house mark AVELO also constitutes dilution by tarnishment under the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c)." Smith reports, without citing any specific example, that "We have already been notified of instances of actual confusion wherein consumers have mistakenly believed that the billboard is sponsored or affiliated with Avelo, demonstrating that confusion is not only likely but inevitable."

32.    Smith then demands that Miller "*immediately* cease," and provide "signed written assurances" that it will not resume, "all use of the AVELO marks, logos, designs, and trade dress" and that it "remove all copyrighted pictures of Avelo aircraft . . . ." (Emphasis in original.) Smith threatens Miller with personal liability for three times the amount of money he raised on the website, statutory damages of $150,000 per alleged infringement, and attorneys' fees and costs. "To avoid any escalation of this matter," Smith writes, "we ask that you provide your written response to this letter *no later than 5:00 pm on Friday, May 16, 2025.*" (Emphasis in original.)

33.    Smith's litigation threat is extraordinary. He cites only three cases in support of his positions, all of which are more than 25 years old and one of which has been negatively cited by controlling cases. He cites a rationale for applying the Lanham Act to campaigns like Miller's that governing precedent explicitly rejects. *Compare* Ex. A at 3 (arguing that Miller's parody of Avelo's mark is "in connection

with" the sale of goods or services because it is "a deliberate attempt to interfere with Avelo's air transportation services" (citing *Planned Parenthood Fed. of Am., Inc. v. Bucci*, 1997 WL 1333133 (S.D.N.Y. 1997)), *with Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005) ("To the extent that [courts have] held that the Lanham Act's commercial use requirement is satisfied because the defendant's use of the plaintiff's mark . . . may deter customers from reaching the plaintiff's [goods or services], we respectfully disagree with that rationale, . . . [which would] would encompass almost all uses of a registered trademark, even when the mark is merely being used to identify the object of consumer criticism."). He wrongly cites the "use in commerce" clause when the question he references is in fact governed by the "use in connection with the sale of goods" clause of the Lanham Act. *Id* at 677. And he cites the Trademark Dilution Act without mentioning that the act *explicitly exempts parodies* where they are not used to identify the defendant's goods, as explained in a Supreme Court case only two years ago. *See Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140, 162 (2023) ("As described earlier, the 'fair use' exclusion [from the Trademark Dilution Act] specifically covers uses 'parodying, criticizing, or commenting upon' a famous mark owner.").

34.    Perhaps most extraordinary, the letter threatens statutory damages for copying a "photograph" of Avelo's "tail." But Avelo does not own the copyright in that photograph—it was taken by a third party and Miller is authorized to use it. Even if Avelo meant to allege that the tail *design* is copyrighted, statutory damages for copyright violations are available only when the copyright has been previously registered. 17 U.S.C. § 412. After a diligent search, Miller's counsel can find no evidence that Avelo ever registered a copyright in that design, and, based on a recent case regarding registration of airline tail designs, it appears unlikely that Avelo could register its design, which is little more than a few colored, curved lines. The threat of $150,000 statutory damages is, therefore, objectively baseless.

35.    The letter was addressed to Miller at a time when he did not have counsel, and it threatens him with devastating personal liability.

36.    Resonate IP, according to its website, "is a full-service intellectual property firm specializing in all aspects of trademarks and brand protection." Smith reports that he is an active member of the International Trademark Association and that he is experienced in trademark litigation.

37.    Avelo subjectively knew that its litigation threats were baseless.

38.    Smith's letter is an attempt to use meritless legal contentions to silence criticism of Avelo during a period of intense political dispute over its actions.

39.    Miller does not want to cease his constitutionally protected speech.

**<u>Avelo Threatens The Company Leasing Miller The Billboards</u>**

40.    On May 14, 2025, Miller received a call from Lamar, the company from which he had leased the billboards.

41.    According to Lamar, Avelo sent Lamar a letter on May 9. That letter is attached as Exhibit D.

42.    Avelo's letter to Lamar makes the same objectively baseless threats that Avelo's letter to Miller makes.

43.    Avelo's letter is also signed by Smith and on Resonate IP letterhead.

44.    On information and belief, Avelo, as advised by Smith, knows that its litigation threats to Lamar are baseless.

45.    On information and belief, Avelo sent its May 9 letter to Lamar because it believed that Lamar would take down the billboards merely to avoid the process of litigation.

46.    On May 15, Miller spoke with a Lamar representative. She told Miller that because of Avelo's letter, Lamar had taken down Miller's billboards.

47.    She further told Miller that if Avelo had not sent a letter to Lamar, Lamar would not have taken down Miller's billboards.

48.     Since the filing of the original complaint in this matter, Lamar authorized a replacement billboard that does not use Miller's original design.

49.     Miller wishes to use his original design.

### Claims for Relief

***Count One: Declaratory Judgment That Miller's Speech Does Not Infringe Avelo's Copyrights. 17 U.S.C. § 501, et seq.***

50.     Miller incorporates all prior paragraphs by reference.

51.     On May 9, 2025, Avelo threatened to sue Miller for copying a "copyrighted picture[] of Avelo aircraft."

52.     Avelo does not own the copyright in that image and so Miller cannot possibly infringe Avelo's copyright. The photograph was taken by a third party and Miller has secured the necessary rights for public display of the image.

53.     In addition, or in the alternative, Miller's use of the image constitutes fair use because it criticizes and parodies the original work.

54.     In addition, regardless of any potential infringement, statutory damages are unavailable because Avelo has not registered any relevant copyright.

55.     A declaratory judgment is proper under 28 U.S.C. § 2201 because Avelo's letter and Miller's intent to continue his speech create an actual controversy and this Court may "declare the rights" of Miller to continue that speech without liability.

***Count Two: Declaratory Judgment That Miller's Speech Does Not Infringe Avelo's Trademarks Under 15 U.S.C. § 1114***

56.     Miller incorporates all prior paragraphs by reference.

57.     Miller's website and billboard did not constitute a designation of source or identification of any of Miller's goods or services. To state a claim for trademark infringement sufficient to defeat Miller's First Amendment rights, then, Avelo would have to show that Miller's challenged use of Avelo's mark has no

relevance to Miller's protest or that it explicitly misleads as to the source or content of Miller's protest. Miller's speech does not do these things, and so is protected by the First Amendment.

58.     Miller's website and billboard were not commercial because their purpose was not to sell a competing product or service but rather to criticize Avelo.

59.     Miller's website and billboard could not cause a likelihood of confusion because they are unquestionably parodies on their face and they explicitly and prominently disclaim any association with Avelo.

60.     In the alternative or additionally, Miller's website and billboard constitute a nominative fair use of Avelo's mark because they criticize, parody, and comment on Avelo's business.

61.     A declaratory judgment is proper under 28 U.S.C. § 2201 because Avelo's letter and Miller's intent to continue his speech create an actual controversy and this Court may "declare the rights" of Miller to continue that speech without liability.

**Count Three: Declaratory Judgment That Miller's Speech Does Not Infringe Avelo's Trade Dress Through Dilution Under 15 U.S.C. § 1125(c)**

62.     Miller incorporates all prior paragraphs by reference.

63.     Miller's website and billboard did not constitute a designation of source or identification of any of Miller's goods or services.

64.     Miller's website and billboard "identify[] and parody[], criticiz[e], or comment[] upon" Avelo.

65.     Miller's website and billboard therefore cannot constitute dilution through tarnishment under 15 U.S.C. § 1125(c).

66.     A declaratory judgment is proper under 28 U.S.C. § 2201 because Avelo's letter and Miller's intent to continue his speech create an actual controversy and this Court may "declare the rights" of Miller to continue that speech without

1  liability.

2  **<u>Prayer for Relief</u>**

3  Plaintiffs Proton Associates LLC and Seth Miller respectfully request:

4  A.    A declaratory judgment that neither Proton Associates LLC nor Seth

5  Miller is liable to Defendant Avelo Incorporated for copyright infringement.

6  B.    A declaratory judgment that neither Proton Associates LLC nor Seth

7  Miller is liable to Defendant Avelo Incorporated for trademark infringement.

8  C.    A declaratory judgment that neither Proton Associates LLC nor Seth

9  Miller is liable to Defendant Avelo Incorporated for trade dress infringement.

10  D.    An award of attorneys' fees and costs under 15 U.S.C. § 1117(a), 17

11  U.S.C. § 505, Fed. R. Civ. P. 54, or any other applicable provision.

12  E.    Any other relief deemed just and proper.

13  / / /

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

## **Jury Trial Demanded**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

DATED June 25, 2025.

**BRAVO SCHRAGER LLP**


By:    */s/ Daniel Bravo*
   Bradley S. Schrager, Esq. (SBN 10217)
   Daniel Bravo, Esq. (SBN 13078)
   6675 South Tenaya Way, Suite 200
   Las Vegas, Nevada 89113

   Charles Gerstein, Esq.
   (*pro hac vice application filed*)
   Jeremy Shur, Esq.
   (*pro hac vice application forthcoming*)
   GERSTEIN HARROW LLP
   400 7th Street NW, Suite 304
   Washington, DC 20025

   Jason Harrow, Esq.
   (*pro hac vice application filed*)
   GERSTEIN HARROW LLP
   12100 Wilshire Blvd. Suite 800
   Los Angeles, CA 90025

   *Attorneys for Plaintiffs*

FIRST AMENDED COMPLAINT

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June, 2025, a true and correct copy FIRST AMENDED COMPLAINT was served by electronically filing with the Clerk of the Court using the Odyssey eFileNV system and serving all parties with an email-address on record, pursuant to Administrative Order 14-2 and Rule 9 of the N.E.F.C.R.


By:    */s/ Dannielle Fresquez*
       Dannielle Fresquez, an Employee of
       BRAVO SCHRAGER LLP