Charles Gerstein
(*pro hac vice*)
Jeremy Shur
(*pro hac vice*)
GERSTEIN HARROW LLP
400 7th Street NW, Suite 304
Washington, DC 20025
charlie@gerstein-harrow.com
(202) 670-4809

Jason Harrow
(*pro hac vice*)
GERSTEIN HARROW LLP
12100 Wilshire Blvd. Suite 800
Los Angeles, CA 90025
jason@gerstein-harrow.com
(323) 744-5293

Bradley S. Schrager, Esq. (SBN 10217)
Daniel Bravo, Esq. (SBN 13078)
BRAVO SCHRAGER LLP
6675 South Tenaya Way, Suite 200
Las Vegas, Nevada 89113
Tele.: (702) 996-1724
Email: bradley@bravoschrager.com
Email: daniel@bravoschrager.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

PROTON ASSOCIATES LLC, and
SETH MILLER,

   Plaintiffs,

  vs.

AVELO, INC.,

   Defendant.

Case No.: 2:25-cv-00856-CDS-BNW

**PLAINTIFFS' OPPOSITION TO AVELO, INC.'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT .....................................................................1

BACKGROUND .........................................................................................2

    A.    Facts ..........................................................................................2

    B.    This proceeding ........................................................................4

LEGAL STANDARD...................................................................................5

ARGUMENT..............................................................................................6

I.    Avelo Cannot Establish A Likelihood of Success on the Merits ..........6

    A.    Avelo's Trademark Infringement Claims Fails as a Matter of
        Law.........................................................................................6

        1.    avelNO! does not meet the Lanham Act's commercial use
            requirement. ..................................................................7

        2.    Avelo has not shown any likelihood of confusion.......................10

        3.    avelNO! makes fair use of elements of Avelo's mark. ................11

        4.    Avelo loses even if the *Sleekcraft* factors apply. .........................13

    B.    Miller Lacks the Requisite Intent to be a Cybersquatter .....................15

II.    Avelo is not Suffering any Irreparable Injury.....................................20

III.    The Balance of Hardships Leans in Miller's Favor ............................22

IV.    An Injunction is Decidedly Against the Public Interest....................23

CONCLUSION ........................................................................................24

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

# TABLE OF AUTHORITIES

**Cases**

*Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, 2015 WL 5311085
(C.D. Cal. Sept. 10, 2015) ................................................................ 18

*Amoco Prod. Co. v. Gambell*, 480 U.S. 531 (1987) ....................................... 22

*Aviva USA Corp. v. Vazirani*, 902 F. Supp. 2d 1246 (D. Ariz. 2012), *aff'd*, 632
F. App'x 885 (9th Cir. 2015) ......................................................... 8, 11, 14

*Blair v. Automobili Lamborghini SpA*, 754 F. Supp. 3d 849 (D. Ariz. 2024) ........... 15

*Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469 (1989) .................... 9

*Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005) ................... passim

*Brookfield Comms., Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036 (9th Cir. 1999) . 13, 14

*Buckley v. Valeo*, 424 U.S. 1 (1976) ......................................................... 9

*Child. of the Rosary v. City of Phoenix*, 154 F.3d 972 (9th Cir. 1998) .................. 9

*Cohen v. California*, 403 U.S. 15 (1971) .................................................. 22

*Concord Music Grp., Inc. v. Anthropic PBC*, No. 24-cv-03811-EKL, 2025 WL
904333 (N.D. Cal. Mar. 25, 2025) ....................................................... 5

*Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) ............................................. 23

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127 (9th Cir. 1998) ...... 10, 14

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985) ................. 9

*Elrod v. Burns*, 427 U.S. 347 (1976) ..................................................... 21

*Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135 (9th Cir. 2002) ...................... 15

*Florida Bar v. Went For It, Inc.*, 515 U.S. 618 (1995) .................................... 9

*Innovativ Media Grp., Inc. v. Beys*, No. 2:22-cv-01362, 2022 WL 3701579 (D.
Nev. Aug. 26, 2022) .................................................................... 22

*Lamparello v. Falwell*, 420 F.3d 309 (4th Cir. 2005) ............................ 16, 17, 21

*LegalForce RAPC Worldwide, PC v. LegalForce, Inc.*, 124 F.4th 1122 (9th Cir.
2024) ..................................................................................... 7

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

*Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352 (9th Cir. 1985) ........................ 17

*Lockheed Missile & Space Co. v. Hughes Aircraft Co.,* 887 F. Supp. 1320 (N.D.
    Cal. 1995) .......................................................................................................... 5

*Lopez v. Brewer,* 680 F.3d 1068 (9th Cir. 2012) ............................................... 5

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,* 634 F.2d 1197
    (9th Cir. 1980) ................................................................................................. 22

*Lucas Nursery & Landscaping, Inc. v. Grosse,* 359 F.3d 806 (6th Cir. 2004) .......... 16

*Mattel, Inc. v. MCA Recs., Inc.,* 296 F.3d 894 (9th Cir. 2002) ................................. 9

*Maxim Integrated Prods., Inc. v. Quintana,* 654 F. Supp. 2d 1024 (N.D. Cal.
    2009) ................................................................................................................ 23

*Melendres v. Arpaio,* 695 F.3d 990 (9th Cir. 2012) ......................................... 21

*MGA Ent. Inc. v. Harris,* No. 2:20-cv-11548, 2025 WL 1416045 (C.D. Cal. Apr.
    15, 2025) ......................................................................................................... 20

*MGM Resorts Int'l v. Unknown Registrant of www.imgmcasino.com,* No. 2:14-
    CV-1613-GMN-VCF, 2015 WL 5674374 (D. Nev. July 8, 2015) ...................... 19

*New Kids on the Block v. News Am. Pub., Inc.,* 971 F.2d 302 (9th Cir. 1992).... 11, 12,
    21

*Pac. Portland Cement Co. v. Food Mach. & Chem. Corp.,* 178 F.2d 541 (9th
    Cir. 1949) ........................................................................................................ 19

*Save Our Summers v. Washington State Dep't of Ecology,* 132 F. Supp. 2d 896
    (E.D. Wash. 1999) .......................................................................................... 22

*Short v. Brown,* 893 F.3d 671, 675 (9th Cir. 2018) ......................................... 6

*Solid Host, NL v. Namecheap, Inc.,* 652 F. Supp. 2d 1092 (C.D. Cal. 2009) ............ 15

*Surfvivor Media, Inc. v. Survivor Prods.,* 406 F.3d 625 (9th Cir. 2005) ................... 14

*Toyota Motor Sales, U.S.A., Inc. v. Tabari,* 610 F.3d 1171 (9th Cir. 2010) .............. 12

*United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803 (2000) .............. 23

*Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7 (2008)................................................. 5

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

**Statutes**

15 U.S.C. § 1114(1)(a) ................................................................................. 7

15 U.S.C. § 1125(b)(i) ................................................................................. 16

15 U.S.C. § 1125(b)(i)(I) ............................................................................ 16

15 U.S.C. § 1125(b)(i)(VIII) ....................................................................... 19

15 U.S.C. § 1125(d)(1)(A) .......................................................................... 15

15 U.S.C. § 1125(d)(1)(A)(i) ...................................................................... 15

15 U.S.C. § 1125(d)(b)(ii) .......................................................................... 18

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

## PRELIMINARY STATEMENT

Earlier this year, Defendant-Counterclaimant Avelo Airlines contracted with the Trump administration to facilitate its mass deportation efforts. Plaintiff and Counterclaim-Defendant Seth Miller exercised his First Amendment rights by starting the avelNO! public service campaign to criticize Avelo and make the public aware of Avelo's decision. But instead of taking Miller's criticism on the chin, Avelo now seeks a temporary restraining order and preliminary injunction to suppress the avelNO! public service campaign. The motions should be denied.

Legislators and the courts have carefully calibrated intellectual property law to account for Americans' right of free expression. But Avelo does not even acknowledge the correct legal framework for analyzing trademark infringement claims where the speech at issue is noncommercial and focused on criticizing the trademark holder. Instead, Avelo argues that Avelo (the airline) and avelNO! (the political speech campaign) are advertising similar services. *See* ECF No. 16 at 14. (ECF numbers 16 and 17 are identical.) That's preposterous: Miller is not an airline trying to use Avelo's mark to trick customers into buying tickets; he is an individual who disagrees with Avelo's decision to use its airplanes to deport people. Avelo and avelNO! do not compete in the marketplace. And, viewed through this lens, and aided by robust precedent, Miller's avelNO! campaign does not violate Avelo's intellectual property rights. The billboards and websites he set up to critique Avelo are within his First Amendment rights and do not violate either statute that Avelo asserts.

Avelo further fails to show that it will suffer irreparable injury absent an injunction, that the balance of hardships tips in its favor, or that an injunction stifling avelNO!'s criticism would be in the public interest. On these points, Avelo comes to the Court with a single shred of evidence, which indeed undermines its own case: it cites a Reddit post from a momentarily confused person who describes herself as "an

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

idiot" for ever believing that Avelo had anything to do with the billboard. Otherwise, Avelo merely asserts, without support, that avelNO! is having an "unquantifiable effect on Avelo's business, reputation, and goodwill." ECF No. 17 at 23. But attorney argument is not evidence. Because Avelo can neither show a likelihood on the merits nor a clear showing that it deserves an injunction, its motions should be denied.

## BACKGROUND

### A.    Facts

Miller is an involved public citizen and an aviation enthusiast. He was raised by a schoolteacher who taught him from a young age to contribute to his community, and today Miller serves as a member of the New Hampshire House of Representatives. Miller Decl. ¶ 3. For the past decade, Miller has worked as a journalist and consultant covering the airline industry. *Id.* ¶ 2. His love of air travel has taken him on over 1,900 flights serviced by more than 150 different airlines, and he has logged more than 2 million miles of air travel to date. *Id.*

Miller became disturbed when he learned that Avelo chose to operate flights that facilitate the Trump administration's mass deportations. *Id.* ¶ 4. Miller is among the many Americans who disagree with the Trump administration's approach to immigration. Moreover, as an aviation expert, Miller was especially concerned that these deportation flights often involved shackling people below their seats, which poses risks to them and those guarding them. *Id.*

So Miller decided to fight back against Avelo in the most American way possible—he spoke out. Via the newly created "AvGeek Action Alliance" ("AvGeek" is short for "aviation geek"), Miller began running the "avelNO!" public service campaign to get the word out that Avelo is operating deportation flights. *Id.* ¶ 5. To that end, he registered and began using the domain avelNO.com and leased three billboards from Lamar Corporation. *Id.* ¶¶ 5, 9. The billboards looked like this:

*Id.* ¶ 10. Because Avelo is a small, lesser-known airline, Miller believes that a plain-text "Avelo" or "Avelo Airlines" will not capture the attention of drivers passing by on the highway or lead viewers to recognize that he is talking about a specific airline. *Id.* ¶¶ 7, 21. He thus designed the avelNO! campaign with a variant or parody of the Avelo mark and Avelo's airplane livery—that is, the plane's paint—to spread his message most effectively. *Id.* ¶¶ 5, 7, 21.

The avelNO! campaign also maintains and operates avelNO.com. *Id.* ¶ 9. Miller registered the avelNO.com domain name because that is the name of his public service campaign. *Id.* ¶ 11. The avelNO! website contains information about the campaign and a link where others may donate to it, with 100% of donated funds (less credit card transaction fees) going to the avelNO! campaign. *Id.* ¶ 12. The avelNO! campaign offers, sells, and markets no goods and provides no services to anyone. *Id.* ¶ 14. It exists purely to raise public awareness and engage in public discourse on this issue.

Avelo was apparently displeased when it learned of the campaign and sent Miller a cease-and-desist letter threatening him with suit for trademark infringement, unfair competition, dilution by tarnishment, and federal copyright

1  claims. *Id.* ¶ 15. Avelo warned that liability would lead to "three times AvGeek's
2  profits attributable to the infringement, . . . statutory damages of up to $150,000 per
3  infringement, [and] . . . the recovery of attorney's fees and costs in exceptional cases
4  like this." Miller Decl., Ex. A at 3. Avelo also sent a letter to Lamar to complain about
5  the billboards. Miller Decl., Ex. B.

6  **B.    This proceeding**

7  Rather than bow to Avelo's demands, Miller filed a declaratory action in this
8  Court. ECF No. 1. In the meantime, Lamar has refused to run the original billboard,
9  so Miller is now still paying for the leased outdoor advertising space but using edited
10  billboards that are designed differently and are less effective at spreading avelNO!'s
11  message. Miller Decl. ¶¶ 16, 21. The revised billboards are:



17  *Id.* ¶ 17. After seeking an extension of time to respond to the original
18  Complaint, Avelo on June 18, 2025, answered and responded with two counterclaims:
19  a Lanham Act trademark infringement claim and an Anti-cybersquatting Consumer
20  Protection Act claim. ECF No. 13. Only the trademark claim appeared in the demand
21  letter; the cybersquatting claim is novel.

22  On June 24, 2025, nearly one week after it filed its answer and counterclaims,
23  Avelo filed two materially identical motions, seeking to restrain Miller from
24  displaying avelNO! billboards with Miller's preferred design, "using the Avelo Marks
25  . . . or any confusingly similar variations thereof," "engaging in false or misleading
26  advertising or commercial activities likely to deceive consumers into believing that
27  Plaintiff is Avelo or that any of Plaintiffs' services are associated or affiliated with,

28

connected to, approved by, or sponsored by Avelo," and a court order requiring Dynadot Inc., a non-party, to lock the avelNO.com domain name. ECF No. 16 at 1-2.[1] Since the motions were filed, Avelo has supposedly abandoned the claims for unfair competition, dilution by tarnishment, and federal copyright violations with which it threatened Miller in the demand letter when Avelo realized these claims lack legal merit. *See* ECF No. 36. Nonetheless, Avelo persists in prosecuting the two claims at issue and has not withdrawn its motions seeking preliminary relief on them.

## LEGAL STANDARD

The Court analyzes the temporary restraining order and preliminary injunction requests under "identical" standards. *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). Both are "extraordinary and drastic remed[ies]" for which Avelo bears the burden to make "a clear showing" of success. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

In particular, Avelo must make a clear showing that it "is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Every factor "must be satisfied," or else this court should not issue relief. *Concord Music Grp., Inc. v. Anthropic PBC*, No. 24-cv-03811-EKL, 2025 WL 904333, at *2 (N.D. Cal. Mar. 25, 2025). And under the Ninth Circuit's sliding-scale approach, this Court may grant a preliminary relief if there is "less than 'a likelihood of success' on the merits" (but still "serious questions" on the merits) and "'the balance of hardships tips *sharply*

---

[1] On June 25, 2025, one day after Avelo filed its answer and counterclaims, Miller filed an amended complaint. ECF No. 21. That required Avelo to file a new answer and counterclaims, which it did on July 9, 2025. ECF No. 37. Avelo's counterclaims are identical to those asserted on June 24, 2025. *Compare* ECF No. 13 *with* ECF No. 37. Accordingly, the parties agreed for efficiency purposes to treat the originally filed motions for a temporary restraining order and preliminary injunction to be based on the amended counterclaims.

1   in the plaintiff's favor' and the other two factors are satisfied." *Short v. Brown*, 893

2   F.3d 671, 675 (9th Cir. 2018) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709

3   F.3d 1281, 1291 (9th Cir. 2013)) (emphasis in original).

### ARGUMENT

Avelo cannot muzzle avelNO!'s criticism because it has no likelihood of success on either of its claims and has come to the Court without strong evidence of confusion, injury, or hardship. Both of Avelo's claims fail because avelNO! is a public service campaign focused on critiquing Avelo; it is not trying to sow marketplace confusion or profit from Avelo's marks. And, on the equitable factors, Avelo has submitted no evidence that it is being unfairly injured by the avelNO! campaign or that it is suffering hardship in any way. An injunction targeted at non-commercial speech is a drastic remedy, and Avelo's falls far short of meeting its burden.

## I.    AVELO CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS

Avelo cannot succeed on the merits of either its trademark infringement or cybersquatting claims. Although these claims are distinct, they fail for the same reason: Miller is not a competitor trying to confuse customers or profit from the Avelo mark. Instead, the avelNO! campaign is using an altered version of Avelo's mark to criticize the company. Because neither statute restricts one from using a mark to critique its owner, Avelo's motions are baseless, and this Court should deny them.

### A.    Avelo's Trademark Infringement Claims Fails as a Matter of Law

Avelo moves for preliminary relief on its infringement claim and asks this Court to enter an order that, among other things, bars Miller from putting up its preferred, effective billboard design. To "state a claim for trademark infringement under the Lanham Act, the plaintiff must show that (1) the plaintiff has a protectible

ownership interest in the mark, or for some claims, a registered mark; (2) the defendant used the mark 'in connection with' goods or services; and (3) that use is likely to cause confusion." *LegalForce RAPC Worldwide, PC v. LegalForce, Inc.*, 124 F.4th 1122, 1125 (9th Cir. 2024) (quoting 15 U.S.C. § 1114(1)). Avelo makes no mention of the second element. *See* ECF No. 16 at 9–10. That is probably because Avelo knows that applying that factor would doom its case: Miller's avelNO! campaign offers no "goods or services" under the Lanham Act, so Avelo's trademark-infringement claim fails at the second step. And because avelNO! is a public service campaign that offers nothing for sale, Avelo similarly cannot show that the avelNO! campaign will confuse customers. Thus, Avelo cannot show any likelihood of success on the merits of its trademark infringement claim.

### 1. avelNO! does not meet the Lanham Act's commercial use requirement.

Trademark "[i]nfringement claims are subject to a commercial use requirement." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005). Specifically, the Lanham Act prohibits individuals from using another's mark to sell, offer to sell, distribute, or advertise "goods or services." 15 U.S.C. § 1114(1)(a). Accordingly, the statute "does not prohibit all unauthorized uses of a trademark." *Bosley Med. Inst*, 403 F.3d. at 679. Rather, "[t]he Supreme Court has made it clear that trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers." *Id.* at 676.

Avelo's trademark claim fails as a matter of law because Miller is not selling anything, let alone "goods or services" within the meaning of the Lanham Act. Under the Act, a "good" is "a movable or tangible thing" and a "service" is the "performance of labor for the benefit of another." *LegalForce RAPC Worldwide*, 124 F.4th at 1126. The avelNO! campaign offers nothing for sale and performs no service for anyone else;

1  it puts up billboards and maintains a website to get the word out that Avelo is helping
2  the Trump administration deport people. Although the avelNO! campaign permits
3  others to donate to it, the Ninth Circuit just last year rejected the notion that
4  "trademark infringement can occur from fundraising activities where there has been
5  no sale of a good or a service." *Id.*

6      A host of cases—all of which Avelo notably fails to cite, much less discuss—
7  establish that avelNO! cannot be subject to a Lanham Act claim. In *Bosley Medical*
8  *Institute*, for instance, the Ninth Circuit held that an aggrieved person who set up a
9  website to complain about Bosley's hair therapy could not be liable for infringement
10 because his website existed only to criticize Bosley rather than to sell anything. *See*
11 403 F.3d at 677–79 ("Kremer is not Bosley's competitor; he is their critic. His use of
12 the Bosley mark is not in connection with a sale of goods or services—it is in
13 connection with the expression of his opinion about Bosley's goods and services.").
14 Similarly, in *Aviva USA Corp. v. Vazirani*, the Ninth Circuit affirmed the District of
15 Arizona's finding that a non-commercial website meant to criticize a trademark
16 holder cannot be the subject of a Lanham Act claim. 902 F. Supp. 2d 1246, 1263 (D.
17 Ariz. 2012), *aff'd*, 632 F. App'x 885 (9th Cir. 2015). There, Vazirani set up a website,
18 "Aviva Uncovered," to criticize Aviva's business practices. The district court granted
19 summary judgment to Vazirani because the website was noncommercial. 902 F. Supp.
20 2d at 1259. Thus, "[a]ny harm to [Aviva] arises not from a competitor's sale of a
21 similar product under [Aviva's] mark, but from [Defendants'] criticism of [Aviva]." *Id.*
22 (alterations in original). Because that critical speech was not commercial, there could
23 be no trademark-infringement claim.

24      Critically, the Lanham Act's commercial speech requirement is necessary
25 because applying the statute against the avelNO! public interest campaign would be
26 impermissible under the First Amendment. Miller is engaging in noncommercial
27 political speech, which "[a]s a matter of First Amendment law," may not be regulated

28

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

like commercial speech. *Bosley Medical Inst.*, 403 F.3d at 677 (citing *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995)). Thus, the First Amendment "offer[s] little protection for a competitor who labels its commercial good with a confusingly similar mark, but '[t]rademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view.'" *Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 900 (9th Cir. 2002) (quoting *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 29 (1st Cir. 1987)).

Here, there is no non-frivolous argument that Miller is engaging in commercial speech with his billboards and website that attempt to sell nothing at all, and Avelo makes no argument on this point. "'[T]he test for identifying commercial speech' is whether the advertisement 'propose[s] a commercial transaction.'" *Child. of the Rosary v. City of Phoenix*, 154 F.3d 972, 983 (9th Cir. 1998) (quoting *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 473–74 (1989)). In prosecuting its cybersquatting claim, Avelo appears to concede that the avelNO! campaign is noncommercial, although it contends without elaboration that its noncommercial use is not "*bona fide.*" ECF No. 16 at 19. But Avelo does not explain the difference between "bona fide" and "non-bona fide" noncommercial uses, and in fact it is clear that avelNO! is engaging in the paradigmatic noncommercial speech at the core of the First Amendment. *See Buckley v. Valeo*, 424 U.S. 1, 14 (1976) ("Discussion of public issues . . . are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order 'to assure (the) unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957))); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–759 (1985) (opinion of Powell, J.) ("[S]peech on 'matters of public concern' . . . is 'at the heart of the First Amendment's protection.'" (quoting *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978))). Ultimately,

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

1 because the avelNO! campaign is noncommercial, Avelo cannot use the Lanham Act

2 "either as a shield from [Miller's] criticism, or as a sword to shut [Miller] up." *Bosley*

3 *Medical Inst.*, 403 F.3d at 680.

### 2. Avelo has not shown any likelihood of confusion.

4

5 The fact that Miller's use of Avelo's mark is for noncommercial speech on a

6 matter of public concern means that Avelo has no claim under the Lanham Act and

7 no likelihood of success. But even assuming that this Court examines other elements

8 of the claim, Avelo also cannot establish the third element, likelihood of confusion,

9 because there is no risk that avelNO!'s public interest campaign will cause confused

10 airplane customers to mistakenly buy goods or airline services from avelNO! or any

11 other competitor. "The Lanham Act seeks to prevent consumer confusion that enables

12 a seller to pass off his goods as the goods of another . . . . [T]rademark infringement

13 protects only against mistaken *purchasing decisions* and not against confusion

14 generally.'" *Id.* at 677 (quoting *Lang v. Ret. Living Publ'g Co., Inc.*, 949 F.2d 576, 582–

15 83 (2d Cir. 1991)) (emphasis in original). Thus, "[t]he test for likelihood of confusion

16 is whether a *'reasonably prudent consumer' in the marketplace* is likely to be confused

17 as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod.*

18 *Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). But avelNO! does not

19 sell anything, let alone "goods or services" under the Lanham Act. So there is no risk

20 that the avelNO! campaign could deceive a customer into buying an avelNO! flight

21 ticket rather than an Avelo ticket.

22 Amazingly, Avelo argues that it and avelNO! are competitors because both

23 "provide information in the field of airline transportation." ECF No. 16 at 14–15. That

24 is absurd. Avelo operates a passenger airline, and avelNO!'s sole mission is to publicly

25 criticize Avelo. Under Avelo's logic, Tyson Foods competes with PETA because both

26 provide information about meat products. That is self-evidently incorrect. Neither

27 avelNO!'s billboards nor its website provide anything commercial, let alone flight

28

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

tickets, and avelNO! does not compete with Avelo. *See Bosley Medical Inst.*, 403 F.3d at 677–79 ("Kremer is not Bosley's competitor; he is their critic").

### 3.    avelNO! makes fair use of elements of Avelo's mark.

Given the absurd outcome that Avelo wishes to reach, it is no surprise that Avelo analyzed the "likelihood of confusion" element under the incorrect framework. While courts in this Circuit typically analyze eight factors, known as the "'*Sleekcraft* factors,' to assess whether a use of a mark is likely to cause confusion," *Aviva*, 902 F. Supp. 2d at 1263, the Ninth Circuit "has articulated a different test for cases involving nominative use of a trademark, which occurs when [an alleged infringer] uses a [holder's] mark to refer to the [holder's] products, rather than to the [alleged infringer]'s own products," *id.* (citing *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)). That alternative analysis, often referred to as a "nominative fair use defense," applies here because avelNO! used a variant of Avelo's mark "to refer to [Avelo] and its products and services rather than [avelNO!] and their products and services," since avelNO! offers no products or services. *Id.* at 1264. This makes sense because avelNO!'s "entire purpose is to criticize [Avelo] and its products, which typically necessitates the nominal use of the criticized party's mark." *Id.*

Pursuant to that test (which applies by its terms to commercial users, and so, if the outcome were close, would be applied in a manner that is even more solicitous to the free speech of a noncommercial user like Miller):

> [A] commercial user is entitled to a nominative fair use defense provided he meets the following three requirements: First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

1    *New Kids on the Block*, 971 F.2d at 308. Here, those three factors point to a fair use

2    defense as a matter of law. "The first factor is easily met, for there is no clear way for

3    [avelNO!] to convey their criticism for a specific entity, [Avelo], without naming that

4    specific entity." *Aviva USA Corp.*, 902 F. Supp. 2d at 1264. The second element is also

5    satisfied because "the stylized logo and distinctive coloring were not used in a

6    commercial or competitive manner, but rather were used solely to identify [Avelo] as

7    the object of [avelNO!'s] criticism. Further, [avelNO!] embedded [its] own critical

8    commentary within the logo" by adding a prominent "n" before the "l" and "o" in Avelo,

9    so that the mark reads "avelNo!" *Id.* at 1265. Using this same logic, the district court

10    in *Aviva* denied the trademark infringement claim of a plaintiff with this mark:



14    Who complained about this website:



18    *Id.* at 1252. That court explained that "[t]he purpose of the nominative fair use test

19    is 'to address the risk that nominative use of the mark will inspire a mistaken belief

20    on the part of consumers that the speaker is sponsored or endorsed by the trademark

21    holder.'" *Id.* at 1265 (quoting *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d

22    1171, 1176 (9th Cir. 2010)). Given how avelNO! altered the Avelo mark and "the very

23    obvious negative commentary directed towards [Avelo]," there is similarly no

24    reasonable risk of the confusion that the fair use tests for. *Id.* And the third element

25    is met because avelNO!'s "entire [campaign] is concerned with criticizing Aviva and

26    its business practices," so there is no risk that a reasonable person would think Avelo

27    endorses avelNO! *Id.* at 1264. Moreover, the billboard and website both state that

28

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

1   they are paid for by AvGeek Action Alliance, not Avelo. Miller Decl. ¶ 10. Nominative

2   fair use is available here, and not only requires that the Court find that Avelo has no

3   likelihood of success but that Miller should prevail as a matter of law, which relief

4   Plaintiffs will request via an appropriate motion at the appropriate stage of litigation.

### 4.    Avelo loses even if the *Sleekcraft* factors apply.

6       Even if the *Sleekcraft* factors apply, they point against a likelihood of

7   confusion. The *Sleekcraft* test "is pliant. Some factors are much more important than

8   others, and the relative importance of each individual factor will be case-specific."

9   *Brookfield Comms., Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

10  Moreover, "trademark infringement protects only against mistaken purchasing

11  decisions and not against confusion generally." *Bosley Medical Inst.*, 403 F.3d at 677.

12  Here, Avelo and avelNO! do not offer related goods or services, so Avelo cannot

13  possibly prove that consumers have been confused about purchasing decisions. *See*

14  *Brookfield Comms.*, 174 F.3d at 1056 (there is only a "remote" likelihood of confusion

15  when parties "[do] not compete to any extent").

16      The meager evidence Avelo proffers of actual confusion, factor five, is comically

17  self-defeating. Avelo submits only a thread of users discussing the billboard on Reddit

18  in the subreddit "r/Connecticut," which is a place where users to go to discuss things

19  related to, or occurring in, that state. The thread begins with a post from a user

20  identified as "Barbiebrattt," who drove by one of the billboards, posted that she saw

21  a billboard "by Avelo saying 'does your vacation support their deportation?'" and then

22  asked "wtf does that mean???" Myers Decl. ¶ 12 & Ex. A. An online discussion ensued

23  about the issue of Avelo's deportation flights. *Id.* Then Barbiebrattt returned to the

24  same forum and posted a picture of the billboard with a note that she was "an idiot"

25  for not understanding the billboard immediately. *Id.* Rather, she explained that as

26  soon as she saw the billboard she "knew something was off," and that the billboard is

27  "[d]efinitely a protest." Myers Decl. ¶ 12 & Ex. A. And that is it: one thread with

28

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

someone who referred to herself as an "idiot" for ever being confused is Avelo's *sole evidence* in the record of alleged actual consumer confusion.

This is woefully insufficient to prove a likelihood of success. *See Aviva USA Corp.*, 902 F. Supp. 2d at 1267 ("Such fleeting confusion is not sufficient to establish a likelihood of confusion.") Courts judge likelihood of confusion from the perspective of a "reasonably prudent consumer." *Dreamwerks*, 142 F.3d at 1129. But Avelo's sole piece of evidence comes from someone who was neither a consumer nor, by her own admission, reasonably prudent. Plaintiffs have not found in the Federal Reporter a court that relied on the temporary confusion of a self-professed "idiot" to find there was evidence of actual confusion, and this Court should not issue the first opinion so holding. Moreover, there is nothing in the record to suggest, and Avelo does not argue, that the Reddit user is an Avelo or airline consumer.

Other factors also point against a likelihood of confusion. For instance, on factor six, which tests the degree of consumer care, consumers are likely to be more discerning when buying expensive goods like flight tickets, so even momentary confusion is insufficient because consumers will scrutinize a purchase more closely when it comes time to purchase. *See Brookfield Comms.*, 174 F.3d at 1060. Factor eight, likelihood of expansion, favors Miller because Avelo has introduced no evidence that it intends to expand and avelNO! is hindering its ability to do so. *See Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005). Moreover, because avelNO! does not offer any goods or services, there is no evidence of overlap in the parties' marketing channels, so factor five favors Miller. *See id.* at 633 (asking "whether the parties distribute their goods in the same marketing channels"). Finally, factor seven, which tests Miller's intent in creating avelNO!'s branding, favors Miller because he designed the avelNO! campaign to be maximally effective in letting the public know that Avelo is operating deportation flights. *See Entrepreneur*

1  *Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002) (asking whether the
2  defendant had the "intent to deceive").

3      All told, even if the Court engages in the *Sleekcraft* analysis (which it need
4  not), the balance of these factors point to the fact that the avelNO! campaign is
5  unlikely to confuse customers purchasing plane tickets. After all, it is impossible that
6  anyone would see the avelNO! campaign and somehow end up buying the wrong
7  airline ticket from the wrong company. avelNO! does not sell airline tickets. Because
8  that is *Sleekcraft*'s primary concern, Avelo loses.

9      **B.    Miller Lacks the Requisite Intent to be a Cybersquatter**

10     Avelo also moves for preliminary relief on its cybersquatting claim, asking this
11 Court to order the third-party Dynadot to lock the avelNO.com domain name and also
12 to enter an order barring Miller from using avelNO.com. But just as Avelo failed even
13 to mention a crucial element of its trademark infringement claim—the requirement
14 that avelNO! provide "goods or services"—Avelo ignores a critical aspect of its
15 cybersquatting claim. To be liable as a cybersquatter, Miller must have a "bad faith
16 intent *to profit from [Avelo's] mark*." 15 U.S.C. § 1125(d)(1)(A)(i) (emphasis added).
17 Because avelNO! has done so such thing, the claim will fail as a matter of law, and
18 Avelo cannot obtain preliminary relief.

19     The Anti-cybersquatting Consumer Protection Act ("ACPA"), codified at 15
20 U.S.C. § 1125(d), allows a holder of a mark to sue those who "register[], traffic[] in, or
21 use[] a domain name that . . . is identical or confusingly similar to that mark" and
22 have "a bad faith intent to profit from that mark." 15 U.S.C. § 1125(d)(1)(A).
23 Critically, the ACPA is a specific-intent statute. To be liable as a cybersquatter, "the
24 defendant must intend to profit specifically from the goodwill associated with
25 another's trademark." *Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1109
26 (C.D. Cal. 2009); *see also Blair v. Automobili Lamborghini SpA*, 754 F. Supp. 3d 849,
27 856 (D. Ariz. 2024) ("The crucial elements of bad faith intent to profit . . . are distilled

28

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

to mean an 'intent to trade on the goodwill of another's mark.'") (quoting *Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 810 (6th Cir. 2004)). Avelo never explains how Miller intended to profit from Avelo's mark, and for that reason it cannot carry its burden. And the reality is that Avelo cannot state a cybersquatting claim as a matter of law because the avelNO! campaign is a good-faith effort to raise awareness about Avelo's cooperation with the Trump administration to facilitate mass deportations, rather than a bad-faith scheme to profit from Avelo's mark. As a result, Avelo cannot show a likelihood of success on its cybersquatting claim.

The ACPA lists nine non-exhaustive factors to guide the analysis of whether one acted with a bad faith intent to profit from another's mark. *See* 15 U.S.C. § 1125(b)(i). "These factors attempt 'to balance the property interests of trademark owners with the legitimate interests of Internet users and others who seek to make lawful uses of other's marks, including for purposes such as comparative advertising, *comment*, *criticism*, parody, news reporting, fair use, etc.'" *Lamparello v. Falwell*, 420 F.3d 309, 319 (4th Cir. 2005) (quoting H.R.Rep. No. 106–412, 1999 WL 970519, at *10) (emphasis in *Lamparello*). Importantly, these "factors are given to courts as a guide, not as a substitute for careful thinking about whether the conduct at issue is motivated by a bad faith intent to profit." *Lucas Nursery & Landscaping*, 359 F.3d at 811.

"The first four factors are those that militate against a finding of bad faith by providing some reasonable basis for why a defendant might have registered the domain name of another mark holder." *Id.* at 809. These factors are:

*The trademark or other intellectual property rights of the person, if any, in the domain name.* This factor favors Miller because he registered avelNO.com to bring attention to his avelNO! campaign. Critically, this inquiry focuses on Miller's "rights . . . in the domain name," not whether Miller has rights in the defendant's marks. 15 U.S.C. § 1125(b)(i)(I). Yet Avelo argues that this factor weighs in its favor because

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

Miller has no rights to the Avelo mark. *See* ECF No. 16 at 18 ("Absent any rights in the AVELO mark, this factor weighs in Avelo's favor"). Under the proper inquiry, Miller has intellectual property rights in the domain name avelNO because that is the name of the public service campaign he started, and one that has acquired secondary meaning. *See Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1354 (9th Cir. 1985) (one can acquire intellectual property rights in a mark if there is a "mental association by a substantial segment of consumers and potential consumers "between the alleged mark and a single source of the product." (citation omitted)).

  *The extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person.* The second factor also favors Miller. The avelNO.com domain name partially contains "Avelo" because Miller made the avelNO! campaign to criticize Avelo. In *Lamparello*, the Fourth Circuit ruled that the "fallwell.com" website used to criticize Jerry Falwell's views did not constitute cybersquatting, despite the fact that the domain name contained "Falwell," because the defendant "used www.fallwell.com to engage in the type of 'comment and criticism' that Congress specifically stated militates against a finding of bad faith intent to profit." 420 F.3d at 321. The same logic holds here.

  *The person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services.* This factor favors Miller even though he recently registered the avelNO.com domain. Miller did not use avelNO.com prior to Avelo operating deportation flights because he registered the domain name to criticize Avelo's decision to operate deportation flights. Avelo's argument that Miller's recent registration means this factor favors it wholly ignores the goal of the analysis—to test whether the registrant had a bad faith intent to profit from another's mark. Ignoring the fact that avelNO! offers no "goods or services," Miller registered the avelNO.com domain name specifically to advertise the avelNO! campaign, not to profit from Avelo's mark.

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

*The person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name.* This factor straightforwardly favors Miller because he is using the avelNO.com site to criticize Avelo in a noncommercial fashion. As it must, and as is fatal to its trademark infringement claim, Avelo implicitly concedes avelNO.com is not commercial. *See* ECF No. 16 at 19 (never contesting that avelNO! is noncommercial). But it insists that Miller's use is not "*bona fide*" because the avelNO.com domain name is confusingly similar to Avelo's name. *See id.* That argument did not work when Jerry Falwell challenged "fallwell.com," 420 F.3d at 321, it did not work when Lucas Nursery sued a consumer who registered the name "lucasnursery.com" to complain about the nursery, *Lucas Nursery & Landscaping*, 359 F.3d at 809, and the argument should be similarly rejected here. Moreover, the fact that Miller "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful" brings this case within the ACPA's safe harbor provision. 15 U.S.C. § 1125(d)(b)(ii); *see Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, 2015 WL 5311085, at *50 (C.D. Cal. Sept. 10, 2015) (defendant who held an "objective good faith belief" that its actions were lawful is shielded by the ACPA's safe harbor provision).

*Factors 5–8.* "Factors five through eight are indicative of the presence of bad faith on the part of the defendant." *Id.* To its credit, Avelo concedes that factors six through eight do not favor its claim, admitting that "there is no evidence that Plaintiffs offered to sell the domain name after registering it, provided false contact information when registering it, or is engaged in a pattern of registering multiple domain names containing others' trademarks." ECF No. 16 at 18 n.8. Avelo disingenuously argues that this renders these factors "inapplicable or neutral." *Id.* That is decidedly not so—it is Avelo's burden to show that Miller registered avelNO.com with the bad faith intent to profit from Avelo's mark, and that these factors show no such intent cuts strongly against Avelo's claim that Miller registered

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

avelNO.com in bad faith. *See Pac. Portland Cement Co. v. Food Mach. & Chem. Corp.*, 178 F.2d 541, 547 (9th Cir. 1949) ("It is a fundamental rule that the burden of proof in its primary sense rests upon the party who, as determined by the pleadings, asserts the affirmative of an issue and it remains there until the termination of the action. It is generally upon the party who will be defeated if no evidence relating to the issue is given on either side").

The only factor of the latter four that Avelo contests is the fifth factor, which looks to the registrant's "intent to divert customers . . . either for commercial gain or with the intent to tarnish or disparage the mark by creating a likelihood of confusion *as to the source, sponsorship, affiliation, or endorsement of the site*." 15 U.S.C. § 1125(b)(i)(VIII) (emphasis added). Avelo argues, without submitting a shred of evidence, that this factor is satisfied because the avelNO.com domain name is similar to Avelo's mark. *See* ECF No. 16 at 19-20. It cites a single case in support that could not be any different than the case at hand. There, an unknown registrant sought to divert MGM customers by registering "imgmcasino.com," using the MGM mark on the website, and offering online casino services on the site. *See MGM Resorts Int'l v. Unknown Registrant of www.imgmcasino.com*, No. 2:14-CV-1613-GMN-VCF, 2015 WL 5674374, at *1 (D. Nev. July 8, 2015) (subsequent history omitted). But there is no plausible argument that avelNO! is trying to divert customers or offer competing airline services. The avelNO! website offers no flight tickets and does not copy Avelo's mark—it brings awareness to Avelo's role in deporting people. Thus, no reasonable customer could be diverted or confused about the source, sponsorship, affiliation, or endorsement of the site.

\* \* \*

All told, the multifactor test establishes that Avelo has no likelihood of confusion on its cybersquatting claim, and Plaintiffs engaged in no bad faith conduct. Echoing the *Aviva* court that rejected a similar cybersquatting claim as the one now

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

before this Court, the avelNO! website is "not commercial, it was used only to criticize [Avelo], and [Miller] never made any attempt to sell the domain names for profit." 902 F. Supp. 2d at 1268. Thus, Miller's registration and use of the site "do not fall within the scope of the ACPA." *Id.*

## II.    AVELO IS NOT SUFFERING ANY IRREPARABLE INJURY

Avelo has no likelihood of success on either claim, but it loses on the equitable factors too. Avelo offers no actual evidence it is suffering and will suffer further irreparable injury absent an injunction. Beyond attorney argument, Avelo mostly rests on a rebuttable presumption owing to Lanham Act plaintiffs that show a likelihood of success on the merits. *See* ECF No. 16 at 20-22. But Avelo failed to establish any likelihood of success on either of its claims—indeed, it fails to state either claim as a matter of law—so Avelo enjoys no presumption it is suffering irreparable injury that necessitates an injunction.

But even if Avelo had such a presumption, the dearth of evidence in its favor rebuts it. Companies can establish irreparable injury by showing harm to their business reputation, diminished sales, likelihood of future harm, and continued sales or manufacturing of the infringing products. *See MGA Ent. Inc. v. Harris*, No. 2:20-cv-11548, 2025 WL 1416045, at *5-6 (C.D. Cal. Apr. 15, 2025). But though Avelo gestures at the "irreparable harm to its goodwill and reputation as a result" of the avelNO! campaign, it has no evidence to support its claim. ECF No. 16 at 22. Its sole piece of evidence is the aforementioned Reddit thread with *one* curious individual who cleared up her question days later, and admitted to "[knowing] something was off" the whole time, and who helpfully described her initial reaction as that attributable to "an idiot." Myers Decl. ¶ 12 & Ex. A. Besides that, Avelo provides attorney argument that avelNO!'s campaign has "had and will continue to have an unquantifiable effect on Avelo's business, reputation, and goodwill." ECF No. 16 at 23. The effect that avelNO!'s billboards and website are having on Avelo's business is

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

certainly unquantifiable, but that is because Avelo submitted no evidence on this point. Ultimately, attorney argument is not evidence, and the absence of evidence that Avelo is injured militates against its extraordinary ask for an injunction to quash criticism against it.

Of course, the absence of evidence on this point makes perfect sense—avelNO! is not a marketplace competitor diverting sales from Avelo. To be sure, the Reddit posts that Avelo put into the record contain plenty of evidence that consumers are souring on Avelo. But that Reddit post shows anger at Avelo because consumers are learning that Avelo provides planes to help the Trump administration deport people. That shows that avelNO!'s campaign is working as intended, not that people are confused about whether avelNO! offers flight tickets or whether Avelo is running a public service campaign against itself. *See New Kids on the Block*, 971 F.2d at 308–09 (using a mark to solicit criticism of the markholder does not suggest the markholder is sponsoring use of the mark); *Lamparello*, 420 F.3d at 315 ("No one would believe that Revered Falwell sponsored a site criticizing himself, his positions, and his interpretations of the Bible").

Finally, it is worth noting that Avelo asks this court for an injunction that would cause irreparable harm to Miller. The avelNO! campaign is engaged in noncommercial speech protected under the First Amendment. It "is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (cleaned up). And "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Thus, in seeking to muzzle Miller, Avelo asks this court to cause irreparable injury to him. It should decline the invitation.

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

1    III.    **THE BALANCE OF HARDSHIPS LEANS IN MILLER'S FAVOR**

2    To test the balance of hardships, a court "must balance the competing claims

3    of injury and must consider the effect on each party of the granting or withholding of

4    the requested relief." *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987). Avelo

5    bears the burden of showing it will suffer more hardship absent an injunction than

6    Miller will suffer if avelNO!'s speech is enjoined. *See Innovativ Media Grp., Inc. v.*

7    *Beys*, No. 2:22-cv-01362, 2022 WL 3701579, at *5 (D. Nev. Aug. 26, 2022).

8    Avelo falls well short of meeting its burden because it makes no specific

9    allegations of the injury it would suffer absent an injunction. "A party seeking to tip

10    the balance of hardships must go beyond mere allegations and actually demonstrate

11    that a particular harm is imminent." *Save Our Summers v. Washington State Dep't*

12    *of Ecology*, 132 F. Supp. 2d 896, 908 (E.D. Wash. 1999); *see also Los Angeles Mem'l*

13    *Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980)

14    (describing "the requirement that some balance of hardships favoring that party be

15    established by the record"). But rather than show the specific harms it will suffer

16    without a court-issued injunction, Avelo gestures to the fact that avelNO! will "have

17    an unquantifiable effect on Avelo's business, reputation, and goodwill." ECF No. 16

18    at 23. If the court is to balance hardships, Avelo must make record evidence of the

19    harms it would suffer so the court can measure and balance the hardships. Instead,

20    Avelo comes with empty hands and attorney argument that it is suffering

21    "unquantifiable" hardships. That does not suffice.

22    But the Court need not guess at the harm Miller would suffer if Avelo's

23    requested injunction issues. Above all else, an injunction would impinge Miller's First

24    Amendment rights. Although Avelo states *it* is fine with the revised billboard, "the

25    Constitution leaves matters of taste and style so largely to the individual," and an

26    injunction would rob Miller of his First Amendment right to design his billboard and

27    website as he pleases. *Cohen v. California*, 403 U.S. 15, 25 (1971); *see also United*

28

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

1    *States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 818 (2000) ("[E]sthetic and

2    moral judgments about art and literature . . . are for the individual to make, not for

3    the Government to decree."). Moreover, the new billboards with the plain-text "Avelo"

4    frustrate avelNO!'s ability to spread its message effectively. Miller Decl. ¶¶ 5, 7, 21.

5    Accordingly, an injunction would violate Miller's First Amendment rights and

6    impinge avelNO!'s ability to spread its message to as many people as possible.

7    **IV.    AN INJUNCTION IS DECIDEDLY AGAINST THE PUBLIC INTEREST**

8        "In the trademark context, courts often define the public interest as the right

9    of the public not to be deceived or confused." *Maxim Integrated Prods., Inc. v.*

10   *Quintana*, 654 F. Supp. 2d 1024, 1036 (N.D. Cal. 2009). As explained at length, Avelo

11   has shown no evidence that a single person, let alone any airline customer, is confused

12   by the avelNO! campaign. And that makes perfect sense: it is not likely that Avelo

13   would run a public service campaign against itself. Because the public has no risk of

14   getting confused about the source of the avelNO! campaign, an injunction would not

15   serve the public interest.

16       Moreover, "the public interest favors the exercise of First Amendment rights."

17   *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014). An injunction would impair the

18   ability for avelNO! to disseminate its message effectively. *Id.* ¶¶ 5, 7, 21. Accordingly,

19   it would be against the public interest for this Court should issue the request that

20   Avelo seeks.

21                                   * * *

22       The Court should reject Avelo's request to stifle avelNO!'s political speech.

23   Avelo's claims fail because avelNO! is running a noncommercial campaign aimed at

24   criticizing Avelo. But rather than confront the controlling law, Avelo avoids citing to

25   or acknowledging basic elements of its own claims when doing so reveals their obvious

26   weaknesses. Avelo fares little better on the equitable factors, as it musters only a

27   single piece of self-defeating evidence. For Avelo, this lawsuit hardly seems to be

28

**MEMORANDUM IN OPPOSITION TO PI AND TRO**

about the law—it is instead a brazen attempt by an airline company to bully a private citizen into silence. The Court should deny Avelo's motions and reject its attempt to silence its critics while this litigation continues.

## CONCLUSION

For the above reasons, Plaintiff Seth Miller and Proton Associates LLC respectfully request this Court denies Avelo's requests for a temporary restraining order and preliminary injunction.

**BRAVO SCHRAGER LLP**

By: */s Jason Harrow*

Charles Gerstein
Jeremy Shur
(*pro hac vice*)
GERSTEIN HARROW LLP
400 7th Street NW, Suite 304
Washington, DC 20025

Jason Harrow
(*pro hac vice application forthcoming*)
GERSTEIN HARROW LLP
12100 Wilshire Blvd. Suite 800
Los Angeles, CA 90025

Bradley S. Schrager, Esq. (SBN 10217)
Daniel Bravo, Esq. (SBN 13078)
6675 South Tenaya Way, Suite 200
Las Vegas, Nevada 89113

*Attorneys for Plaintiffs*

**MEMORANDUM IN OPPOSITION TO PI AND TRO**