Charles Gerstein
(*pro hac vice*)
Jeremy Shur
(*pro hac vice*)
GERSTEIN HARROW LLP
400 7th Street NW, Suite 304
Washington, DC 20025
charlie@gerstein-harrow.com
(202) 670-4809

Jason Harrow
(*pro hac vice*)
GERSTEIN HARROW LLP
12100 Wilshire Blvd. Suite 800
Los Angeles, CA 90025
jason@gerstein-harrow.com
(323) 744-5293

Bradley S. Schrager, Esq. (SBN 10217)
Daniel Bravo, Esq. (SBN 13078)
BRAVO SCHRAGER LLP
6675 South Tenaya Way, Suite 200
Las Vegas, Nevada 89113
Tele.: (702) 996-1724
Email: bradley@bravoschrager.com
Email: daniel@bravoschrager.com

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| PROTON ASSOCIATES LLC, and SETH MILLER,<br><br>Plaintiffs,<br><br>vs.<br><br>AVELO, INC.,<br><br>Defendant. | Case No.: 2:25-cv-00856-CDS-BNW<br><br>**DECLARATION OF SETH MILLER IN OPPOSITION TO DEFENDANT AVELO, INC.'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

I, Seth Miller, state the following:

1. I am over eighteen (18) years of age. I am a Plaintiff in this action. I am the principal of Proton Associates LLC, also a Plaintiff in this case. I make this declaration on behalf of myself and Proton Associates in opposition to Avelo's Motion for Temporary Restraining Order and Preliminary Injunction. I have personal knowledge of the facts set forth herein except as stated otherwise. If called to testify, I could testify competently thereto.

2. I am an aviation enthusiast. I have not only worked in the industry as a journalist and consultant for a long time, but I am also an avid traveler. To date, I have flown on over 1,900 flights on 150 airlines that total more than 2 million miles.

3. I serve in the New Hampshire House of Representatives as a representative to Strafford County District 21.

4. I strongly oppose the Trump administration's approach to immigration. As such, when I learned that Avelo Airlines agreed to a contract with the Department of Homeland Security to operate deportation flights for U.S. Immigration Control and Enforcement, and that those deported are often shackled, I became angry and wanted to speak out.

5. I started the "AvGeek Action Alliance" to inform the public about Avelo's contract and to dissuade the public from flying Avelo until it stops providing chartering deportation flights for ICE. I labeled this public service campaign "avelNO!"

6. The goal of the avelNO! campaign is to tell as many people about Avelo's contract as possible. To be effective, I designed avelNO!'s billboards and websites to be eye-catching, informative, and honest.

7. Avelo is an ultra-low-cost carrier airline that is not particularly well known in America. As such, people do not quickly associate the plain text word "Avelo" with the airline company.

8. To help people understand that my billboards are about Avelo Airlines, I used a variant of Avelo's logo with stylistically different lettering and colors to brand the avelNO! campaign. And to make it clear that the avelNO! campaign is critical of Avelo, rather than sponsored by it, I put a distinct red "N" in between the "l" and "o" in Avelo" and an exclamation point behind the "o." Thus, the avelNO! campaign uses branding that is clearly critical of Avelo rather than suggesting any endorsement or affiliation by Avelo. To emphasize this, the avelNO! billboards and website contain a bright disclaimer that they are "Paid for by AvGeek Action Alliance."

9. My campaign has leased three billboards with Lamar and published a website, avelNO.com, to spread avelNO!'s message that Avelo Airlines is operating flights in service of the Trump administration's deportation push.

10. A true and correct picture of my billboard is here:



2
MILLER DECLARATION

11. The avelNO.com website provides more in-depth information about the avelNO! campaign. A permanent link to the site as it appeared on May 14, 2025, is available at https://perma.cc/R2XY-Q9LP. I picked that domain name because it is the name of the avelNO! campaign, catchy, and suggests disapproval of Avelo's business practices.

12. Anyone who visits the avelNO! website can donate to the campaign, with 100% of funds going to AvGeek Aviation Alliance's support of the avelNO! campaign. AvGeek is the same legal entity as Proton Associates LLC.

13. The avelNO! public service campaign has garnered public attention from local, state, and national media. As such, members of the public now recognize the avelNO! branding to represent the campaign.

14. Neither myself nor AvGeek sell any goods or provide any services to anyone. It did allow people to donate online to support the campaign, and I committed 100% of donated funds to paying for billboard leases and similar public awareness efforts. To date, I have spent more money on the campaign than I have fundraised (in other words, I am losing money in order to spread my message).

15. Notwithstanding the fact that avelNO! is strictly a public service campaign that does not engage in commerce, AvGeek received a cease-and-desist letter from Avelo Airlines accusing me of violating its intellectual property in various ways. It demanded AvGeek "immediately cease" what it deemed to be avelNO.com's infringing activities. A true and correct copy of this letter is attached as Miller Ex. A.

16. Avelo sent a similar letter to Lamar, the company that owns the billboards I lease. A true and correct copy of the letter that I obtained is

1  attached as Miller Ex. B. I understand that Avelo similarly threatened Lamar
2  with bringing a variety of intellectual property claims. Just days after Avelo
3  sent that letter, I learned from a Lamar representative that, because of Avelo's
4  letter, I would have to change the design of the avelNO! billboards.

5  17. Forced to abandon my preferred design for my public service
6  campaign, I settled on designs that do not use Avelo's colors or logo. The revised
7  billboards are:




18. As a result of changes forced by Avelo's legal threats to myself, AvGeek, and Lamar Corporation, the avelNO! campaign now has less effective messaging. I believe the design that Avelo threatened, and that has since been taken down, to be the most effective messaging for avelNO!'s purposes.

19. I believe avelNO! does not violate Avelo's intellectual property and the campaign's messaging is protected by the First Amendment. As such, I sued to protect my ability to speak out on a matter of tremendous public concern in as effective a way as possible.

20. Avelo brought counterclaims against me and Proton Associates d/b/a AvGeek. I understand that Avelo is now seeking a temporary restraining order and a preliminary injunction.

21. If the court makes me forego my preferred design or lose my website domain name, avelNO! will be unable to promote its message effectively. The avelNO! campaign's digital home is avelNO.com, and it will be difficult to attract attention to a new domain name. And if the Court bars

avelNO!'s ability to use its distinct variant and spin off the Avelo mark, it will frustrate avelNO!'s ability to reach drivers on the highway—the target audience of avelNO!'s billboards. That is because, based on my deep understanding of the aviation industry, I believe that Avelo Airlines, like many other lesser-known airlines, do not have the name recognition of larger airlines like Delta, American, or Southwest. As such, my preferred design is necessary to effectively spread my message about Avelo Airlines. Thus, the injunction that Avelo asks for threatens avelNO!'s ability to fulfill its mission of letting others know that Avelo is operating deportation flights for the Trump administration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 15, 2025

/s/ Seth Miller
SETH MILLER