Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
Joanna M. Myers, Esq.
Nevada Bar No. 12048
Caleb L. Green, Esq.
Nevada Bar No. 15234
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Email: jwf@h2law.com
Email: jmm@h2law.com
Email: clg@h2law.com

Andrew M. Smith, Esq.
Oregon Bar No. 172774
Has complied with LR IA 11-2
RESONATE IP, LLC
115 N.W. Oregon Ave., Suite 12
Bend, Oregon 97703
Telephone: (541) 240-8020
Email: dsmith@resonateip.com

*Attorneys for Defendant Avelo, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| PROTON ASSOCIATES LLC, and SETH MILLER,<br><br>                    Plaintiffs,<br>        v.<br>AVELO, INC.,<br><br>                    Defendant. | Case No. 2:25-cv-00856-CDS-BNW<br><br>**DEFENDANT AVELO, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>(Oral Argument Requested) |

4911-2480-0086, v. 88

Defendant and Counterclaimant Avelo, Inc. ("Avelo") submits this reply in support of its motions seeking a TRO and preliminary injunction (ECF 16, 17).

## I. PROTON DID NOT OPPOSE THE MOTION AND SHOULD BE ENJOINED

When an opposition to a motion fails to address arguments in the motion, the opposing party abandons its claims for relief. *See e.g., Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006). Local Rule 7-2(d) also provides, in relevant part: "The failure of an opposing party to file points and authorities in response to any motion . . . constitutes a consent to the granting of the motion." Here, Plaintiff Proton Associates, LLC ("Proton") is identified only twice in Plaintiffs' entire Opposition—once in the caption as a Plaintiff, and once in the concluding paragraph—that's it. (ECF 41 at 1, 29). Proton is not defined "collectively" with Miller as "Plaintiffs" and the Opposition never references "Plaintiffs" (plural) in connection with any legal argument or statement of fact. Every statement of fact and argument is made only by *Miller* individually. Although Miller's declaration asserts it is made on behalf of himself and Proton, his statements are attributed only to him in his individual capacity. (*See generally*, ECF 41-1.) Therefore, the Court should grant Avelo's motions as to Proton.

## II. AVELO IS LIKELY TO SUCCEED ON THE MERITS OF ITS TRADEMARK INFRINGMENT CLAIM BECAUSE MILLER IS USING AVELNO IN CONNECTION WITH PROTON'S BUSINESS

The Lanham Act requires a defendant use the plaintiff's mark "in connection with a sale of goods or services." *Bosley Med. Inst., Inc. v. Kremer Bosley*, 403 F.3d 672, 677 (9th Cir. 2005). Miller argues *he* "is not selling anything, let alone 'goods or services' within the meaning of the Lanham Act," but his company Proton is indeed using the AVELO® and AVELNO marks in connection with Proton's business to generate revenue. (ECF 41 at 7:23-24.) Proton is a for-profit commercial enterprise doing substantial business in the airline industry under the name Proton and the assumed name "AvGeek," and using the AVELO® marks to raise money for its "avelNO!" campaign. (*See* ECF 21, First Am. Compl. ¶ 7; ECF 41-1, Miller Decl. ¶ 12) ("AvGeek is the same legal entity as Proton Associates LLC".).

Proton also does business under the assumed name PAXEX.AERO via the website <paxex.aero>, offering paid subscription services for aviation industry news and information.[1] Proton's subscription fees range between $100/month to $5,000/year. (Suppl. Myers Decl. ¶ 4 & Ex. C.) Proton also derives revenue

---

[1] This service is covered by Avelo's trademark registrations. (*See* ECF 16-2) (providing for use in connection with "a website featuring information in the field of airline passenger transportation".)

-1-

from advertisements located on the <paxex.aero> site. (*Id.*) The site claims Proton and Miller are airline industry experts with "more than a decade covering the airline industry," and Miller is a "widely respected" "unbiased commentor on the aviation industry." (*Id.* ¶ 3 & Ex. B.) Miller's LinkedIn bio states he works "full-time" at Proton "[p]roviding expert analysis and consulting services to the airline passenger experience world" and his "[s]pecialties include inflight entertainment and connectivity solutions as well as loyalty marketing programs." (*Id.* ¶ 5 & Ex. D.) Importantly, Proton is using the <paxex.aero> website to publish information about Avelo and direct consumers to <avelno.com>. For example, on July 17, 2025, Proton published an article about Avelo containing a link to <avelno.com> where Plaintiffs solicit money. (*Id.* ¶ 6 & Ex. E at 6) (link to <avelno.com> embedded in text stating "I've not been shy about my views of that decision"); *see also* Suppl. Myers Decl. at Ex. F (source code showing link to <avelno.com>).) Miller also admits he is using <avelno.com> to pay for the billboards. (ECF 21, First Am. Compl. ¶¶ 20-21; Miller Decl. ¶ 12). In fact, on <avgeekaction.com>, a site that features AVELNO and contains a link back to <avelno.com>, Proton makes no apologies for being a *for profit commercial enterprise* stating, "*We are NOT a 501(c)3. Your donations are NOT tax deductible.*" (ECF 1-3).

Proton also operates the "Wandering Aramean" website located at <wandr.me> and a corresponding blog on the webpage https://blog.wandr.me/. (Suppl. Myers Decl.¶ 7-8 & Exs. G and H.) Both are part of Proton's commercial enterprise, containing third-party advertisements and pay-per-click links, openly disclosing that, "[s]ome links on this website will earn an affiliate commission." (*Id.* ¶ 8 & Ex. H.) Miller is using a social media account on BlueSky via username "@wandrme.paxex.aero" to promote Proton's "avelNo!" campaign by reposting articles about Avelo and links to Proton's for profit <paxex.aero> site, and by repeatedly publishing images of the infringing billboards. (*Id.* ¶ 9 & Ex. I.) Thus, Proton, Paxex.Aero, <avelno.com>, <avgeekaction.com>, and Wandering Aramean are all part of the same interconnected commercial enterprise using Avelo's distinctive trademarks, logos, and trade dress to promote Proton's paid-for information service on <paxes.aero> and solicit donations through <avelno.com> and <avgeekaction.com>. Plaintiffs' claim of noncommercial use lacks all credibility.[2]

---

[2] While Miller compares <avelno.com> to the website in *Bosley*, that website was indisputably non-commercial and not owned by a for-profit company. 403 F.3d at 678 ("Kremer's website contains no commercial links . . . At no time did [it] offer for sale any product or service or contain any paid advertisements from any other commercial entity"). Miller's reliance on *Aviva United States Corp. v.*

Plaintiffs are undeniably using AVELNO as a source identifier to denote their "avelNO!" campaign, solicit donations, and promote Proton's paid-for services. *See, e.g., Jack Daniels Properties, Inc. v. VIP Prods., LLC*, 599 U.S. 140, 155-161 (2023); *Libertarian Nat'l Comm., Inc. v. Saliba*, 116 F.4th 530, 534-538 (6th Cir. 2024).

### III. MILLER CANNOT ESTABLISH NOMINATIVE FAIR USE

#### A. Miller's Use of the AVELO® Trademark and Trade Dress Far Exceeds Fair Use

Use of the "visual trappings" of a trademark owner's brand along with the owner's registered *logo* goes beyond what is reasonably necessary to identify the owner. *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 n.7 (9th Cir. 1992) (finding "soft drink competitor would be entitled to compare its product to Coca-Cola or Coke but would not be entitled to use Coca-Cola's distinctive lettering"); *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1181 (9th Cir. 2010) (defendants' use of plaintiff's stylized mark and logo, "was more use of the mark than necessary and suggested sponsorship or endorsement by [the plaintiff]" because defendants "could adequately communicate their message without using the visual trappings of the [plaintiff's] brand"). Here, Plaintiffs used the visual trappings of Avelo's AVELO® mark on the Original Billboards and continue to do so on <avelno.com> and <avgeekaction.com>. Avelo's violet, teal, white, and yellow color scheme and trade dress is distinct and unique in the airline industry. (ECF 16 at 4:8-10.) Avelo's AVELO® house mark and wishbone logo (shown below) is consistently displayed on the exterior of its airliners, ticket counters, airport signage, in social media, and in advertisements. (*Id*. at 4:3-15.)



As shown below, Plaintiffs copied the AVELO® Marks, and wishbone logo, including Plaintiffs' signature yellow and violet trade dress on Plaintiffs' website and original billboards (ECF 41 at 3:1-10):

| Plaintiffs' Original Billboard | Plaintiffs' Website |
|---|---|
|  |  |

(continued)

*Vazirani*, 902 F. Supp. 2d 1246, 1258 (D. Ariz. 2012) is similarly misplaced as *Aviva* also concerned trademark use on a website that had no commercial activity whatsoever. *Id.*

*See* https://avelno.com (last visited July 17, 2025). This goes far beyond what is "reasonably necessary" to identify Avelo and/or its services. Plaintiffs' revised billboards prove that they can convey their message without using the AVELO® marks or trade dress. The revised billboards only use "AVELO" descriptively and omit the "visual trappings" of Avelo's trade dress:



(ECF 41 at 4:12-16.) Miller's claim that the second element of the nominative fair use test is established because Avelo's logo and distinctive colors were only used to identify Avelo and not in a competitive manner are meritless. In addition to using the <avelno.com> and <avgeekaction.com> websites to raise money, Plaintiffs operate a for-profit business enterprise utilizing multiple assumed names, websites, social media pages, and blogs to provide membership-based information services concerning the airline industry and airline transportation. (Suppl. Myers Decl. at ¶¶ 3-8, Exs. B-I.)

**B.    Plaintiffs Use the AVELO® Marks in Close Physical Proximity to Avelo**

Nor can Plaintiffs establish nominative fair use because they used[3] the AVELO® Marks in close physical proximity to Avelo's business operations, to falsely suggest sponsorship by or affiliation with Avelo. Tweed New Haven Airport is Avelo's hub for east coast flights. (ECF 41-2 at 3.) Plaintiffs posted their billboards on highways directly adjacent to Tweed New Haven Airport. (*Id.*) They chose to place their billboards outside of Tweed New Haven Airport because "80 percent" of Avelo's business comes from that airport.[4] The extremely close physical proximity between Plaintiffs' billboards and Avelo's airport operations creates a false impression of affiliation or sponsorship, especially when viewed by consumers unfamiliar with the billboard's context. *See e.g., Stensrud Inc. v. Unknown Parties*, No. CV-24-00334-PHX-DJH, 2024 U.S. Dist. LEXIS 30825, at *10 (D. Ariz. Feb. 22, 2024) (plaintiffs alleged *prima facie* claim for trademark infringement where defendant used plaintiffs' trademarks on merchandise just outside plaintiffs' concerts; "the close proximity of these alleged counterfeit transactions surely pose a risk of

---

[3] Miller wants to put the infringing billboards back up. (ECF 21, First Am. Compl. ¶ 49.)
[4] Thomas Breen, *Anti-Avelo Billboards Are Coming Back*, New Haven Independent (May 28, 2025), https://www.newhavenindependent.org/article/avelo_protest_lawsuit.

confusion as to its source of sponsorship"). Because Plaintiffs cannot satisfy the nominative fair use test, Avelo is likely to succeed on the merits of its trademark infringement claim.

## IV.    THE *SLEEKCRAFT* FACTORS ALSO FAVOR AVELO

Plaintiffs do not challenge and, therefore, concede two of the *Sleekcraft* factors—that the AVELO® marks are strong and that AVELNO is similar to AVELO®. Four additional factors also favor Avelo:

***Relatedness of the Services:*** Plaintiffs and Avelo are each engaged in the business of providing information concerning airline transportation to consumers. (*See* ECF 16-2; Suppl. Myers Decl. ¶¶ 1-9 & Exs. A-J.)

***Degree of Consumer Care:*** Avelo is a budget airline offering low-priced airline tickets ranging from $29-$99. *See, e.g.*, https://www.aveloair.com. Consumers exercise a low degree of care for products and services costing less than $150. *See e.g.*, *Brady v. Grendene USA, Inc.*, No. 3:12-cv-0604-GPC-KSC, 2014 U.S. Dist. LEXIS 157254, at *23 (S.D. Cal. Nov. 5, 2014); *Maxim Integrated Prods. v. Quintana*, 654 F. Supp. 2d 1024, 1035 (N.D. Cal. 2009).

***Overlapping Marketing Channels:*** Both parties market their goods and services on the Internet and on billboards. (*See* ECF 21, First Am. Compl. ¶¶ 21, 23; ECF 16-1, Player Decl. ¶ 5.) This factor favors Avelo. *See Surfvivor Media, Inc. v. Survivor Prods.,* 406 F.3d 625, 634 (9th Cir. 2005) (overlapping marketing channels weighs in favor of finding confusion likely).

***Plaintiffs' Bad Faith Intent:*** Plaintiffs' bad faith is presumed from their adoption of a confusingly similar mark. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979). Plaintiffs also admit they acted in bad faith, as discussed below. This factor *strongly* favors Avelo.

***Evidence of Actual Confusion***: Avelo presented at least four distinct instances of actual confusion. (ECF No. 16 at 14:1-15); *Vision Wheel, Inc. v. Vision Forged*, 732 F. Supp. 3d 1161, 1166 (C.D. Cal. 2024) (finding even one instance of actual confusion can support a finding of likelihood of confusion); *Clean Crawl, Inc. v. Crawl Space Cleaning Pros, Inc.*, 364 F. Supp. 3d 1194, 1209 (W.D. Wash. 2019) ("a single letter from a misdirected customer 'sufficient evidence of actual confusion . . . .'") (citation omitted). But Plaintiffs failed to address three of those instances and have conceded them. (ECF 41 at 13:16-27.)

In sum, of the eight (8) *Sleekcraft* factors, seven (7) of them show confusion between AVELO® and AVELNO is likely.

## V. AVELO IS LIKELY TO SUCCEED ON ITS CYBERSQUATTING CLAIM BECAUSE PLAINTIFFS HAVE ADMITTED THEIR BAD FAITH INTENT TO PROFIT

Unauthorized use of another's trademark is not excused by the First Amendment where it is likely to create confusion as to the source or sponsorship of the speech or goods/services in question. *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 541 (1987) (holding organizers of Gay Olympic Games had no First Amendment right to use the "Olympics" mark); *Anheuser-Busch, Inc. v. Balducci Publ'ns*, 28 F.3d 769, 776 (8th Cir. 1994) ("A parody creating a likelihood of confusion may be subject to a trademark infringement action"); *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 402 (8th Cir. 1987) (affirming injunction against sale of antiwar merchandise likely to cause confusion with plaintiff's marks). Similarly, the First Amendment does not protect unauthorized use of a trademark in a domain name where it creates a likelihood of confusion as to the source or sponsorship of the website. *See Planned Parenthood Fed'n of Am., Inc. v. Bucci*, No. 97 Civ. 0629 (KMW), 1997 U.S. Dist. LEXIS 3338, at *18 (S.D.N.Y. Mar. 24, 1997), *aff'd*, 152 F.3d 920 (2d Cir. 1998).

Plaintiffs undeniably had a bad faith intent to profit from their registration and use of <avelno.com>. Under the ACPA, "intent to profit" means the intent to get money or other valuable consideration. *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1221 (9th Cir. 2010). This "includes an attempt to procure an advantageous gain or return" and is not limited to monetary "profit." *Id.* (citing *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 786 (8th Cir. 2004)). In *Purdy*, the defendant's use of <mycoca-cola.com> and <drinkcoke.com> to divert Internet users to anti-abortion websites constituted a bad faith intent to profit from Coca-Cola's trademarks. *Id.* at 787-788 ("While Purdy has the right to express his message over the Internet, he has not shown that the First Amendment protects his appropriation of plaintiffs' marks in order to spread his protest message by confusing Internet users into thinking that they are entering one of the plaintiffs' websites"). Plaintiffs concede that a bad faith intent to profit means the intent to trade on the goodwill of another's trademark—exactly what Plaintiffs have done here. (ECF 41 at 15-16) ("The crucial elements of bad faith intent to profit . . . are distilled to mean an 'intent to trade on the goodwill of another's mark'").

Plaintiffs intended to profit from the goodwill Avelo developed in its AVELO® mark by using a confusingly similar version of the mark in <avelno.com> to attract and/or trick an unwitting, confused, and

4911-2480-0086, v. 88

possibly unwilling audience to their anti-Avelo message. Miller admits as much, claiming he needs to use Avelo's trademarks and trade dress to "effectively" convey his message to consumers. (*See* ECF 14-1, Miller Decl. at ¶ 6 ("To be effective, I designed avelNO!'s billboards and websites to be eye-catching, informative, and honest."); at ¶ 8 ("To help people understand that my billboards are about Avelo Airlines, I used a variant of Avelo's logo . . . ."); at ¶ 11 ("I picked that domain name because it is the name of the avelNO! campaign"); *see also* ECF 41 at 8:11-16 ("Miller . . . designed the avelNO! campaign with a variant or parody of the Avelo mark and Avelo's airplane livery—that is, the plane's paint—to spread his message most effectively") (internal citations omitted).) As the Eighth Circuit explained, this is like putting a "McDonald's logo before a freeway exit for the purpose of diverting unwitting travelers to the site of an antiabortion rally." *Purdy*, 382 F.3d at 787. Although Miller's admitted bad faith is sufficient to end the inquiry, the bad faith factors show that Avelo is likely to succeed on the merits of its cybersquatting claim.

Miller's analysis of the first factor is completely backwards. Avelo was the *first* to use the AVELO mark in commerce and, as a result, it has superior rights in the mark. *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). Its trademark registrations confer upon it the *exclusive* right to use its registered trademarks throughout the United States and grants it priority over confusingly similar marks. *See* 15 U.S.C. §§ 1057(b), 1114(1). Miller has zero trademark rights in "AVELNO" because it is nothing more than a later-in-time *admitted* rip-off of Avelo's federally registered AVELO® mark.

Miller ignores the plain language of the second factor and attributes a holding to the Fourth Circuit it never made in *Fallwell*. The second factor concerns "the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person." 15 U.S.C. § 1125(d)(1)(B)(i)(II). The "person" referred to in the statute is the person alleged to have a bad faith intent. *Id.* § 1125(d)(1)(B)(i). That is Miller and Proton. The <avelno.com> domain name is not the legal name of either. The *Fallwell* court did not address the second factor at all.

With respect to the third factor, Miller argues <avelno.com> was never used in connection with any *bona fide* offering of goods or services. This favors Avelo because Miller's lack of any prior *bona fide* use of AVELNO shows he only recently registered <avelno.com> for the purpose of tricking consumers familiar with Avelo's trademarks to view his anti-Avelo messaging.

As to the fourth factor—*bona fide* noncommercial use—this factor favors Avelo because Miller is

*not* engaged solely in noncommercial use as <avelno.com> is part of Proton's commercial enterprise and solicitations for money. (*See* Part II, *supra*.) Plaintiffs have misappropriated not only the AVELO® marks but have also used Avelo's wishbone logo, the same font, and its trade dress (*i.e.*, Avelo's unique violet and yellow color scheme) on <avelno.com> to attract Internet users to the site. As Professor McCarthy explains,

> Most cases have held that regardless of free speech principles, a Web site containing criticism of a company or an organization cannot be identified by a domain name confusingly similar to the name or trademark of the target group. The right to disseminate criticism on the Internet cannot trump the public's right not to be deceived by a confusingly similar domain name. And the critic has no free speech 'right' to confuse Web users into thinking that they are entering a Web site of the target in order to expose them to the defendant's message of criticism of the target.

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:148 & n.2 (5th ed. 2025) (hereinafter, "McCarthy") (citing *Bucci*, 1997 U.S. Dist. LEXIS 3338 (entering preliminary injunction against use of <plannedparenthood.com> by anti-abortion group critical of plaintiff's policies)).[5] Neither *Falwell* nor *Lucas Nursery* involved a confusingly similar use of the plaintiff's marks and trade dress on the websites in question. *See Lamparello v. Falwell*, 420 F.3d 309, 315 (4th Cir. 2005) ("Lamparello's website looks nothing like Reverend Falwell's; indeed, Lamparello has made no attempt to imitate Reverend Falwell's website . . . Most importantly, Reverend Falwell and Lamparello do not offer similar goods or services"); *Lucas*, 359 F.3d at 810 ("There is no dispute that Lucas Nursery did not have an online location, and hence Grosse's creation of a web site to complain about Lucas Nursery's services could not have been intended 'to divert consumers from the mark owners' online location.' Nor is there any evidence that Grosse ever sought to mislead consumers with regard to the site's sponsorship"). Those cases are easily distinguishable—here, Plaintiffs admit to intentional copying.

Nor is Miller entitled to invoke the ACPA's safe harbor. "Courts should make use of this

---

[5] *See also, e.g., Jews For Jesus v. Brodsky*, 993 F. Supp. 282 (D.N.J. 1998), *aff'd* 159 F.3d 1351 (3d Cir. 1998) (entering preliminary injunction against use of <jewsforjesus.org> for website opposed to plaintiff's religious teachings); *OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F. Supp. 2d 176, 190-191 (W.D.N.Y. 2000) (entering preliminary injunction against use of <thebuffalonews.com>, stating "the Court finds that defendants' use of the 'thebuffalonews.com' domain name causes a likelihood of confusion because it creates initial interest confusion. Having also concluded that plaintiffs' trademark is entitled to protection under the Lanham Act, the Court holds that defendants' actions constitute trademark infringement under 15 U.S.C.§ 1114"); *People for Ethical Treatment of Animals, Inc. v. Doughney*, 113 F. Supp. 2d 915 (E.D. Va. 2000), *aff'd* 263 F.3d 359 (4th Cir. 2001) (granting summary judgment and ordering transfer of <peta.org> to plaintiff where defendant had registered domain and used it for website called "People Eating Tasty Animals" critical of plaintiff's policies); *Purdy*, 382 F.3d at 774 (affirming preliminary injunction entered against registrant of <drinkcoke.org> and <mycocacola.com> used to attract Internet users to anti-abortion websites).

reasonable belief defense very sparingly and only in the most unusual cases." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1203 (9th Cir. 2009) (quotation omitted). "[A] defendant who acts even partially in bad faith in registering a domain name is not, as a matter of law, entitled to benefit from the [ACPA's] safe harbor provision." *Id*. (quotation omitted). This is not an unusual case. Miller admitted his bad faith intent to trade on Avelo's goodwill and is not entitled to invoke the safe harbor defense.

With respect to the fifth factor—intent to divert consumers—"[w]hen the alleged infringer knowingly adopts a mark similar to another's [mark]," courts presume an intent to deceive the public." *Sleekcraft*, 599 F.2d at 354. It is easy to infer wrongful intent when the defendant "knew of plaintiff's mark, had freedom to choose any mark and 'just happened' to choose a mark confusingly similar to plaintiff's mark." 3 McCarthy § 23:115. "In turn, intent to deceive is strong evidence of a likelihood of confusion." *Sleekcraft*, 599 F.2d at 354. As set forth above, Plaintiffs admit that they used Avelo's trademark and distinctive trade dress because doing so would most "effectively" convey their anti-Avelo message. Plaintiffs criticize Avelo for citing the *imgmcasino.com* case. (ECF 41 at 19.) But they missed the point. There, because the defendant's domain name incorporated the MGM mark in its entirety and both parties offered the same services, "Defendant's intent to divert consumers [was] apparent." *MGM Resorts Int'l v. Unknown Registrant*, No. 2:14-cv-1613-GMN-VCF, 2015 U.S. Dist. LEXIS 128397, at *26 (D. Nev. July 8, 2015). Here, as in that case, <avelno.com> incorporates the entirety of Avelo's mark and both parties are engaged in the business of providing information concerning airline transportation. (*See* Suppl. Myers Decl. ¶¶ 2-8 & Exs. A-I (attached hereto); *see also* ECF 16-1, Player Decl. ¶ 2 & Ex. A (U.S. Reg. No. 6,910,702 for "a website featuring information in the field of passenger transportation;" Reg. No. 6,657,107 for "providing information in the field of airline transportation by means of a global computer network").) Plaintiffs intent to divert consumers here is likewise apparent.

### VI.    AVELO IS ENTITLED TO A PRESUMPTION OF IRREPARABLE HARM

Under the Lanham Act, a trademark holder who seeks an injunction to protect against infringement "**shall be entitled to a rebuttable presumption of irreparable harm** . . . upon a finding of likelihood of success on the merits . . . ." 15 U.S.C. § 1116(a) (emphasis added). Plaintiffs ignore the presumption, fail to rebut it with evidence, and focus on whether *Avelo* provided sufficient evidence of confusion. But Avelo is not required to provide evidence that confusion has occurred, only that it is *likely* to occur. *See Wells Fargo*

*& Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1072-73 (9th Cir. 2014) (actual confusion is "of diminished importance" at the preliminary injunction stage because "a motion for preliminary injunction normally occurs early in litigation," before the parties "have amassed significant evidence of actual confusion"); *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (actual confusion not necessary to show likelihood of confusion). It is Plaintiffs who bear the burden of rebutting the presumption with evidence. *See, e.g., Patagonia, Inc. v. Agnew*, No. 2:25-cv-03283-CV-SK, 2025 U.S. Dist. LEXIS 107374, at *20-21 (C.D. Cal. June 5, 2025) ("it is Defendants' burden to provide evidence that rebuts the presumption of irreparable harm; it is not [Plaintiff's] burden to prove that it has been irreparably harmed . . . .") Their counsels' arguments are insufficient. *See Karle v. Rag Place, Inc.*, No. 2:24-cv-10986-AH-(MARx), 2025 U.S. Dist. LEXIS 123190, at *1 (C.D. Cal. May 15, 2025) ("Defendants' arguments . . . did not rebut the presumption"); *see also, e.g., Longbridge Fin., Ltd. Liab. Co. v. Mut. of Omaha Mortg., Inc.*, No. 24-cv-1730-DMS-VET, 2025 U.S. Dist. LEXIS 91179, at *39 (S.D. Cal. May 13, 2025) ("Defendants cannot flip the burden by asserting Plaintiff has not provided evidence of harm. Because a presumption of harm exists, either Defendants must provide evidence that Plaintiffs did not suffer irreparable harm or Plaintiffs must concede the absence of such harm"). Here, Miller has done neither.

In contrast, Avelo submitted evidence that Plaintiffs' infringing activity has "resulted in injury and harm to Avelo's business, reputation, and goodwill that is impossible to quantify." (ECF 16-1, Player Decl. ¶ 14; *see also* ECF 16-3, Myers Decl. ¶¶ 2-6 & Ex. A.) It provided evidence that at least ***four*** people were confused as to whether the billboards were sponsored by Avelo. (ECF 16-3, Myers Decl. ¶¶ 2-6 & Ex. A.) For example, in addition to Reddit user Barbiebratt, Reddit user Magehunter_Skassi was clearly confused by the billboard, stating, "Is that an advertisement or an attack ad?" (*Id.* at ¶ 6 & Ex. A.) This is *strong* proof that a *likelihood* of confusion exists. *See, e.g., Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001) ("evidence of actual confusion . . . constitutes persuasive proof that future confusion is likely").[6] This evidence of past confusion strongly suggests ongoing confusion is occurring and will continue absent injunctive relief. Plaintiffs' argument that *they* would be irreparably harmed by an

---

[6] *See also Pub. Storage v. Burrus Fam. Trust*, No. 8:23-cv-01190-FWS-DFM, 2024 U.S. Dist. LEXIS 212852, at *37-39 (C.D. Cal. Oct 3, 2024) ("evidence of even small numbers of instances of actual confusion can be persuasive"); *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002) (noting a trier-of-fact may find just one instance of actual confusion "quite significant").

injunction is false, as any minor inconvenience Plaintiffs may suffer is self-inflicted and, therefore, *not* irreparable. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) ("self-inflicted wounds are not irreparable injury") (citation omitted). Even absent the presumption, Avelo has demonstrated that its reputation has been and continues to be irreparably injured. *Pop-A-Shot Enter., LLC v. East Point Sports Ltd., LLC*, 2023 WL 8170796, at *5 (C.D. Cal. Nov. 6, 2023) ("A plaintiff need not prove loss of business from trademark infringement; rather, '[t]he fact that [the] plaintiff has had the symbol of its reputation placed in the hands of another is irreparable injury'"). Here, Plaintiffs themselves claim that their billboards are "working as intended" and "souring" Avelo's reputation. (ECF 41 at 21, ll. 8-11.) Absent injunctive relief, Avelo's business, goodwill, and reputation will continue to suffer irreparable harm.

## VII.  IF ENJOINED, PLAINTIFFS WILL ONLY SUFFER MINOR INCONVENIENCE

"[L]oss of control over business reputation" and "damage to goodwill" can support a finding of irreparable harm. *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018) (citation omitted). Avelo submitted evidence that Plaintiffs' infringing activity has "resulted in injury and harm to Avelo's business, reputation, and goodwill that is impossible to quantify." (ECF 16-1, Player Decl. ¶ 14; *see also* ECF 16-3, Myers Decl. ¶¶ 2-6 & Ex. A.) Where an injunction seeks to halt willful trademark infringement, there is no hardship at all because an injunction would merely require Miller to comply with the law. *See, e.g., Left Coast Wrestling, LLC v. Dearborn Int'l LLC*, No. 2018 U.S. Dist. LEXIS 86808, at *33-34 (C.D. Cal. May 23, 2018) ("Where, as here, the injunction seeks to halt willful trademark infringement and gain Defendants' compliance with the law, there is no hardship"). Miller admitted the willfulness of his infringement. (*See* Part V, *supra*.) Accordingly, a narrowly tailored injunction will not result in any serious hardship. Furthermore, "[t]he injury a defendant might suffer if preliminarily enjoined 'may be discounted by the fact that the defendant brought that injury upon itself.'" 4 McCarthy § 30:51 & n.5 (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578 (3d Cir. 2002)). If enjoined, Miller will be required to stop using <avelno.com> but will be free to continue using <avgeekaction.com> which contains substantially the same message. He will only be required to cease using Avelo's distinctive logos and trade dress and will remain free to use the *non-stylized* word "Avelo" to identify Avelo as permissible nominative fair use under *New Kids on the Block*. (*See* Part III(a), *supra*.) These are minor inconveniences, are entirely self-inflicted, and easily discounted.

But these minor inconveniences pale in comparison to the loss of control over its trademarks and trade dress that Avelo has suffered and the damage to its goodwill and reputation caused by ongoing consumer confusion. While Miller argues he will lose the freedom to design his billboard and website as he chooses, Miller chose to *misappropriate* Avelo's trademarks and trade dress to make his campaign more "effective." His theft of Avelo's trademarks and trade dress should not be minimized by calling it a matter of taste and style or an esthetic or moral judgment about art and literature when it is none of those things.

## VIII.    A LIMITED INJUNCTION IS IN THE PUBLIC INTEREST

The public's right not to be confused must be balanced against Miller's free speech rights and Avelo's First Amendment right not to have its intellectual property used without its consent to falsely associate it with Miller's message. *See, e.g., Prune Yard Shopping Ctr. v. Robbins*, 447 U.S. 74, 97-100 (1980) (Powell, J. dissenting) ("'[a] system which secures the right to proselytize religious, political, and ideological causes must also guarantee the concomitant right to decline to foster such concepts.' This principle on its face protects a person who refuses to allow use of his property as a marketplace for the ideas of others") (quoting *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)). Here, the public interest is best advanced by a narrow injunction prohibiting Miller from using <avelno.com> and Avelo's distinctive logos, trade dress, and color scheme. This would protect the public from confusion and allow Miller to continue speaking while respecting Avelo's intellectual property and First Amendment rights.

## CONCLUSION

For the foregoing reasons, the Court should enter an order granting Avelo's motions seeking a TRO and preliminary injunction.

Dated: this 6th day of August 2025

    Respectfully submitted,

    HOWARD & HOWARD ATTORNEYS PLLC

    By: /s/ Jonathan W. Fountain
    Jonathan W. Fountain, Esq.
    Joanna M. Myers, Esq.
    Caleb L. Green, Esq.

    RESONATE IP, LLC
    Drew M. Smith, Esq.

    *Attorneys for Defendant Avelo, Inc.*

4911-2480-0086, v. 88