UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Proton Associates LLC, et al., | Case No. 2:25-cv-00856-CDS-BNW |
| Plaintiffs | Order Denying Defendant/Counterclaimant's Motions for Preliminary Injunction and Temporary Restraining Order |
| v. | |
| Avelo, Inc., | |
| Defendant | [ECF Nos. 16, 17] |

Defendant/Counterclaimant Avelo, Inc., an airline company, moves for a temporary restraining order (TRO) (ECF No. 16) and for a preliminary injunction (ECF No. 17)[1] seeking to enjoin and restrain plaintiffs/counterdefendants Seth Miller and Proton Associates LLC (hereinafter, "the plaintiffs"), from the following:

(1) using the Avelo Marks and any confusingly similar variations thereof, alone or in combination with any letters, words, letter string, phrases or designs in commerce, including, without limitation, on any website, in any domain name confusingly similar to the Avelo Marks, in any social network username confusingly similar to the Avelo Marks, in any hidden website text, or in any website metatag;

(2) engaging in false or misleading advertising or commercial activities likely to deceive consumers into believing that plaintiffs are Avelo or that any of the plaintiffs' services are associated or affiliated with, connected to, approved by, or sponsored by Avelo;

(3) displaying or affiliated with, connected to, approved by, or sponsored by Avelo; and

(4) displaying or re-displaying the infringing billboards.

---

[1] The temporary restraining order and preliminary injunction motions are identical. Because Avelo's filings seek two forms of relief, it was correctly docketed as separate entries. *See* ECF No. 16; ECF No. 17. For efficiency, and because the standards for evaluating both motions are the same, I only cite to ECF No. 16 herein. *See Chandler v. Williams*, 2010 WL 3394675, at *1 (D. Or. Aug. 26, 2010) (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)) (discussing that the standard for issuing a preliminary injunction is "essentially identical" to the standard for issuing a temporary restraining order.).

Mot., ECF No. 16 at 1–2. Avelo also requests that Dynadot Inc. place the domain name on hold and lock, and further requests setting a briefing schedule and oral argument on their motion for preliminary injunction. *Id.* The plaintiffs oppose both motions, arguing that Avelo fails to acknowledge the correct legal framework for analyzing trademark infringement claims, and that Avelo fails to meet its burden showing it will suffer irreparable injury if its TRO and PI motions are not granted. *See* Opp'n, ECF Nos. 43 (TRO), 44 (PI). The motions are now fully briefed. Replies, ECF Nos. 48 (TRO), 51 (PI).[2] For the reasons set forth herein, Avelo's motions for a temporary restraining order and preliminary injunction are denied.

I. Background[3]

Defendant Avelo Airlines Incorporated is an airline that primarily operates low-cost passenger service between small regional airports. First am. compl., ECF No. 21 at ¶ 1. Plaintiff Proton Associates LLC is a limited-liability company. ECF No. 21 at ¶ 7. Proton does business as AvGeek Action Alliance, and plaintiff Seth Miller formed and partly owns Proton. *Id.* In April of 2025, Avelo signed a contract with the U.S. Immigration and Customs Enforcement Agency to "support the Department's deportation efforts." *Id.* at ¶ 1.

Avelo's decision to support the government's deportation efforts caused many people across the country to protest the airline. *Id.* at ¶ 2. Plaintiffs assert that Miller joined this effort by starting a campaign called the AvGeek Action Alliance, which urges travelers to choose airlines consistent with their political values. *Id.* at ¶ 3. Miller leased two billboards on the road to Avelo's hub in New Haven, Connecticut, reading, "Does your vacation support their deportation? Just say AvelNO! Paid for by AvGeek Action Alliance – avelNO.com." *Id.* The word

---

[2] In its reply, Avelo argues that Proton did not oppose the motions so it should it be granted as unopposed. ECF No. 51 at 2. I disagree. The conclusion of both motions asks for relief for both plaintiffs. *See* ECF No. 41 at 29 ("For the above reasons, Plaintiff Seth Miller and Proton Associates LLC respectfully request this Court [deny] Avelo's requests for a temporary restraining order and preliminary injunction."); ECF No. 44 at 29 (same).

[3] Unless otherwise noted, the court only cites to Proton's first amended complaint (ECF No. 21) and Avelo's answer to the amended complaint (ECF No. 37) to provide context to this action, not to indicate a finding of fact.

"AvelNO" in the ad is allegedly a parody of Avelo's blue-text trademark, with the letter "N" inserted between the "L" and the "O" in red. *Id.* Plaintiffs assert that Miller's purpose in buying the billboard was not to identify airline tickets for sale, but rather to criticize Avelo. *Id.*

As a result of the billboards critical of Avelo that the plaintiffs paid to display in New Haven, Avelo sent cease-and-desist letters, claiming that the plaintiffs were infringing on Avelo's intellectual property. *See* Am. Answer, ECF No. 37 at 15. The plaintiffs filed this lawsuit seeking declarations of non-infringement (Counts 1–3). *See* First am. compl., ECF No. 21.

Avelo answered and responded with two counterclaims—a Lanham Act trademark infringement claim and an Anti-Cybersquatting Consumer Protection Act claim. *See* ECF No. 37. As to the first counterclaim, Avelo alleges that the ‹avelno.com› domain name is confusingly similar to Avelo's federally registered AVELO trademark. ECF No. 37 at ¶ 26. Avelo alleges that the plaintiffs' unauthorized use of the ‹avelno.com› domain name has caused, and is continuing to cause, consumers to be confused about the affiliation, connection, or association with Avelo. *Id.* at ¶ 28. Avelo argues that the plaintiffs' disclaimers on their website are insufficient to dispel consumer confusion. *Id.* at ¶ 29.

As to the second counterclaim, Avelo argues that they own federal trademark registrations for the Avelo Marks—including for the word AVELO. ECF No. 37 at ¶ 34. Avelo asserts that the Avelo word mark is used in connection with goods and services, and transportation services (transportation of persons by air and providing information in the field of airline transportation). *Id.*

Avelo further argues that the plaintiffs are using the "AVELNO!" mark in commerce without Avelo's consent in connection with the sale, offering for sale, distribution, and advertising of goods and services. ECF No. 37 at ¶ 36. Avelo argues that the plaintiffs use of "AVELNO!" is causing, and continues to cause, confusion and is intended to deceive. *Id.* Further, Avelo argues that the plaintiffs' unauthorized use in commerce of "AVELNO!" on the infringing billboard, in the ‹avelno.com› domain name, and on the ‹avelno.com› and ‹avgeekaction.com›

websites, constitutes infringement of Avelo's federally registered Avelo marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. *Id.* at ¶ 37.

II.   **Legal standard**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (quoting *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citations omitted)). The Supreme Court has explained that to obtain an injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable injury in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The Ninth Circuit uses a "'sliding scale' approach to preliminary injunctions." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under that approach, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Fraihat*, 16 F.4th at 636 (quoting *All. for the Wild Rockies*, 632 F.3d at 1135) (citation modified).

A temporary restraining order may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of such an order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974). In determining whether to issue a temporary restraining order, a court applies the factors that guide the evaluation of a request for preliminary injunctive relief: whether the moving party "is likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, . . . the balance of equities tips in [its] favor, and . . . an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832,

4

839 n.7 (9th Cir. 2001) (analysis for temporary restraining orders and preliminary injunctions "substantially identical").

### III. Discussion

While Avelo argues that this court should grant its motions because it met all the *Winter* factors, a closer review reveals that the crux of its motion asserts that it is suffering irreparable harm because of the plaintiffs' actions. *See* ECF No. 16 at 10–22. Plaintiffs aver that Avelo offers no evidence that it is suffering irreparable injury and that Avelo has no likelihood of success on either of its counterclaims. *See* ECF No. 16 at 25–26. However, because likelihood of success on the merits is the most important *Winter* factor, *see Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015), I address that first.

**A. Likelihood of success on the merits.**

*1. Lanham Act trademark infringement claim*

Avelo first argues that the plaintiffs have embarked upon an intentional campaign to damage Avelo's business, reputation, and goodwill, by using Avelo's own trademarks and trade dress by registering the ‹avelno.com› domain name to raise money for billboards, then contracting with Lamar Advertising to erect two billboards in the New Haven, Connecticut area to advertise the website. ECF No. 16 at 2. Avelo asserts that the plaintiff's actions have crossed the line from any fair exercise of First Amendment rights into an unfair and commercial misappropriation of Avelo's trademarks and brand identity, and unless enjoined from continuing, they will continue to suffer irreparable harm. *Id.* at 3.

Avelo fails to show a likelihood of success on the merits for its trademark infringement claim. The Trademark Act of 1946 ("Lanham Act") prohibits use of trademarks, trade names, and trade dress that are likely to cause confusion about the source of a product or service. *Bosley Med. Inst., Inc v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) (citing 15 U.S.C. § 1114). To prevail on a claim of trademark infringement under the Lanham Act, a party must prove that (1) it has a protectible ownership interest in the mark; (2) the defendant used the mark "in connection with" goods or

services; and (3) the use of the mark is likely to cause consumer confusion. *See LegalForce RAPC Worldwide, P.C. v. LegalForce, Inc.*, 124 F.4th 1122, 1125 (9th Cir. 2024); *see also Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011).

The plaintiffs do not contest that Avelo owns federal trademark registrations for the Avelo Marks, including, but not limited to Reg. No. 6,910,702 for the AVELO word mark, so the first element of a Lanham Act violation is met. But this is where the success of Avelo's Lanham Act claim comes to an end. Avelo's motion fails to substantively address the second element, that is, whether the plaintiffs used Avelo's mark in connection to goods and services. The Supreme Court has long held that "trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers." *Bosley Medical Institute*, 403 F.3d at 676 (quoting *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924)). A "good" is a movable or tangible thing, and a "service" is a performance of labor for the benefit of another. *See LegalForce RAPC Worldwide, P.C.*, 124 F.4th at 1126. A "good" is not addressed in Avelo's motion for obvious reasons, and its only argument is the plaintiffs' "infringing billboards and ‹avelno.com› website" are providing information "in the field of airline passenger transportation." ECF No. 16 at 14. This is unpersuasive and Avelo cites no points and authorities that would suggest their arguments would satisfy the second element of a Lanham Act violation. While the plaintiffs' billboards contain the following language: "Does your vacation support their deportation? Just say avelNO!," *see* ECF No. 37 at 14, this in no way constitutes providing a service to anyone or for anything. Avelo's own counterclaim even recognizes that the website is a campaign, identifying it as the "AVELNO! campaign" that invites people to donate to the campaign if they would like. ECF No. 37 at 14–5. Because Avelo fails to establish the second element of the Lanham Act, it has failed to demonstrate a likelihood of success on the merits so the court stops its analysis of this counterclaim here.[4]

---

[4] The court notes that Avelo improperly raised a new argument for the first time in its reply, that is that it is likely to succeed on the merits of its trademark infringement claim because Miller is using "AvelNO!" in connection with Proton's business. Reply, ECF No. 48 at 2. Because this is improper, the court does

### 2. Cybersquatting Consumer Protection Act Claim

Avelo argues that the plaintiffs have violated the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), by registering ‹avelno.com› with a bad faith intent to profit. The Ninth Circuit has explained that cybersquatting occurs

> [w]hen a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder.

*Bosley Medical Institute*, 403 F.3d at 680 (citations omitted). To prevail on an Anti-Cybersquatting Consumer Protection Act (ACPA) claim, a party must show (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted "with bad faith intent to profit from that mark." *Yuga Labs, Inc. v. Ripps*, 144 F.4th 1137, 1174 (9th Cir. 2025) (quoting *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012)). The "ACPA contains a safe harbor defense for registrants who 'believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.'" *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1033 (9th Cir. 2011) (citing 15 U.S.C. § 1125(d)(1)(B)(ii)).

Avelo fails to demonstrate a likelihood of success on the merits of its cybersquatting counterclaim. Again, there is no dispute as to the first element: the plaintiffs have registered ‹avelno.com›. However, the plaintiffs' opposition to the motion did not address the second element—that is, that the ‹avelno.com› is identical or confusingly similar to the protected mark. While the court has some doubts, I find that Avelo has established this element because the plaintiffs failed to address how the ‹avelno.com› mark is distinct to the protected mark.

But Avelo fails to show that there was bad faith intent to profit on behalf of the plaintiffs. I do not disagree that the plaintiffs intended to divert consumers looking for the Avelo website,

---

not consider nor address this argument. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

and to direct them instead to the ‹avelno.com› website, by registering a domain name they knew was confusingly similar to the AVELO mark. ECF No. 16 at 19–20. Avelo fails to demonstrate however that the purpose behind creating the ‹avelno.com› website was to profit off Avelo or to divert business from Avelo to the plaintiffs, which if proven, would have demonstrated bad faith by the plaintiffs.

Bad faith is an essential prerequisite to finding an ACPA violation. *See Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 (9th Cir. 2009). Congress has enumerated nine nonexclusive factors a court may consider in determining bad faith. The "most important grounds for finding bad faith are the unique circumstances of the case." *Id.* I considered the following relevant factors:

> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; and
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct.

15 U.S.C. § 1125(d)(1)(B).

The plaintiffs argue that "Miller has not, and does not intend to, profit from the website or any other part of his AvelNO campaign. Every dollar [Miller] raised went to or will go to renting billboards and other advertising to criticize Avelo." ECF No. 21 at ¶ 24. Indeed, there is no evidence that the plaintiffs created the website to obtain a profit from Avelo. *Lahoti*, 586 F.3d at 1202–03 (plaintiff showed bad faith intent by having customers click on links which redirected customers to the defendant's competitors and by offering to sell the domain name to the defendant for $72,500). While the website does invite visitors to make donations, the *invitation* to make a donation negates an intent to profit, an express requirement to violate the ACPA. 15 U.S.C. § 1125(d)(1)(A)(i) (an alleged cybersquatter must have an "*intent to profit*"). Avelo cites no case law that supports its contention that a billboard that invites people to visit a

website that in turn invites its visitors to make a donation to the plaintiffs equates to obtaining a profit from potential Avelo customers.[5] *Super-Krete Int'l, Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1033 (C.D. Cal. 2010) (finding bad faith where "Defendants only interest in the domain name is to divert customers who may have been searching for Plaintiff's mark to their own commercial website"). Moreover, the purpose of ‹avelno.com› was not to direct domain visitors to book travel; rather, it was to provide information regarding Avelo's alleged assistance to ICE by providing deportation flights, which minimizes the risk of confusion. *See GoPets*, 657 F.3d at 1033 (finding that "it is clear that [the domain registrant] intended the Additional Domains 'to divert consumers from the mark owner's online location to a site accessible under [these] domain name[s] . . . by creating a likelihood of confusion'"). Consequently, Avelo fails to demonstrate success on the merits on its ACPA claim.

### 3. Avelo also fails to demonstrate irreparable harm or that there are serious questions going to the merits.

The second requirement for injunctive relief is that the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1133 (9th Cir. 2013) (citing *Winter*). But because likelihood of success is a threshold inquiry, which Avelo fails to meet here, I need not consider the remaining three *Winter* elements. *Garcia*, 786 F.3d at 740; *see also Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (quoting *DISH Network Corp. v. FCC*, 653 F.3d 771, 776–77 (9th Cir. 2011)).[6] Accordingly, Avelo's motions are denied.

---

[5] Because I find Avelo fails to establish this element, I need not address whether the ACPA safe harbor provision applies.

[6] And because Avelo fails to demonstrate success on the merits as to its Lanham Act claim, the presumption in favor of irreparable harm no longer exists. *See* 15 U.S.C. § 1116(a).

## IV. Conclusion

IT IS HEREBY ORDERED that defendant/counterclaimant Avelo's motions for preliminary injunction and temporary restraining order **[ECF Nos. 16, 17] are DENIED**.

Dated: September 24, 2025

_____
Cristina D. Silva
United States District Judge