Charles Gerstein, Esq.
(*Admitted pro hac vice*)
Jeremy Shur, Esq.
(*Admitted pro hac vice*)
GERSTEIN HARROW LLP
1629 Columbia Rd NW, Suite 302
Washington, DC 20009
Tele.: (202) 670-4809
charlie@gerstein-harrow.com

Jason Harrow, Esq.
(*Admitted pro hac vice*)
GERSTEIN HARROW LLP
12100 Wilshire Blvd. Suite 800
Los Angeles, CA 90025
Tele.: (323) 744-5293
jason@gerstein-harrow.com

*Attorneys for Plaintiffs*

Bradley S. Schrager, Esq. (SBN 10217)
Daniel Bravo, Esq. (SBN 13078)
BRAVO SCHRAGER LLP
6675 South Tenaya Way, Suite 200
Las Vegas, Nevada 89113
Tele.: (702) 996-1724
bradley@bravoschrager.com
daniel@bravoschrager.com

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| PROTON ASSOCIATES LLC, and SETH MILLER,<br><br>Plaintiffs,<br><br>vs.<br><br>AVELO, INC.,<br><br>Defendant. | Case No.: 2:25-cv-00856-CDS-BNW<br><br><br>**PLAINTIFFS AND COUNTERCLAIM-DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

## PRELIMINARY STATEMENT

The Lanham Act is meant to guard against confusion in the marketplace for goods and services, not to stifle speech in the marketplace of ideas. Avelo, Inc. sued Seth Miller and Proton Associates, LLC (hereafter, collectively, "Miller"), for trademark infringement and cybersquatting, alleging that his avelNO! campaign—

which, by Avelo's own pleading, is aimed at ensuring "passengers know that Avelo is using its planes to deport people," ECF No. 37 at ¶ 13—violated the Lanham Act. Because Avelo has not, and cannot, plead that Miller's campaign offers for sale a good or service within the meaning of the Lanham Act, and because Avelo has not, and cannot, plead that Miller's website was created to profit from Avelo's mark, its claims fail as a matter of law and must be dismissed on the pleadings.

This Court has already recognized as much. In denying Avelo's motions for preliminary relief, the Court found that there are not even "serious questions" going to the merits of Avelo's claims. ECF No. 62 at 9. This Court found that Avelo had no likelihood of success on its trademark-infringement claim because avelNO! offers no "good" or "service," ECF No. 62 at 5–6, and that Avelo's cybersquatting claim is likely to fail because the avelNO! website was not created to profit from Avelo's mark. *Id.* at 8–9. Those conclusions flow directly from the face of Avelo's pleading and the governing law, and this Court should adhere to them and grant this Motion.

## I. FACTS

### A. Factual Background

In April 2025, Avelo entered a contract with the Trump administration to "facilitate the movement by air of non-citizens." *See* ECF No. 37, Avelo, Inc.'s First Amended Counterclaims ¶ 13.[1] Seth Miller, alongside Proton Associates, an LLC he formed and partly owns, "disagrees with Avelo's decision to provide airline transportation services to the United States government in connection with its going efforts to deport" people. *Id.* ¶ 12. And Miller "wants to make sure passengers know that Avelo is using its planes to deport people and that he wants to pressure Avelo to reconsider its decision." *Id.*

---

[1] As explained in §II below, a Court deciding a party's motion for judgment on the pleadings must view the non-movant's pleadings in the light most favorable to that party. Thus, this section cites only Avelo's counter-complaint.

So Miller took "several steps" to publicize Avelo's decision and to put pressure on Avelo to stop its role in the Trump administration's deportation efforts. *Id.* First, Miller, on behalf of Proton Associates, registered the <avelno.com> domain name and "AvGeek Action Alliance" as a trade name "to raise money to purchase billboards criticizing Avelo." *Id.* ¶ 13. Avelo claims that Miller is "using the <avelno.com> website to identify the[] AVELNO! campaign and to solicit funds" used to "extend and expand [avelNO!'s] *messaging*." *Id.* ¶¶ 13, 14 (emphasis added). Avelo also asserts that Miller entered into a contract with Lamar Advertising Corporation "to lease three billboards," which appeared as follows:



*Id.* ¶ 13. Avelo describes these as the "Infringing Billboards." *Id.*

In response to the avelNO! campaign, Avelo sent Miller and Lamar Advertising Company separate cease-and-desist letters. *Id.* ¶¶ 16, 17. Avelo's cease-and-desist letter to Miller demanded that he take down all AVELO marks, logos, designs, and trade dress on his websites. *Id.* ¶ 16. Avelo also sent Lamar, the company leasing Miller the billboards, a cease-and-desist letter threatening liability if Lamar let Miller run the above billboard. *Id.* ¶ 17.

After receiving Avelo's demand letter, Lamar took down Miller's preferred billboard design. *Id.* ¶ 18. Miller then put up new designs, pictured below:

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS



*Id.* ¶ 21. Avelo "do[es] not object" to these billboards' display, conceding that these billboards do not "seek to confuse consumers by falsely suggesting a connection with Avelo." *Id.* According to Avelo, this new design proves Miller "could have gotten [his] *message out*" without using Avelo's marks. *Id.* (emphasis added).

## B.    Procedural Background

Given Avelo's threats, Miller filed a declaratory-judgment action in this Court on May 16, 2025. ECF No. 1. Miller's amended complaint seeks a declaratory judgment in his favor on three counts that Avelo threatened in its letter to him: copyright infringement, trademark infringement, and dilution. *See* ECF No. 21 at 12. Despite Avelo's initial threats to sue Miller for copyright infringement and dilution, Avelo later covenanted not to sue Miller for those claims. *See* ECF No. 36. Avelo answered Miller's First Amended Complaint and asserted counterclaims accusing Miller of trademark infringement and cybersquatting. *See* ECF No. 37 at 18–20.

Shortly after filing its counterclaims, Avelo moved this Court for a temporary restraining order and a preliminary injunction that would have effectively denied Miller's right to free speech by limiting the manner in which he may criticize Avelo and by forcing him to shutter <avelno.com>. *See* ECF Nos. 16, 17. This Court denied both motions in their entirety. *See* ECF No. 62. This Court held that Avelo had not shown a likelihood of success on the merits of its trademark-infringement claim because Miller offered neither a "good" nor a "service" under the Lanham Act. *See id.* at 6. Indeed, this Court observed that Avelo did not argue that Miller is offering a "good" for "obvious reasons," and it found Avelo's argument that Miller is offering a

1  "service" via the avelNO! campaign to be "unpersuasive." *Id.* at 6. This Court also

2  rejected Avelo's cybersquatting claim because Avelo "fail[ed] to demonstrate [] that

3  the purpose behind creating the <avelno.com> website was to profit off Avelo or to

4  divert business from Avelo to the plaintiffs." *Id.* at 7–8. Ultimately, this Court found

5  that there were not even "serious questions going to the merits" of Avelo's claims. *Id.*

6  at 9.

7          Avelo timely appealed this Court's denial of its motion for a preliminary

8  injunction. ECF No. 63. Its appeal does not deprive this Court of jurisdiction to decide

9  this motion. *See California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018) ("We have

10  repeatedly admonished district courts not to delay trial preparation to await an

11  interim ruling on a preliminary injunction."); *Sycuan Band of Mission Indians v.

12  Roache*, 788 F. Supp. 1498, 1511 (S.D. Cal. 1992) (explaining that it is "well-

13  recognized" that district court proceedings continue apace while an interlocutory

14  appeal of a preliminary injunction order is pending).

15  **II.  LEGAL STANDARD**

16          "A motion for judgment on the pleadings is evaluated according to virtually the

17  same legal standard as a motion to dismiss pursuant to Rule 12(b)(6), in that the

18  pleadings are construed in the light most favorable to the non-moving party." *Lopez

19  Reyes v. Kenosian & Miele, LLP*, 525 F. Supp. 2d 1158, 1160 (N.D. Cal. 2007).

20  "Judgment on the pleadings is proper when the moving party clearly establishes on

21  the face of the pleadings that no material issue of fact remains to be resolved and that

22  it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard

23  Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). As with a motion to dismiss for

24  failure to state a claim, this Court generally considers only the pleadings, documents

25  that are referenced or incorporated in the pleadings, and matters of which the court

26  may take judicial notice. *See id.*; *Brooks v. City of Cleveland*, No. 1:24-cv-1590, 2025

27  WL 2398774, at *8 (N.D. Ohio Aug. 19, 2025).

28

## III.    ARGUMENT

Avelo's counterclaims fail as a matter of law. Each of its claims requires conduct that is commercial in nature—its trademark infringement action requires that avelNO! use Avelo's mark "in connection with" the sale or advertisement of "goods or services," 15 U.S.C. § 1114(1)(a), and its cybersquatting claim requires that Miller have a "bad-faith intent to profit from Avelo's mark." 15 U.S.C. § 1125(d). Avelo plausibly alleges neither. At most, Avelo's counter-complaint describes a public-interest campaign criticizing Avelo's decision to facilitate the Trump administration's deportation flights. Such advocacy is protected speech, not commercial conduct, and it thus gives rise to neither a trademark infringement nor a cybersquatting claim.

### A.    Avelo's Trademark Infringement Claim Fails On The Pleadings Because The avelNO! Campaign Offers Neither a "Good" nor a "Service."

The avelNO! campaign offers one thing, and one thing only: public criticism of Avelo's decision to operate the Trump administration's deportation flights. That is all that is pleaded in Avelo's counter-complaint, and that is all Avelo could non-frivolously plead. Thus, Miller offers neither a "good" nor a "service" under the Lanham Act. Accordingly, this Court should grant judgment on the pleadings for Miller on Avelo's trademark infringement claims and deny Avelo leave to amend if it seeks leave to amend.

#### 1.    Avelo's complaint does not allege avelNO! offers a good or a service.

As Miller previously explained, and as this court is aware from its opinion denying Avelo's motions for preliminary relief, trademark "[i]nfringement claims are subject to a commercial use requirement." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005). Specifically, the Lanham Act prohibits individuals from using another's mark to sell, offer to sell, distribute, or advertise "goods or services."

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS

1 15 U.S.C. § 1114(1)(a). Accordingly, the statute "does not prohibit all unauthorized
2 uses of a trademark." *Bosley Med. Inst*, 403 F.3d at 679. Rather, "[t]he Supreme Court
3 has made it clear that trademark-infringement law prevents only unauthorized uses
4 of a trademark in connection with a commercial transaction in which the trademark
5 is being used to confuse potential consumers." *Id.* at 676.

6     The Lanham Act is designed to target commercial speech, and only commercial
7 speech, because commercial speech is subject to lesser First Amendment protection
8 than non-commercial speech. *See Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316,
9 322 (4th Cir. 2015) ("The risk of impinging on protected speech is much greater when
10 trademarks serve not to identify goods but rather to obstruct the conveyance of ideas,
11 criticism, comparison, and social commentary."); *FedEx Ground Package Sys., Inc. v.*
12 *Route Consultant, Inc.*, 661 F. Supp. 3d 765, 778 (M.D. Tenn. 2023) (explaining that
13 the Lanham Act imposes its commercial speech regulation "to avoid running afoul" of
14 the First Amendment), *aff'd*, 97 F.4th 444 (6th Cir. 2024); *Cornette v. Graver*, 473 F.
15 Supp. 3d 437, 459 (W.D. Pa. 2020) ("Courts construe the Lanham Act narrowly to
16 avoid conflicts with the First Amendment. In order to avoid this conflict, the Lanham
17 Act regulates only commercial speech, which receives lesser protection under the
18 First Amendment than more traditional means of expression." (citations omitted)).

19     Thus, it is well-established law that "to state a claim for trademark
20 infringement under the Lanham Act, the plaintiff must show that . . . the defendant
21 used the mark 'in connection with' goods or services." *LegalForce RAPC Worldwide,*
22 *PC v. LegalForce, Inc.*, 124 F.4th 1122, 1125 (9th Cir. 2024) (citing 15 U.S.C. §§
23 1114(1)(a), 1125(a)). Under the Lanham Act, a "good" is "a movable or tangible thing"
24 and a "service" is the "performance of labor for the benefit of another." *LegalForce*
25 *RAPC Worldwide, PC*, 124 F.4th at 1126.

26     This Court should enter judgment for Miller because Avelo's pleading does not
27 allege that Miller offers a "good" or a "service"; instead, Avelo's pleading

28

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS

1    acknowledges that avelNO! is a public service campaign aimed at a matter of public

2    concern. Avelo admits it entered into a contract with the Trump administration to

3    help deport people, ECF No. 37 at ¶ 11, and that Miller "says he wants to make sure

4    passengers know that Avelo is using its planes to deport people and that he wants to

5    pressure Avelo to reconsider its decision," *id.* ¶ 12. Thus, according to Avelo,

6    avelNO!'s *raison d'être* is to comment on a matter "of public concern," which "is at the

7    heart of the First Amendment's protection." *See Snyder v. Phelps*, 562 U.S. 443, 451–

8    52 (2011) (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749,

9    758–59 (1985)).

10        Avelo pleads Miller has taken "several steps" to run the avelNO! public service

11   campaign, ECF No. 37 at ¶ 12, and they do not amount to him offering a "good" or a

12   "service" under the Lanham Act:

13        *First*, Avelo alleges that Miller is using imagery containing Avelo's marks on

14   its billboards, <avelno.com>, and <avgeekaction.com>. *Id.* ¶¶ 13, 15. Avelo asserts

15   that the billboards feature images, typeface, and color schemes that are confusingly

16   similar to Avelo's protected intellectual property. Avelo also complains that the

17   billboard directing viewers to <avelno.com>, which in turn has a link to

18   <avgeekaction.com>, both of which feature the same imagery as the billboard. *Id.*

19        Avelo's complaints, even taken as true, are of the type that courts have

20   repeatedly rejected in similar contexts because Avelo asserts only that the avelNO!

21   campaign uses Avelo marks, not that the avelNO! campaign is using Avelo marks in

22   connection with "goods" or "services." *See* ECF No. 62 at 6 (this Court finding Avelo's

23   argument that Miller's billboards violate the Lanham Act "unpersuasive" because

24   hoisting a billboard is neither a "good" nor a "service"). In *Bosley Medical Institute v.*

25   *Kremer*, a company named Bosley alleged that an individual's campaign criticizing

26   Bosley hair therapy infringed Bosley's trademarks. 403 F.3d 672 (9th Cir. 2005). After

27   acknowledging that the individual's campaign used Bosley's marks, the Ninth Circuit

28

1    still rejected Bosley's trademark-infringement claim because the individual "is not

2    Bosley's competitor; he is their critic. His use of the Bosley mark is not in connection

3    with a sale of goods or services—it is in connection with the expression of his opinion

4    about Bosley's goods and services." *Id.* at 679. The fact that the critic offered no goods

5    or services meant that "[t]he dangers that the Lanham Act was designed to address

6    are simply not at issue in this case. . . . Bosley cannot use the Lanham Act either as

7    a shield from [the] criticism, or as a sword to shut him up." *Id.* at 679–80.

8        Similarly, in *Aviva USA Corp. v. Vazirani*, the court rejected Aviva USA

9    Corp.'s efforts to sue a critic for trademark infringement because, once again, the

10   critic's "Aviva Uncovered" campaign offered no goods or services. 902 F. Supp. 2d

11   1246, 1263 (D. Ariz. 2012), *aff'd* 632 Fed. Appx. 885 (9th Cir. 2015). Even though the

12   critical campaign used Aviva's marks, the court rejected Aviva's claim because a

13   "trademark holder [] cannot seek the protections of the Lanham Act to stop such

14   critical use when it does not occur in connection with the sale of goods or services."

15   *Id.* at 1256. Courts outside this circuit echo the Lanham Act's requirement that a

16   trademark infringement defendant's use of the plaintiff's mark be "in connection

17   with" the defendant's offer of "goods" or "services." *See, e.g., Utah Lighthouse Ministry

18   v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1053 (10th Cir. 2008) (plaintiff

19   could not try its trademark infringement claim because the "offending websites

20   offered critical commentary about the trademark owner, and the use of the trademark

21   was separated from any goods or services offered for sale" by defendant); *Lamparello

22   v. Falwell*, 420 F.3d 309, 315 (4th Cir. 2005) (explaining that Reverend Jerry Falwell's

23   trademark infringement claim against Lamparello fails because "Lamparello clearly

24   created his website intending only to provide a forum to criticize ideas, not to steal

25   customers"); *Ford Motor Co. v. 2600 Enterprises*, 177 F. Supp. 2d 661, (E.D. Mich.

26   2001) (plaintiff suing defendant for making a "fuckgeneralmotors.com" website that

27   redirected to Ford's website is not likely to succeed on its trademark infringement

28

claim because plaintiff "made no allegation that Defendant has used the Ford mark in connection with goods and services.").

*Second*, Avelo complains about the avelNO! campaign accepting donations on the <avelno.com> and <avgeekaction.com> websites. *Id.* ¶¶ 14–15. Avelo asserts that Miller is "using the <avelno.com> website *to identify their AVELNO! campaign* and to solicit funds from visitors to the page." *Id.* ¶ 14 (emphasis added). Avelo highlights language that Miller uses to entice people to donate to the campaign: "Your support will enable us to extend and expand that messaging;" "The most important thing you can do is not fly Avelo. And if you're able, *we'd appreciate your support for the avelNO! campaign;*" and "If you'd like to donate more than $999 *this link can help* with that." *Id.* (emphasis in Avelo's pleading).

The avelNO! campaign soliciting donations to "extend and expand" its messaging does not bring the avelNO! campaign within the scope of the Lanham Act. *See* ECF No. 62 at 6 (explaining that avelNO! soliciting donations does not mean Miller is providing a "good" or "service," and recognizing that "Avelo's own counterclaim even recognizes that the website is a campaign"). Again, a "good" requires selling a "movable or tangible thing" and a service requires the "performance of labor for the benefit of another." *LegalForce RAPC Worldwide, PC*, 124 F.4th at 1126. As this Court recognized when it denied Avelo's motions for preliminary relief, "Avelo's own counterclaim even recognizes that the website is a campaign, identifying it as the 'AVELNO! campaign' that invites people to donate to the campaign if they would like." ECF No. 62 at 6 (citing ECF No. 37 at ¶ 14). When someone donates money to avelNO!, they are not buying something or purchasing Miller's labor.

Indeed, in *LegalForce*, the Ninth Circuit considered whether a company's use of a protected mark "to advertise and sell equity" satisfied the Lanham Act's commercial speech requirement. 124 F.4th at 1125. The Ninth Circuit answered in the negative, reasoning that equity is not a "movable or tangible thing" and

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS

"trademark infringement can[not] occur from fundraising activities where there has been no sale of a good or a service." *Id.* If the Ninth Circuit held that a for-profit company does not provide a "service" by raising equity, Miller is surely not providing a service by fundraising to "extend and expand" the avelNO! campaign's messaging, as Avelo pleaded.

The Fourth Circuit's decision and reasoning in *The Radiance Foundation, Inc. v. National Association for the Advancement of Colored People*, 786 F.3d 316 (4th Cir. 2015), is also instructive. In *Radiance Foundation*, the NAACP sued a Christian conservative organization "focused on educating and influencing the public" after that organization ran an article criticizing the NAACP. *Id.* at 320. Adjacent to the article on the Christian organization's website "was an orange button with 'CLICK HERE TO GIVE ONE-TIME GIFT TO THE RADIANCE FOUNDATION' printed around the word 'DONATE.'" *Id.* The district court entered judgment in the NAACP's favor, but the Fourth Circuit reversed. The Fourth Circuit reasoned "that charitable appeals for funds . . . involve a variety of speech interests . . . that are within the protection of the First Amendment." *Id.* at 326 (quoting *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980)). The Fourth Circuit reasoned that fundraising may satisfy the Lanham Act's commercial speech requirement if "the protected mark seems to denote the recipient of the donation," *id.* at 327, which is exactly the type of trickery and confusion the Lanham Act guards against. But Avelo's pleading cannot be read to suggest that anyone donating to the avelNO! campaign thinks they are donating to a private airline company; Avelo pleads avelNO! is soliciting funds to "extend and expand" its messaging to boycott Avelo and Avelo's pleading emphasizes text adjacent to avelNO!'s donate links that is highly critical of Avelo. ECF No. 37 at ¶ 14.

Finally, it is worth considering Avelo's contradictory positions with respect to the AvGeek Action Alliance. On the one hand, Avelo complains that the AvGeek

website has a picture of the "Infringing Billboards" and that the website permits donations. *Id.* ¶ 15. On the other hand, Avelo concedes that avelNO!'s new billboards, which feature "Paid for by AvGeek Action Alliance," do *not* violate the Lanham Act (even though the AvGeek website is unchanged). *Id.* ¶ 21. Per Avelo, these new billboards "prove that Plaintiffs could have *gotten their message out* without infringing Avelo's trademarks." *Id.* (emphasis added). Ultimately, Avelo's concession shows that it is focused on how the avelNO! campaign expresses its message. That is not what the Lanham Act is for. It goes without saying that "a trademark holder will almost never consent to the use of its mark in conjunction with commentary that is critical of the trademark holder." *Aviva USA Corp.*, 902 F. Supp. 2d at 1256. What matters is whether such use occurs "in connection with" the advertising or sale of "goods" or "services." 15 U.S.C. § 1114(1)(a). Avelo has not pleaded Miller is offering such a "good" or "service" in connection with his alleged use of Avelo's marks, so this Court should enter judgment for Miller on Avelo's trademark infringement claim.

## 2.    Avelo is barred from amending its pleading, and any amendment would be futile anyway.

As just explained, this Court should grant Miller's motion for judgment on the pleadings because Avelo has not pleaded an essential element of its trademark infringement claim. After granting a motion for judgment on the pleadings, this Court has discretion whether to grant Avelo leave to amend. *Crosby v. Wells Fargo Bank, N.A.*, 42 F. Supp. 3d 1343, 1346 (C.D. Cal. 2014). This Court should deny Avelo that opportunity for two separate reasons.

First, the deadline to amend pleadings has passed, and Avelo cannot satisfy the "good cause" standard articulated in Federal Rule of Civil Procedure Rule 16(b). *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992) (explaining that a party must satisfy Rule 16(b) if it wishes to amend its pleading after the scheduling order's deadline to do so has passed). Second, even if Rule 16(b)

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS

did not apply, Avelo's amendment would be futile because it could not add any legally relevant allegations that would transform Avelo's pleading into one that states a claim under the Lanham Act. *See Allstate Northbrook Indem. Co. v. Tran,* No. 2:24-cv-00560-TLN-JDP, 2025 WL 2610048, at *3 (E.D. Cal. Sept. 10, 2025) (granting motion for judgment on the pleadings and denying leave to amend because Defendants could not state a claim even if given leave to amend).

When Avelo moved for a temporary restraining order and a preliminary injunction, it stuck to the theory spelled out in its pleading: Miller, via the avelNO! campaign, infringed Avelo trademarks by hoisting billboards and hosting a website. *See* ECF Nos. 16, 17. But Avelo, perhaps realizing its theory of the case is insufficient (as the Court confirmed when it found that Avelo's motions for preliminary relief did not raise a "serious question" on the merits, ECF No. 62 at 9), shifted its tune in its reply brief. There, Avelo attempted to introduce evidence that Miller works as a journalist and consultant in the airline industry; Proton operates a commercial airline industry news site, PAXEX.AERO, that published an article containing a hyperlink leading to <avelno.com>; Proton is not a 501(c)(3) and so donations to it are not tax-deductible; Proton operates the "Wandering Aramean" website, which includes third-party advertisements and pay-per-click links; and that Seth Miller has a social media account with a username "@wandrme.paxex.aero." According to Avelo, these ventures are somehow "interconnected" with avelNO! and AvGeek Action Alliance. *Id.* at 2.

Because the scheduling order's deadline to amend the pleadings has long passed, Avelo has forfeited its opportunity to amend its complaint to add these allegations and may amend its pleadings only if it has "good cause" to do so under Rule 16(b). *See* Fed. R. Civ. P. 16(b)(4); *Johnson*, 975 F.2d at 608 (holding that because pretrial scheduling order's deadline to amend pleadings passed, plaintiff must satisfy Rule 16(b)'s standard to amend pleading). Avelo cannot meet the "good cause"

standard because it has not been diligent in amending its complaint. *See id.* ("If [the non-moving] party was not diligent, the inquiry should end."); *Cave v. O'Brinkley*, No. 2:20-cv-413, 2020 WL 9209713, at *1 (D. Nev. Dec. 17, 2020) (same, quoting *Johnson*); *Lennear v. Diamond Pet Food Processors of California, LLC*, 147 F. Supp. 3d 1037, 1044 (E.D. Cal. 2015) ("If the moving party was not diligent then good cause cannot be shown and the inquiry should end"). Avelo submitted its reply brief on August 6, 2025, almost two and a half months before the scheduling order's deadline to amend pleadings, and it has not moved to amend its pleading, even after this Court's opinion denying its motions. It has forfeited any ability to bring these allegations into this case. *See World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 690 (9th Cir. 2010) (holding that the district court properly denied plaintiff leave to amend pleading to add a theory plaintiff previously raised in a preliminary injunction brief); *Agricola Baja Best, S. De. R.L. de C.V. v. Harris Moran Seed Co.*, No. 11-cv-2482-IEG JMA, 2013 WL 4499118, at *2 (S.D. Cal. Aug. 20, 2013) (denying leave to amend because "Plaintiff knew, or should have known, of the facts underlying the proposed amendments well before the scheduling order deadline to amend"); *Robinson v. Twin Falls Highway Dist.*, 233 F.R.D. 670, 673 (D. Idaho 2006) ("Knowing of the facts forming the basis for the proposed amendment prior to the deadline for amending precludes a finding of due diligence."); *Synopsys, Inc. v. Ricoh Co.*, No. 03-cv-2289 MJJ, 2005 WL 3370010, at *3 (N.D. Cal. Dec. 12, 2005) ("Defendants have not submitted any explanation as to why they did not include these revisions prior to the scheduling order deadline. The facts that form the basis for Defendants' proposed changes were known to Defendants prior to the deadline.").

But even if this Court were inclined to consider whether Avelo may amend its counterclaims to state a claim, which it should not, this Court should still grant Miller's motion without permitting Avelo to amend its complaint because any amendment would be futile. *See Allstate Northbrook Indem. Co. v. Tran,* No. 2:24-cv-

1    00560-TLN-JDP, 2025 WL 2610048, at *3 (E.D. Cal. Sept. 10, 2025) (granting motion

2    for judgment on the pleadings and denying leave to amend because Defendants could

3    not state a claim even if given leave to amend); *Crosby*, 42 F. Supp. 3d at 1346 (same);

4    *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072,

5    1117 (N.D. Cal. 2007) (same). This Court determines whether an amendment would

6    be futile under the familiar 12(b)(6) standard. *See Robillard v. Opal Labs, Inc.*, 337

7    F. Supp. 3d 962, 969 (D. Or. 2018) ("In determining whether an amendment is futile,

8    "[t]he standard to be applied is identical to that on a motion to dismiss for failure to

9    state a claim under Rule 12(b)(6)."); *Mendia v. Garcia*, 165 F. Supp. 3d 861, 875 (N.D.

10   Cal. 2016) (same).

11        Avelo's allegations raised in its preliminary-injunction reply would not, if

12   pleaded, state a claim for infringement because they do not plausibly link Miller or

13   Proton's alleged use of Avelo's marks with any commercial transaction. The

14   commercial-speech element requires "a sufficient nexus between the unauthorized

15   use of the protected mark and clear transactional activity." *Radiance Foundation,*

16   *Inc.*, 786 F.3d at 327. That is so because "trademark infringement law prevents only

17   unauthorized uses of a trademark in connection with a commercial transaction in

18   which the trademark is being used to confuse potential customers." *Bosley*, 403 F.3d

19   at 676–77 (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924)). Among all the

20   exhibits that Avelo tried injecting into the record in its reply brief, there is only one

21   time where Miller posts any avelNO! imagery, and that is on Seth Miller's *personal*

22   BlueSky account. *See* ECF Nos. 48-2–11. Thus, Avelo's allegation that Miller's

23   ventures, including avelNO!, "are all part of the same interconnected commercial

24   enterprise" does not state a trademark claim because it fails to link Miller's separate,

25   independent commercial ventures to avelNO!'s use of Avelo imagery.

26        Two cases illustrate why Avelo pointing to Miller and Proton's separate

27   ventures is too attenuated to state a trademark infringement claim. In *Aviva USA*

28

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS

1  *Corp. v. Vazirani*, discussed above, Aviva USA Corp., a life insurance company, sued

2  the company's critic who competed with Aviva in the market for life-insurance

3  policies. *Aviva USA Corp. v. Vazirani*, 902 F. Supp. 2d 1246, 1250 (D. Ariz. 2012),

4  *aff'd*, 632 Fed. App'x 885 (9th Cir. 2015). The critic created a gripe website, "Aviva

5  Uncovered," to shed light on "the sad truth about Aviva's business practices." *Id.* at

6  1252. That website also touted the critic as "one of the most successful financial

7  advisers in America." *Id.* at 1260. Aviva argued that its trademark claim satisfied the

8  commercial-speech requirement because the critic's touting of his credentials as an

9  insurance advisor meant that the website functioned as a promotion for the critic's

10  competing services. *Id.* The court rejected this argument, describing the connection

11  as too "attenuated" to satisfy the commercial speech requirement and holding that

12  the website ultimately "had a noncommercial purpose—that is, criticizing Aviva's

13  business practices." *Id.* at 1262. The Ninth Circuit affirmed. 632 Fed. App'x 885.

14  Much like the insurance critic's separate business venture could not transform his

15  noncommercial site into something that satisfied the commercial-speech

16  requirement, Miller's separate business ventures cannot turn avelNO! into a

17  commercial activity. Indeed, the connection between Miller's commercial and non-

18  commercial activity is even more attenuated here than there—Miller, unlike Aviva's

19  critic, never attempted to advertise his commercial ventures on his non-commercial

20  site.

21  Similarly, in *Radiance Foundation v. NAACP*, also discussed above, the

22  NAACP accused a foundation that solicited funds on its website of infringing NAACP

23  marks after the organization ran an article critical of the NAACP. 786 F.3d 316 (4th

24  Cir. 2015). Observing that the foundation's donate button was "off to the side and did

25  not itself use the NAACP's marks in any way," the Fourth Circuit rejected an

26  infringement claim and noted that "[a] visitor likely would not perceive the use of the

27  NAACP's marks in the article as being in connection with those transactional

28

1    components of the website." *Radiance Foundation*, 786 F.3d at 326. If a critical

2    foundation's donate button *on the same website* as its use of the NAACP's marks

3    cannot satisfy the commercial speech requirement, Avelo's theory that Miller and

4    Proton's separate business ventures are somehow "interconnected" with the avelNO!

5    campaign's use of the marks cannot meet this requirement either. Any amendment

6    would be futile for the simple reason that avelNO! is an independent, critical

7    campaign that does not infringe Avelo's marks as a matter of law. *See* ECF No. 62 at

8    9 (this Court finding that there are no "serious questions" going to the merits of

9    Avelo's trademark infringement claim).

10   **B.    Avelo's Cybersquatting Claims Fails Because Avelo Did Not**

11   **and Cannot Allege That Miller Is Profiting from Avelo's Mark.**

12   Avelo has also failed to state a cybersquatting claim because it has not

13   plausibly pleaded that Miller had the intent to profit from Avelo's mark. The

14   Anticybersquatting Consumer Protection Act creates a cause of action against those

15   who use a domain name that is "identical or confusingly similar to [the plaintiff's]

16   mark" and have "a bad faith intent to profit *from that mark*." 15 U.S.C. § 1125(d)(1)(A)

17   (emphasis added). Miller does not contest, for purposes of this motion only—in which

18   Avelo's pleaded facts are taken as true—that Avelo sufficiently pleaded that

19   <avelno.com> is confusingly similar to the Avelo mark. But, as this Court previously

20   recognized, the law requires more, and Avelo's claim fails as a matter of law. *See* ECF

21   No. 62 at 7–8 (this Court explaining that Avelo has no likelihood of prevailing on its

22   cybersquatting claim).

23   In particular, Avelo cannot plausibly plead that Miller intended to profit *from*

24   *Avelo's mark*. The ACPA is a specific-intent statute. To be liable as a cybersquatter,

25   "the defendant must intend to profit specifically from the goodwill associated with

26   another's trademark." *Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1109

27   (C.D. Cal. 2009); *see also Blair v. Automobili Lamborghini SpA*, 754 F. Supp. 3d 849,

28

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS

856 (D. Ariz. 2024) ("The crucial elements of bad faith intent to profit . . . are distilled to mean an 'intent to trade on the goodwill of another's mark.'") (quoting *Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 810 (6th Cir. 2004)).

Two cases illustrate the ACPA's requirement that liability attaches only if Avelo intends to profit specifically from Avelo's mark. In *MGM Resorts Int'l v. Unknown Registrant of www.imgmcasino.com*, someone set up a website domain name that included MGM Casino's mark, used the MGM mark on the website, and offered paid-for casino services on the website. No. 2:14-CV-1613-GMN-VCF, 2015 WL 5674374, at *1 (D. Nev. July 8, 2015). That registrant was very clearly trying to pass their site off as MGM's own and profit from it, thus the registrant was found to have been illegally cybersquatting in violation of the ACPA. *Id.* at *10–12. By contrast, in *Lamparello v. Falwell*, the website operator lacked the requisite intent to profit from the plaintiff's mark. 420 F.3d 309, 318–322 (4th Cir. 2005). There, a critic of Reverend Jerry Falwell set up a website, <fallwell.com>, to criticize Fallwell's views, and the Fourth Circuit found that "Lamparello clearly employed www.fallwell.com simply to criticize Reverend Falwell's views," which "counsels against finding a bad faith intent to profit in such circumstances because 'use of a domain name for purposes of . . . comment, [and] criticism,' constitutes a 'bona fide noncommercial or fair use' under the statute." *Id.* at 320 (quoting H.R. Rep. No. 106–412, 1999 WL 970519, at *11).

As this Court's prior opinion illustrates, Avelo's own pleading shows that <avelno.com> closely resembles the gripe site in *Lamparello*, and not the duplicitous website in *MGM Resorts*. Unlike the website in *MGM Resorts*, where the fraudster used MGM Casino's mark on its website, Avelo admits that Miller is "using the <avelno.com> website to identify their AVELNO! campaign." ECF No. 37 ¶ 14. And, again, unlike *MGM Resorts*, where the cybersquatter offered casino services on the faux-MGM website, Avelo concedes that the <avelno.com> website is not being used

1  to sell airline tickets but is instead being used to raise awareness about the avelNO!

2  campaign and to raise funds to "extend and expand" avelNO!'s messaging. *Id.*

3  (explaining that the <avelno.com> website informs visitors that "[t]he most important

4  thing you can do is not fly Avelo"). Avelo's pleading does not in any way suggest that

5  the avelNO! solicitations are efforts to "profit" from Avelo's mark, and its inability to

6  so plead is fatal to its cybersquatting case. *See also TMI, Inc. v. Maxwell*, 368 F.3d

7  433 (5th Cir. 2004) (critic who made <trendmakerhome.com> website to criticize

8  TrendMaker Homes is not liable for cybersquatting because the site existed "to inform

9  potential customers about a negative experience," and not to generate a profit); *Lucas*

10  *Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 810 (6th Cir. 2004) (aggrieved

11  customer who used the <lucasnursery.com> domain name to criticize Lucas Nursery

12  is not a cybersquatter because the critic used the website "in the spirit of informing

13  fellow consumers about the practices of a landscaping company that she believed had

14  performed inferior work on her yard," not to turn a profit).

15      Thus, Avelo's pleading does not state a cybersquatting claim. Although the

16  statute lays out nine factors that may be helpful for evaluating whether the defendant

17  has a culpable intent under the statute, *see* 15 U.S.C. § 1125(d)(1)(B), "[t]he most

18  important grounds for [a finding of bad faith intent] are the unique circumstances of

19  th[e] case, which do not fit neatly into the specific factors enumerated by Congress

20  but may nevertheless be considered under the statute." *Sporty's Farm, L.L.C. v.*

21  *Sportman's Mkt., Inc.*, 202 F.3d 489, 499 (2d Cir. 2000); *see also Lucas Nursery*, 359

22  F.3d at 811 ("The factors are given to courts as a guide, not as a substitute for careful

23  thinking about whether the conduct at issue is motivated by a bad faith intent to

24  profit"). Avelo's counter-complaint unambiguously shows that <avelno.com> is a

25  website aimed at identifying the avelNO! campaign, raising awareness of it, and

26  soliciting funds to expand its messaging, not an effort to profit from Avelo's mark.

27

28

1    Thus, the Court should dismiss Avelo's cybersquatting claim and deny it leave to

2    amend.

### CONCLUSION

4          For the above reasons, Plaintiffs Seth Miller and Proton Associates LLC

5    respectfully request that this Court enters judgment for Plaintiffs on Avelo's

6    trademark infringement and cybersquatting claims.

7          DATED this 13th day of November, 2025.

8                              **BRAVO SCHRAGER LLP**

9

10                             By: */s/ Jason Harrow*
                                   Bradley S. Schrager, Esq. (SBN 10217)
11                                 Daniel Bravo, Esq. (SBN 13078)
                                   6675 South Tenaya Way, Suite 200
12                                 Las Vegas, Nevada 89113
                                   Tele.: (702) 996-1724
13                                 bradley@bravoschrager.com
                                   daniel@bravoschrager.com
14
                                   Charles Gerstein, Esq.
15                                 (*Admitted pro hac vice*)
                                   Jeremy Shur, Esq.
16                                 (*Admitted pro hac vice*)
                                   GERSTEIN HARROW LLP
17                                 1629 Columbia Rd NW, Suite 302
                                   Washington, DC 20009
18                                 Tele.: (202) 670-4809
19                                 charlie@gerstein-harrow.com

20                                 Jason Harrow, Esq.
21                                 (*Admitted pro hac vice*)
                                   GERSTEIN HARROW LLP
22                                 12100 Wilshire Blvd. Suite 800
                                   Los Angeles, CA 90025
23                                 Tele.: (323) 744-5293
                                   jason@gerstein-harrow.com
24
25                                 *Attorneys for Plaintiffs*

26

27

28
                                        20
                    MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
                              JUDGMENT ON THE PLEADINGS

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 13th day of November, 2025, a true and correct copy **PLAINTIFFS AND COUNTERCLAIM-DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** was served via the United States District Court CM/ECF system on all parties or persons requiring notice.


By:    */s/ Jason Harrow*
          _____

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
JUDGMENT ON THE PLEADINGS