Charles Gerstein
(*pro hac vice*)
Jeremy Shur
(*pro hac vice*)
GERSTEIN HARROW LLP
1629 Columbia Rd NW, Suite 302
Washington, DC 20008
charlie@gerstein-harrow.com
jeremy@gerstein-harrow.com
(202) 670-4809

Jason Harrow
(*pro hac vice*)
GERSTEIN HARROW LLP
12100 Wilshire Blvd. Suite 800
Los Angeles, CA 90025
jason@gerstein-harrow.com
(323) 744-5293

Bradley S. Schrager, Esq. (SBN 10217)
Daniel Bravo, Esq. (SBN 13078)
BRAVO SCHRAGER LLP
6675 South Tenaya Way, Suite 200
Las Vegas, Nevada 89113
Tele.: (702) 996-1724
Email: bradley@bravoschrager.com
Email: daniel@bravoschrager.com

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEVADA

PROTON ASSOCIATES LLC, and
SETH MILLER,

          Plaintiffs,

    vs.

AVELO, INC.,

          Defendant.

Case No.: 2:25-cv-00856-CDS-BNW

**PLAINTIFFS' AND COUNTERCLAIM-DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................... i

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT.................................................................................................... 1

I.     THIS COURT MAY CONSIDER THE REASONING IN ITS PRIOR
       OPINION............................................................................................... 1

II.    AVELO'S TRADEMARK INFRINGEMENT CLAIM FAILS ON THE
       PLEADINGS .......................................................................................... 2

III.   AVELO'S CYBERSQUATTING CLAIM FAILS ON THE PLEADINGS ............. 5

IV.    AMENDMENT WOULD BE FUTILE ..................................................... 8

CONCLUSION ............................................................................................... 9

1

## PRELIMINARY STATEMENT

As Plaintiffs previously explained, Declaratory Judgment Defendant and Counterclaim-Plaintiff Avelo, Inc. loses as a matter of law on the remaining claims for trademark infringement and cybersquatting. This Court has largely already so held as matter of law. Avelo's pleading alleges facts showing that Plaintiffs and Counterclaim-Defendants Seth Miller and Proton Associates LLC's (collectively, "Miller") are legitimate critics of Avelo's, and so Miller is entitled to judgment on the claims because Congress sensibly created a wide berth for free speech in both the Lanham Act and the Anticybersquatting Consumer Protection Act ("ACPA") that prohibit corporations from doing just what Avelo seeks to do here: use intellectual property laws to silence or quiet critics. *See* ECF No. 62 (denying preliminary injunction).

Avelo's opposition to Miller's motion for judgment on the pleadings fails to seriously grapple with its own pleaded facts or the wall of caselaw protecting the speech of similarly situated critics. And because it has weak arguments in opposition, Avelo also seeks to amend its counterclaims well past its deadline to do so. But this Court need not delay in granting judgment for Miller on Avelo's counterclaims because no amendment can change the fundamental truths of this dispute as pleaded: Miller is a legitimate critic, and so Avelo's trademark infringement claim fails because Avelo cannot plead that Miller is offering "goods and services," and its cybersquatting claim fails because Avelo cannot plead that Miller has a bad faith intent to profit. The motion should be granted and judgment entered for Miller.

## ARGUMENT

### I.    THIS COURT MAY CONSIDER THE REASONING IN ITS PRIOR OPINION.

At the threshold, rather than actually grapple with the Court's prior reasons for denying Avelo's request for a preliminary injunction, Avelo instead claims "it

would be improper to consider the [denial] Order," because, among other reasons, "the Order is not a document from which the court can take judicial notice." ECF No. 72 at 7–8. Unsurprisingly, Avelo provides no authority for the bizarre idea that a party may not cite, and a court may not consider, the *legal reasoning* in the court's prior opinion *in the very case at issue*. The court's prior order is a legal opinion that may be cited just like any other judicial opinion. And even if the Court's order were considered under evidentiary and not legal standards, "[i]t is well established that a court may take judicial notice of its own records." *United States v. Author Servs., Inc.*, 804 F.2d 1520, 1523 (9th Cir. 1986).

Avelo also states that it has refused to engage with the Court's preliminary injunction opinion because Avelo has appealed that conclusion, ECF No. 72 at 8, but that changes nothing about the merits of the Court's prior reasoning. Miller never argued that the prior order is *binding*—nor could it be, because interlocutory orders in federal court "may be revised at any time before the entry of a judgment" anyway. Fed. R. Civ. P. 54(b). Rather, Miller cited this Court's order because its conclusion that Avelo does not have a chance of success is compelled by binding precedent, and that same precedent supports this Court entering judgment for Miller because Avelo failed to state either of its claims as a matter of law. *See, e.g.*, ECF No. 66 at 16. That remains true regardless of whether Avelo has taken a meritless appeal from the denial of its request for preliminary relief.

## II. AVELO'S TRADEMARK INFRINGEMENT CLAIM FAILS ON THE PLEADINGS

As Miller previously explained, under the Lanham Act, a "good" is "a movable or tangible thing," and a "service" is the "performance of labor for the benefit of another." *LegalForce RAPC Worldwide, PC*, 124 F.4th 1125, 1126 (9th Cir. 2024). This Court should enter judgment for Miller on the pleadings because Avelo does not, and cannot, allege that Miller offers a "good" or a "service" under those definitions.

Indeed, the Court's prior opinion did not need to rely on any facts outside the pleadings to reach this outcome: as the Court stated, "Avelo's *own counterclaim* even recognizes that the website is a campaign [and not a good or service], identifying it as the 'AVELNO! campaign'" that invites people to donate to the campaign if they would like." ECF No. 62 at 6 (citing ECF No. 37 at 14–5) (emphasis added). Avelo thus loses as a matter of law on the basis of its own pleading.

Avelo does not even address this argument or the Court's conclusion in its opposition. It does not cite *LegalForce*, even though that case provides the relevant definitions of "goods" and "service." Instead, it reproduces several of its allegations in the counterclaims and then simply asserts without further citation that "[t]he alleged facts show that Plaintiffs were not simply acting as Avelo's critic" but instead, according to Avelo, "knowingly and intentionally misappropriated Avelo's trademark and trade dress in an attempt to make their public service campaign more 'effective' by using the goodwill Avelo established in its trademark and trade dress to impersonate Avelo in order to capture an audience." ECF No. 72 at 15. Those statements are unmoored from Avelo's own factual allegations and implausible on their face: Miller *is* "Avelo's critic" and is running, as Avelo's pleaded facts show, the "AVELNO! campaign." ECF No. 70-1 ¶ 14. But regardless, these facts are not responsive to the legal issue. The question is not whether Miller is seeking to "capture an audience," as Avelo states; it is whether Miller has violated the Lanham Act by misusing the marks in connection with Miller's provision of goods or services. As this Court correctly found, and as Avelo does not even address, the pleadings show that Miller is not doing so as a matter of law.

Because Avelo avoids the core issue of whether it has alleged that Miller is using Avelo's marks in connection with goods or services as a matter of law, Avelo fails to grapple with the on-point precedent that Miller and this Court have previously relied on. Both Miller and this Court have previously explained why *Bosley*

1    *Medical Institute v. Kremer*, 403 F.3d 672 (9th Cir. 2005), is dispositive because the

2    Ninth Circuit there expressly held that a critic's use of a corporate mark for a

3    criticism campaign like Miller's was "not in connection with a sale of goods or

4    services—it is in connection with the expression of his opinion about Bosley's goods

5    and services." *Id.* at 679. Avelo does not distinguish this case. Instead, Avelo quotes

6    the *Bosley* court's uncontroversial statement that "the Lanham Act does not require

7    any actual *sale* of goods and services" but then notably omits the upshot in the

8    opinion's very next sentence: "Thus, the appropriate inquiry is whether [the critic]

9    offers *competing* services to the public." *Id.* at 679. Under that "appropriate inquiry,"

10   it is clear from the pleadings that Avelo cannot succeed here. As the *Bosley* court held,

11   the use of a mark "in connection with the expression of [an] opinion about [a

12   company's] goods and services," *id.*, as here, is not itself a service contemplated by

13   the Lanham Act and as defined by *LegalForce*. The pleadings thus bar any claim.

14        Avelo's only argument to the contrary relies exclusively on *Committee for*

15   *Idaho's High Desert v. Yost*, 881 F. Supp. 1457, 1470–71 (D. Idaho 1995), *aff'd* 92 F.3d

16   814 (9th Cir. 1996), a dispute that is not like this one and so not helpful to Avelo.

17   Unlike *Bosley*, which involved a critic of a for-profit company, the Idaho case was a

18   dispute between two competing advocacy organizations that were using the exact

19   same name but took diametrically opposed positions on the use of Idaho's land and

20   resources. 92 F.3d at 817–18. The Ninth Circuit held that the later user, who

21   maliciously co-opted the original user's exact name to confuse the public about the

22   original user's ability to provide valuable advocacy services for its members, was

23   liable for trademark infringement. *Id.* at 826. Not only were both organizations

24   advocacy organizations, unlike *Bosley* and this case, *see* 92 F.3d at 817, but the result

25   there makes sense because, as *Bosley* held, the relevant question is whether the

26   alleged infringer "offers *competing* services to the public." 403 F.3d at 679. That test

27   was met in the Idaho case, but it cannot be met here as a matter of law, as the other

28

4

cases regarding corporate criticism have held and which Avelo fails to address. *See id.*; *see also* ECF No. 66 at 8–12 (citing additional corporate critic cases, none of which are addressed by Avelo). Avelo never explains why this case should be treated like one between two advocacy organizations, when, as Avelo's counterclaims make clear, Avelo provides transportation services and Miller is Avelo's critic.

Indeed, judgment on the pleadings is further justified because any interpretation of the Lanham Act that would allow Avelo to squelch what Avelo itself calls a "campaign" of speech, and not a marketplace competitor, would run afoul of the First Amendment. As Miller explained, courts have ensured that the Lanham Act reaches only competing, commercial speech because "[t]he risk of impinging on protected speech is much greater when trademarks serve not to identify goods but rather to obstruct the conveyance of ideas, criticism, comparison, and social commentary." *See Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 322 (4th Cir. 2015) (cited at ECF No. 66 at 7, and collecting cases). Avelo has literally nothing to say about this, and does not hint at how this Court could deny the motion and eventually find trademark infringement in a way that would be consistent with the First Amendment and the Lanham Act's restriction to commercial speech as a matter of law. It cannot. The motion should be granted on this claim.

## III. AVELO'S CYBERSQUATTING CLAIM FAILS ON THE PLEADINGS

As Miller also previously explained, the Anticybersquatting Consumer Protection Act ("ACPA") creates a cause of action against those who use a domain name that is "identical or confusingly similar to [the plaintiff's] mark" and have "a bad faith intent to profit *from that mark*." 15 U.S.C. § 1125(d)(1)(A) (emphasis added). Avelo errs by conflating these distinct requirements of the ACPA: to state a claim, it must plead that Miller's <avelno.com> domain name is "identical or confusingly similar" to Avelo's mark (which is uncontested for purposes of this motion) and, separately, it must plead that Miller has "a bad faith intent to profit from" Avelo's

mark. Avelo's claim fails on the second prong: it has failed to state a cybersquatting claim because it has not plausibly pleaded that Miller had the bad faith intent to profit from Avelo's mark.

Avelo's opposition on this claim again ignores the Court's prior reasoning, but the Court's opinion was correct and is dispositive. As is uncontested from the pleadings, and as this Court previously found, the <avelno.com> domain sells no good or services but merely asks for donations to support the critical campaign, and "the invitation to make a donation negates an intent to profit, an express requirement to violate the ACPA." ECF No. 62 at 8. Avelo spends pages arguing that "profit" under the ACPA need not be "monetary," but that is beside the point: as this Court found and as Miller explained, the key element missing from Avelo's pleadings is Miller's *bad faith intent* to profit, not the existence of any kind of benefit at all.

Avelo incorrectly asserts that it pleaded a bad faith intent to profit because it sufficiently pleaded that <avelno.com> is similar to Avelo's mark. ECF No. 72 at 8. Per Avelo, Miller "leverage[es] Internet users' familiarity with a trademark to divert them to [his] domain name and website," and that is the "advantageous gain or return" that Miller gets from <avelno.com>. *Id.* at 8–9. But Avelo's allegation that <avelno.com> leverages the public's familiarity with Avelo's mark only pleads that <avelno.com> is "confusingly similar" to Avelo's mark; that is not enough to support the inference that Miller had a bad faith intent to profit from Avelo's mark. Indeed, courts have found no cybersquatting in many instances where a critic registers a domain name similar to the object of their criticism. *See, e.g.*, *Lamparello v. Falwell*, 420 F.3d 309 (4th Cir. 2005) (critic who registered <fallwell.com> to criticize Reverend Jerry Falwell is not liable for cybersquatting because critic lacked bad faith intent to profit); *TMI, Inc. v. Maxwell*, 368 F.3d 433 (5th Cir. 2004) (critic who registered <trendmakerhome.com> to criticize TrendMakerHomes had no bad faith intent to profit); *Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806 (6th Cir.

2004) (critic who registered <lucasnursery.com> to complain about Lucas Nursery). Avelo again simply does not meaningfully grapple with his legal reality, but the law is clear: a similar domain name that diverts internet users to one's site does not suggest a bad faith intent to profit when used by a legitimate critic.

Avelo points the court to cases involving people who use established marks to generate bad faith pecuniary gains, *see* ECF No. 72 at 8–12, even though the Court expressly distinguished similar cases in its prior opinion. For instance, the Court previously found inapplicable *Super-Krete Int'l, Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1033 (C.D. Cal. 2010), in which a court found "bad faith where 'Defendants only interest in the domain name is to divert customers who may have been searching for Plaintiff's mark to their own commercial website.'" ECF No. 62 at 9. And yet Avelo nonetheless asks this Court to rely on identical reasoning from cases like *Digby Adler Grp. LLC v. Image Rent a Car, Inc.*, 79 F. Supp. 3d 1095 (N.D. Cal. 2015), which involved a defendant who "actively attempted to manipulate search engines . . . to generate business for themselves." *Id.* at 1104. *Coca-Cola Co. v. Purdy*, 382 F.3d 774 (8th Cir. 2004) (cited at ECF No. 72 at 8), is similarly inapt, because there the alleged infringer was using famous names as a bargaining chip to get an editorial printed in the Washington Post and to generate money for an anti-abortion website selling merchandise, not to criticize those companies. As this Court previously found, and as Avelo's allegations make clear, those cases are not like this case at all: Avelo's own pleaded facts reveal that Miller registered <avelno.com> to provide information and criticism of Avelo's conduct with respect to an issue of public concern, and not to trade on Avelo's name to extort Avelo or earn a bad faith profit from Avelo's goodwill. Avelo's counterclaim thus does not state an ACPA claim as a matter of law.

Finally on this point, Avelo goes through six of the nine listed statutory considerations even after admitting that the "most important grounds for finding bad faith are the unique circumstances of the case." *Interstellar Starship Servs. v. Epix*,

1    Inc., 304 F.3d 936, 946 (9th Cir. 2002). Although Avelo distorts the pleadings to make

2    it seem as if it has at least pleaded six of those nine factors, that is irrelevant anyway,

3    because the dispositive circumstance of the case is that the pleadings acknowledge

4    that Miller is a legitimate critic engaged in an information "campaign" regarding

5    Avelo's conduct. Miller did not register the domain and create a website merely to

6    profit in bad faith by trading on Avelo's existing marks. Avelo thus cannot succeed as

7    a matter of law.

8    **IV.    AMENDMENT WOULD BE FUTILE**

9         Finally, if this Court were inclined to grant the motion, Avelo asks that it be

10   given leave to amend. Putting aside that it missed the relevant deadline, as will be

11   explained in the forthcoming opposition to Avelo's motion for leave to amend,

12   amendment would be futile because there are no facts that Avelo could allege to state

13   a claim under either trademark or anticybersquatting law.

14        Avelo in its opposition sheds no light on how an amendment would change the

15   outcome. It claims only that "amendment is not futile" because an amendment would

16   "expand[] upon allegations regarding Plaintiffs' illegal scheme utilizing Avelo's

17   mark." ECF No. 72 at 17. That "expansion" is revealed in more detail in the proposed

18   amended complaint that Avelo has separately filed at ECF No. 70-1. Though Avelo

19   curiously does not highlight for the Court any of the new allegations there, Avelo adds

20   in that proposed filing a new section describing the other "commercial enterprises" of

21   Miller the individual and his company Proton Associates. ECF No. 70-1 at ¶¶ 16–29.

22   But these new allegations are simply a list of Miller's commercial projects which are

23   unrelated to the "avelNO!" campaign and the <avelno.com> domain. The only

24   relevant connection Avelo has identified between those commercial enterprises and

25   the "avelNO!" campaign or Avelo's marks is in Paragraph 22 of the proposed amended

26   complaint, where Avelo alleges that a post on one of Miller's websites contains a "link

27   to <avelno.com> embedded in text stating 'I've not been shy about my views of that

28

decision,'" referring to Avelo's decision to contract with the current Administration for deportation flights. This allegation not only doesn't help Avelo keep this case alive, it does the opposite: that is not an allegation of commercial use of Avelo's marks by Miller, but rather reinforces prior pleadings that Miller keeps the information about airlines generally separate from the "avelNO!" campaign, and that he uses <avelno.com> to "express [his] views" and not trade on Avelo's goodwill to confuse consumers or earn bad faith profits. Avelo also alleges that Proton is not a tax-exempt, non-profit organization, *see* 70-1 ¶ 24, but that is not new information: the Complaint admits that Proton is a garden-variety LLC, and neither Miller nor the Court ever treated it as tax-exempt or not-for-profit. ECF No. 21 at ¶ 7. That is because the focus of the inquiry in cases like *Bosley*, *Fallwell*, and related cases is on the legitimacy of the criticism, not the tax status of the critic. Avelo cites no case to the contrary.

At the end of the day, Avelo's opposition brief contains a glaring omission that speaks volumes: it has not pointed this Court to *any* case in which a court held that a legitimate critic engaged in a bona fide public interest campaign about a markholder's policies or conduct had violated the Lanham Act or the ACPA by using the markholder's marks in the campaign. To Miller's knowledge, there is none, because Congress carefully placed such criticism outside the relevant statutes—and even if it did not, the courts would need to curb the reach of the relevant statutes to protect the First Amendment. No amendment or additional facts can cure that fundamental defect. Amendment would be futile.

Accordingly, the motion should be granted and judgment entered for Miller without leave to amend.

## CONCLUSION

1        For the foregoing reasons, as well as those submitted in the opening brief,

2   Plaintiffs respectfully request that this Court grant its motion for judgment on the

3   pleadings and enter judgment to Plaintiffs.

4   DATED: December 19, 2025

5

6                                   **BRAVO SCHRAGER LLP**

7

8                            By:  */s/ Jason Harrow*

9                                 Charles Gerstein

10                                Jeremy Shur
                                  (*pro hac vice*)

11                                GERSTEIN HARROW LLP
                                  1629 Columbia Rd NW, Suite 302

12                                Washington, DC 20009

13                                Jason Harrow
                                  (*pro hac vice*)

14                                GERSTEIN HARROW LLP
                                  12100 Wilshire Blvd. Suite 800

15                                Los Angeles, CA 90025

16                                Bradley S. Schrager, Esq. (SBN 10217)
                                  Daniel Bravo, Esq. (SBN 13078)

17                                6675 South Tenaya Way, Suite 200
                                  Las Vegas, Nevada 89113

18

19                                *Attorneys for Plaintiffs and Counterclaim*
                                  *Defendants*

20

21

22

23

24

25

26

27

28